BRADLEY H. SPEAR - SBN 133371 (On Suspension)
20943 Devonshire St., Suite 206
Chatsworth, CA 91311
(818) 344-5100

Party In Interest - In Pro Per

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>MICHAEL DAVID PARIS,<br><br>　　　　Debtor. | CASE NO. 1:12-BK-11446-AA<br><br>Chapter 7<br><br>**REPLY TO TRUSTEE'S OBJECITON TO FINAL APPLICATION FOR COMPENSATION FOR LEGAL SERVICES RENDERED BY SPECIAL LITIGATION COUNSEL FOR CHAPTER 7 TRUSTEE NANCY J. ZAMORA; DECLARATION OF BRADLEY H. SPEAR**<br><br>Date:　　　November 30, 2016<br>Time:　　　11:00 a.m.<br>Place:　　　Courtroom 303<br>　　　　　　21041 Burbank Blvd.<br>　　　　　　Woodland Hills, CA 91367 |

Bradley H. Spear ("Spear") Replies to the Objection of the Chapter 7 Trustee as follows:

## 1.    INTRODUCTION

Counsel for Trustee, Mr. Wolkowitz, describes his first experience with the state court defendants, at page 4, lines 13-16 of Trustee's Objection, where he comments how he had filed the Louisville Settlement Motion "which was vigorously contested by the Defendants". This is instructive.

In fact, also in his Application for Compensation Wolkowitz wrote, at page 7-8, pages 26-4, "[F]urther, because the Louisville Settlement Motion was vigorously opposed by the Defendants, Applicant: (1) prepared and filed a reply to the Defendants' objections; (2) submitted a supplemental brief as to whether the expert declaration in support of the Louisville Settlement Motion should remain under seal; and (3) prepared and filed a motion for order to show cause regarding civil contempt against the Defendants for allegedly improperly disclosing the contents of the expert declaration previously under seal." For Wolkowitz' this was a wakeup call.

Vigorous, undeniably, were the defendants in their contesting the state court case, at every opportunity. Also in the bankruptcy case, prior to Wolkowitz' involvement, the attorney for the defendants/parties in interest filed a 31 page Objection to Debtor's Claim of Exemption, to which Spear responded with a 17 page reply, including declarations. They were relentless.

That was their approach to the case, which for the three years prior to the Trustee's involvement Spear had combated alone in the state court. The defense strategy was to fight at every juncture on every issue, big or small. Spear now faces that strategy, once again, with the Objection ultimately arguing that Spear should receive nothing for his 4 years 10 months of work.

## 2.    THE ATTACKS ON SPEAR'S HANDLING OF THE CASE, REPRESENTING AN ATTEMPT TO DISCREDIT THE QUALITY OF HIS WORK, ARE UNFOUNDED

Not surprisingly, attached to the Objection is Spear's Suspension Stipulation, along with the State Bar mandated 'Written Notice of Suspension' letter to the client. As the stipulation reveals, Spear's discipline evinces a pattern of *bad personal behavior* having nothing to do with the practice of law. Irrespective of their motives, that document is now in front of the Court.

The Objection, failing to cite to a single example, claims that Spear failed to adequately represent, much less represent the best interests of the estate, failed to keep the Trustee informed about the status and proceedings, and failed to effectively communicate with Trustee or heed her instructions as to the direction of the Personal Injury action.

Spear is accused also of continuing to treat the Debtor – and not the Trustee – as his client, and states that his failure to faithfully and adequately represent the Estate served as an impediment to ongoing settlement efforts with the Defendants.

Thereafter, the Objection accuses Spear of forcing the Trustee to locate alternate special counsel, and leaving the Estate without special litigation counsel in the state court case from the commencement of Spear's suspension to when KPC was employed as special litigation counsel.

## A.    Spear's Conduct, Personal vs. Professional, Have Remained Separate And Distinct

While the overall theme of the Objection is that Spear, by entering into the Suspension Stipulation, abandoned his duties as special litigation counsel and failed to provide services of benefit to the estate, it is more than that. Wolkowitz falsely discredits Spear and infers he is incompetent as a direct result of his personal behavior. In other words 'Spear is a drunk'.

Spear opened his own office in 1998, and in 2006 expanded his practice by bringing the number of his employees to 4. During the years he litigated the Paris v. Daneshrad case his very busy litigation practice expanded to 5 employees including a third attorney, a law clerk, a paralegal and a legal assistant (at one point he had 4 employees and 2 extern law clerks). He paid monthly advertising costs of $4,500, maintained malpractice insurance, and rented a 2,100 square foot office in Tarzana with 5 offices, a conference room, kitchen and lobby area at $3,600. Excluding himself, his payroll was $20,000 and his monthly overhead totaled $35,000-$40,000.

Waking weekdays at 5:30 a.m., Spear regularly worked from 7:30 a.m. to 5:30 p.m. He also working 3-5 hours weekends at the office and sometimes at home in the evening. This work pattern continues to the present while he is employed as paralegal to his brother's law office.

## B.    The Limited Effect Of Spear's Drinking On His Law Practice

The effect of his drinking upon Spear's personal life is undeniable. However, other than the Trustee and one other client having had to retain alternate counsel, no other case was ever adversely affected by it. Invariably, he maintained his files and worked up his cases properly.

Spear's daily routine was that upon arriving home, between around 6:00 to 7:30 p.m. he would have 3 drinks and eat dinner, then go to bed between 9:00-9:300 p.m., and wake each morning well rested. He would occasionally drink more on weekends, but never before early evening. The most direct effect this had on his personal life was that it caused him to stay home evenings. Spear was sober from May of 2010 to September of 2012, and has now been sober since September of 2014 (he entered the State Bar LAP program in September of 2014).

**3.    EXTRAORDINARY CIRCUMSTANCES WARRANT APPROVAL OF SPEAR'S APPLICATION FOR COMPENSATION NUNC PRO TUNC**

The impact of his more distant past conduct, though generally not relevant, is not intentionally understated.  However, the conduct that led to his final arrest, the June of 2013 domestic dispute with his girlfriend, ultimately caused the relationship to end for a period and did cause Spear to suffer emotionally.

Subsequent to that incident difficulties developed causing Spear and his girlfriend to end the relationship in March of 2014.  By late 2013 he was, for the first time, suffering from anxiety, and within months of the breakup that anxiety turned into depression.

In both January and June of 2014 he complained of anxiety to his doctor (and was prescribed an anti-anxiety medication).  It was not until the approach of the holidays that Spear began to realize he was suffering from depression, and on December 11, 2014, he was prescribed an antidepressant (just 2 days after his Application for Compensation was approved).

He returned to his doctor in late December of 2014 and again in March of 2015, and by late June of 2015, after 6 months of antidepressants, he stopped taking them (attached as Exhibit "F" are Spear's pertinent medical records).  By chance, Spear reunited with his girlfriend July 4, 2015, just days after discontinuing the antidepressant.

Spear, in fact, documented his unpleasant experience when, on March 11, 2015, the Trustee authorized the filing in the state court case of a Motion for Leave to File an Amended Complaint (attached hereto as Exhibit "G").  In his declaration, at page 7, lines 5-21, Spear documented much of the above and apologized to the court for behavior he believed was not an accurate representation of how he handles himself in court and in litigation, generally.

Spear's anxiety and depression coincided precisely in time with his preparation for and reopening of the bankruptcy case, and the Trustee's Application for his Employment.

Initially, although Spear did request in his Application that the services provided be allowed retroactively, and the Application does establish that his services have benefitted the estate (contrary to the charges in the Reply), he neglected to offer explanation for his failure to timely apply for his employment *nunc pro tunc*.

4

Therefore, pursuant to 11 U.S.C. §105(a), Spear herein requests the Court exercise its discretion and consider that request and explanation at this time.

11 U.S.C. §105(a) provides:
**Power of Court**
(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

It is submitted that pursuant to these powers, and the powers of discretion generally held by the bankruptcy courts, the facts and circumstances of this case warrant the Court exercise its discretion and allow Spear's Application for Compensation to be determined retroactively.

In the Ninth Circuit case *In re THC Financial Corp., v. THC Financial Corporation,* 837 F.2d 389 (1988) the U.S. Court of Appeals, in finding that an attorney had not met the requirements of a retroactive award of attorney's fees, cited to *Matter of Triangle Chemicals, Inc.,* 697 F.2d 1280 (5th Cir. 1983), stating, at pages 1287-88, that "A court may exercise its discretion to award fees for valuable but unauthorized services".

The Court continued by defining the standard as follows:

"[S]uch awards should be limited to exceptional circumstances where an applicant can show both a satisfactory explanation for the failure to receive prior judicial approval and that he or she has benefited the bankruptcy estate in some significant way".

In a case where the court allowed retroactive application, *In re Alan Gutterman,* 239 B.R. 828 (1999), a secretarial error caused the application for employment not to be filed. That court ruled that, given the lack of prejudice to the estate resulting from the delay, the explanation was satisfactory to approve the firm's employment *nunc pro tunc.*

Here, Spear had been working on the bankruptcy matter several months, first contacting the original trustee then preparing and filing the motion to reopen the bankruptcy and finally appearing at the hearing. After the original trustee recused herself, Spear had immediate and continuing contact with Trustee Zamora. It was at all times understood by the Trustee the extent to which Spear had litigated the matter and that his retainer called for a 40% contingency fee.

By October of 2014, Spear was suffering from moderate depression but was not yet medicated (see the redacted email he forwarded to his girlfriend attached as Exhibit "H"). He was, nonetheless, giving full attention to both the state court case and his remaining caseload. But he was clearly suffering from difficulties with concentration, indecisiveness and lack of sleep.

On November 6, 2014, Wolkowitz copied Spear with an email wherein he instructed his associate to draft the employment application with the terms "in accordance with the retainer agreement between Spear and the debtor" (please see Exhibit "I"). Spear thereafter, on November 19, 2014, signed and forwarded the Application for Employment back to Wolkowitz.

Notably, nowhere in Spear's Application for Employment did it state that his compensation would be limited in time. The only reference was to the "effective" date. At no time did Spear suspect that he would not be paid fully for the services he had performed.

He signed the Application for Employment having only limited knowledge of the effects his depression had on his capacity to understand and appreciate its content. Short of sleep, fatigued and still losing weight, Spear erred in relying upon his belief that the Trustee understood, and would in fact honor, his desire for his Application for Employment to be retroactive.

Long after his November 19, 2014 signing of the Employment Application - around when his Application for Employment was approved (December 9, 2014) - Spear finally took steps towards addressing his problems by making the December 11, 2014 appointment with his doctor.

Between his continuing personal issues and his litigation caseload, Spear never considered the possibility the Application for Employment may exclude his right to recover for the prior 3.5 years of work he completed.  He had no experience in such bankruptcy matters, and relied upon his understanding of the facts and his belief that equitable principles would protect his interests.

**4.      SPEAR MAINTAINS A SECURED LIEN AGAINST THE SETTLEMENT
         PROCEEDS CREATED BY HIS RETAINER AGREEMENT**

Case law establishes that, irrespective of the positions taken by the Trustee, effective February 4, 2011 Spear's contingency agreement with Debtor created a secured lien against any settlement proceeds. Simply put, the terms allowing for the recovery of his attorney's fees from the proceeds of any settlement or judgment created a security interest in those proceeds.

The California Supreme Court in *Isrin v. Superior Court of Los Angeles*, 63 Cal.2d 153 (1965) sets forth the law as follows:

> "It will be enough to observe that in whatever terms one characterizes an attorney's lien under a contingent fee contract, it is no more than a security interest in the proceeds of the litigation. As explained in one of the leading cases on the subject, the attorney's lien is `an equitable right to have the fees and costs due to him for services in a suit secured to him out of the judgment or recovery in the particular action, the attorney to the extent of such services being regarded as an equitable assignee of the judgment. It is based, as in the case of a lien proper, on the natural equity that a party should not be allowed to appropriate the whole of a judgment in his favor without paying for the services of his attorney in obtaining such judgment." [Id. at p. 158-159] [citations omitted]

The California Court of Appeal in *Saltarelli & Steponovich v. Douglas*, 40 Cal.App.4th 1, (1995), stated at pages 6-7, as follows:

> "<u>State law governs the nature, extent and validity of a lien in bankruptcy proceedings.</u> (citations omitted) California recognizes the parties to an attorney retainer agreement can create a lien in favor of the attorney upon the proceeds of the client's prospective recovery in a lawsuit. (citations omitted)
>
> The agreement for an attorney's lien is decisive as to its existence. (citations omitted) The parties' contract not only uses the term "Lien," but indicates plaintiff may look to the judgment or settlement as security for its fees and expenses. Consequently, the retainer agreement, if otherwise valid, created a lien. (citations omitted)
>
> An attorney's lien arises upon execution of the retainer agreement. (citations omitted) While a discharged attorney must file an independent action to establish the amount of the lien and to enforce it (citations omitted) a judgment on the lien is not a condition precedent to its existence or viability.
>
> In *Cetenko v. United California Bank, supra,* 30 Cal.3d 528, 179 Cal.Rptr. 902, 638 P.2d 1299, the Supreme Court held an attorney's lien contained in a retainer agreement had priority over a third party's judgment lien because it was created earlier in time. (citations omitted) In so ruling, the Court rejected a claim the attorney had a "secret lien" stating, "We know of no authority, case law or statute, which compels an attorney to give notice to a client's creditors of a contractual lien on the judgment. In other jurisdictions where the matter has been considered, it has been held that the filing of a notice of lien by the attorney is not necessary to protect his security interest...." (30 Cal.3d at pp. 532-533.)
>
> Other cases support the same conclusion. *Bluxome Street Associates v. Fireman's Fund Ins. Co., supra,* 206 Cal.App.3d 1149, 254 Cal.Rptr. 198 affirmed an order granting priority to a law firm's lien for legal services over claimants holding

perfected judgment and attachment liens. The court rejected claims the lien was unenforceable either because of an inability to perfect the lien under Article 9 of the Uniform Commercial Code or because the firm never filed a notice of lien in the underlying action. (*Id.* at pp. 1155–1156, 254 Cal.Rptr. 198.) With respect to the latter contention, the court declared, "Providing notice of a lien is a statutory prerequisite to the creation or enforceability of certain types of liens.... [¶] As to a contractual lien under Civil Code section 2881 on a litigant's interest in a tort claim, however, we find no authority, statute, or case law which requires notice to create such lien." (*Id.* at pp. 1156–1157, 254 Cal.Rptr. 198.)

*Hansen v. Jacobsen, supra,* 186 Cal.App.3d 350, 230 Cal.Rptr. 580 reversed an order striking a discharged law firm's notice of lien on the client's recovery in the action, finding that, while the filing of such a notice was unnecessary to the lien's enforcement, it was nonetheless permissible. (*Id.* at pp. 357–358, 230 Cal.Rptr. 580.) But in so ruling, the court noted, "In some jurisdictions, perfection of attorneys' liens by notice is governed by statute. [Citation.] Our Legislature, in establishing the procedures for filing liens in pending actions, has not established a method for attorneys with contractual liens to do so. [Citations.]" (*Id.* at p. 357, 230 Cal.Rptr. 580.)" [emphasis added]

As cited in Spear's Application for Compensation, *In the Matter of Pacific Far East Line, Inc. v. Official Creditor Committee,* 654 F. 2d 664 (1981) provides that:

"The district court found that under the contingent fee contract, Alioto was "entitled to look to the judgment for his compensation" and thus was "entitled to an equitable line (sic)." 458 F.Supp. at 775. These statements necessarily include a finding of the requisite intent and are consonant with apposite California precedent holding the use of the term "lien" unnecessary to the creation of a valid attorney's lien." [Id at p. 669]

"With the existence and amount of a valid attorney's lien thus established, it was proper for the bankruptcy court to immediately award Alioto the portion of the fee which related to pre-petition services [citations omitted]. As found by the bankruptcy court, 95 percent of Alioto's services were rendered prior to the Chapter XI arrangement, and thus 95 percent of the $1.5 million award, or $1,425,000, should have been set aside in satisfaction of Alioto's lien against the settlement proceeds and immediately awarded to Alioto." [Id. at p. 770] [emphasis added]

Spear, in his Application, has made a good faith attempt to provide a realistic resolution to the issues created by his suspension. Further, the Objection raises no dispute as to whether Spear maintains a valid secured lien. Irrespective of those facts, it is certain that his suspension neither diminishes the value of his services to the estate nor invalidates the security lien he maintains against the settlement funds, and Spear is entitled to receipt of the value of the services he provided. However, an action against the Estate at this time seems extreme.

## 5.    THE OBJECTION CONTAINS FALSE AND GRATUITOUS ACCUSATIONS

The Objection makes several serious accusations against Spear. They include that he failed to adequately represent Trustee, failed to represent the best interests of the estate, failed to keep the Trustee informed about the status and proceedings, and failed to effectively communicate with Trustee or heed her instructions as to the direction of the Personal Injury action.

It further accuses Spear of continuing to treat the Debtor – and not the Trustee – as his client, and states that his failure to faithfully and adequately represent the Estate served as an impediment to ongoing settlement efforts with the Defendants. Finally, it accuses Spear of causing a 3 month delay in the Trustee's ability to find alternate counsel.

Again, not a single example of Spear's conduct is referenced in the Objection, nor a single email attached, therefore Spear will not provide specific responses herein to most of these accusations. Spear does possess multiple emails and documents that contradict these accusations, which Spear herein refutes as absolutely false.

There was, however, one meritorious complaint the Trustee maintained through much of Spear's representation, which was that he often failed to copy either her or her counsel with email communications. Spear acknowledges this failing and in explanation can only offer that, as a private practitioner and plaintiff's attorney, the obligation to provide progress and status updates to anyone was something new and unfamiliar to him. Spear often simply forgot. As a result of these failings the Trustee and Wolkowitz behaved demeaning and offensive toward Spear.

Actually, from the start the Trustee and Wolkowitz treated Spear in a demeaning fashion. This was particularly true of Wolkowitz. Spear, due to his experience with other attorneys who have knowledge of his past State Bar discipline, understood it was something he had no control over. Not surprisingly, Wolkowitz now claims Spear provided nothing of value to the Estate.

Spear never failed to adequately represent the Trustee or the best interests of the Estate. He kept the Trustee and her counsel updated as to the status and proceedings of the case, and communicated with her and heeded her instructions. He never treated the Debtor as his client, and he never failed to faithfully and adequately represent the Estate.

What the Objection fails to admit is that prior to ever speaking to Spear the Trustee was fully aware of his past and pending disciplinary matters. In fact, when she first called Spear she addressed the matters fully with him. After that conversation she was satisfied that he was the best choice to continue as her special litigation counsel. That conversation was confirmed in a brief September 30, 2014 email from Spear to the Trustee (attached hereto as Exhibit "J"). **Therefore, the Trustee filed the Application for Employment of Spear fully informed and knowing that there was a pending disciplinary action against him and that he had been disciplined previously.**

Further, the Objection accuses Spear of abandoning the case and as a result causing a 3 month delay in the Trustee obtaining alternate counsel. However Spear, on November 2, 2015, forwarded to the Trustee an email stating, first, that his license would be suspended on November 25, 2015, and second, that due to there being no trial date there was no urgency regarding the actual handling of the case.

Next, on December 2, 2015 Spear forwarded the Trustee an email reminding her that "at this time you are without an attorney", to which she responded "I will discuss with general counsel and advise you later". Spear never heard back from the Trustee on the issue. Please see the November 2 and December 2, 2015 emails attached hereto collectively as Exhibit "K".

Finally, the Objection criticizes Spear for forwarding the December 23, 2015 "Suspension Letter" and attacking the language contained in the letter. However, that letter and its content are mandated by California Rules of Court, Rule 9.20(a)(1), for all attorneys who have been suspended, yet Wolkowitz used it to support his claim that Spear has abandoned the case.

## 6.  SPEAR'S SUSPENSION DOES NOT RESULT IN THE FORFEITURE OF HIS EARNED ATTORNEY FEES

Ultimately, the Objection argues essentially that because Spear entered into a Suspension Stipulation he voluntarily went on suspension, and that constituted an abandonment of his role as Special Litigation Counsel causing the forfeiture of his right to compensation. Preliminarily, the Objection presumes that Spear voluntarily submitted to suspension. In fact, Spear's case was set for trial on a matter where the evidence of convictions warranting discipline were uncontroverted.

Had Spear gone to trial, with his record, there was a near 100% chance that he would have lost and received an equal or worse sentence of suspension.

The Objection's reliance upon *Rus, Miliband & Smith v. Conkle & Olesten*, 13 Cal.App.4th 656 (2003) is misplaced, where in that case the law firm that had withdrawn as counsel for accountants in a bad faith action against a malpractice insurer filed a lien claim against the accountants' settlement proceeds. The accountants new attorneys brought an action for declaratory relief against the law firm, and law firm cross-complained for *quantum meruit*. The court held that the law firm's withdrawal was not mandatory under State Bar rules governing professional conduct, and the law firm's permissive withdrawal was not sufficiently justifiable as to warrant *quantum meruit* recovery.

Nonetheless, applying the *Rus, Miliband & Smith* standard, it is clear that with his suspension having become effective it necessarily made his withdrawal justifiable. As stated by the Court, at page 673-674:

> "There are times, of course, when professional ethics *require* a withdrawal. In such cases, the inequity inherent in the inconsistent position is offset by the countervailing ethical value affirmed by the withdrawal—there is no injustice in allowing recovery by the attorney later.
> But even in those cases there is a gauntlet to run. *Falco* proffered a set of five requirements attorneys must meet if they claim an ethical compulsion of withdrawal. The most significant of the five are the first two, namely that (1) the withdrawal be truly *mandatory* under the professional rules and (2) the "overwhelming and primary" motivation be the desire to adhere to the professional ethical rules, as distinct from some private ulterior motive. (See *Falco, supra,* 188 Cal.App.3d at p. 1016, 233 Cal.Rptr. 807.)"

Inherent in Spear's decision is that his withdraw was mandatory under the professional rule that one may not practice law without a license. Spear was obligated to comply with the terms of his suspension which included providing notice to each of his clients that he was on suspension, that he could no longer represent them, and that they should seek the services of alternate legal counsel.

Deceptively, the Objection cites to cases in support of the *abandonment* argument, yet does not cite any case to support the proposition that a suspended attorney cannot recover his attorney fees. While there certainly are such cases, there seems to be no California cases on point.

11

The consensus, however, generally supports the position that, absent misconduct by the attorney related to his handling of the case, suspension does not warrant forfeiture of attorney fees.

Cases in other jurisdictions are informative. The following is a fairly random selection drawn directly regarding the many cases discussed in the 1998 publication "*Attorney's right to compensation as affected by disbarment or suspension before complete performance*", 59 A.L.R.5th 693, at pages 12-13:

> "The court in *Eisenberg v General Motors Acceptance Corp.* (1991, ED Pa) 761 F Supp 20 (applying Pennsylvania law), held that an attorney who withdrew from representation due to his disbarment from the practice of law would not be considered to have "unjustifiably abandoned" his representation and that he would, as a result, be entitled to make a claim for an entitlement to fees earned prior to the disbarment.   The plaintiff attorney represented the defendant company as a collection attorney for approximately 12 years. At one point, the defendant advised the attorney that it would not be forwarding new cases to him but that he could continue to work on all pending matters; approximately one year thereafter, the attorney resigned from the practice of law, pursuant to Pa Rules of Disciplinary Enforcement, Rule 215, for reasons unrelated to his representation of the defendant company. When the defendant learned that the plaintiff was no longer a member of the bar, it directed him to return all opened and closed files which had previously been assigned to him. The plaintiff thereafter filed an action seeking, among other things, *quantum meruit* recovery of contingent fees and reimbursements allegedly incurred during the period of his representation of the defendant; the defendant company moved to dismiss the action, alleging that the plaintiff had failed to state a claim upon which relief could be granted. More specifically, the defendant contended that the plaintiff's "voluntary resignation from the practice of law" during the period of his representation should absolutely bar the plaintiff from recovering fees from the defendant, in that the disciplinary resignation or disbarment of an attorney prior to his completion of his representation of a client was equivalent to the voluntary and unjustifiable withdrawal prior to the completion of a case by which an attorney forfeits his or her right to compensation. The court, although recognizing that the courts in certain cases, including *Fletcher v. Krise*, 120 F.2d 809 (App.D.C D.C. Cir. 1941), cert. denied, 314 U.S. 608, 62 S. Ct. 88, 86 L. Ed. 489 (1941) (applying District of Columbia law), § 3, have held that disbarment before the completion of the case is tantamount to a voluntary and unjustified withdrawal from the case, such that the disbarred attorney loses his or her right to compensation, adhered to the ruling of *Stein v Shaw* (1951) 6 NJ 525, 79 A2d 310, this section, that, when an attorney is disbarred or suspended from practice for reasons which are unrelated to his or her representation of a particular client, the attorney is still entitled to recover for the "reasonable value" of services provided to that client prior to the disbarment. As such, the court continued, withdrawal from a suit because of disbarment cannot be deemed equivalent to an unjustified abandonment of a contract; disbarment or disciplinary resignation automatically

terminates the attorney-client relationship by operation of law, while voluntary abandonment can occur only because of the action or inaction of the attorney. The court concluded that the plaintiff's cause of action for reimbursement of fees would not be dismissed and that the plaintiff attorney would be given his opportunity to prove his entitlement to compensation."

Attached hereto as Exhibit "L" is a copy of the 27 page publication.

## 7. CONCLUSION

With all due respect to the Trustee and her counsel, all who claim entitlement to fees from the Estate stand on the shoulders of Spear's efforts. The Objection represents another in a long line of attacks directed at Spear during the past several years.

Were it the intent in California, where litigation is sometimes second nature, that a suspended attorney be required to forfeit all fees on matters not completed prior to suspension, one would expect to find such a case. There appearing to be no such case, at the very least under California law Spear maintains a lien against the settlement proceeds under which he can seek recovery.

It is submitted the best resolution as it relates to Spear's fees is to assess the overall value of the services he provided. That amount will likely exceed $296,000, the amount Spear still agrees to accept.

Respectfully submitted,

Party In Interest

Dated: 11/22/2016

*/s/ Bradley H. Spear*
By: Bradley H. Spear - In Pro Per

13

## DECLARATION OF BRADLEY H. SPEAR

I, Bradley H. Spear, declare as follows:

1. I am the Applicant herein, and the former attorney of record for Debtor David M. Paris and then Trustee Nancy Zamora in the Los Angeles Superior Court Case <u>Zamora v. Daneshrad,</u> Case No. PC052997, and I am the former Special Litigation counsel to Trustee Nancy Zamora in the within matter <u>In Re: David Michael Paris, Debtor,</u> Case No. 1:12-BK-11446-AA. I am presently on suspension with the State Bar of California and not entitled to practice law. In that capacity I have personal knowledge of the facts stated below, and if called upon to do so, I could and would competently testify thereto.

2. This declaration is provided in Reply to Trustee's Objection to my Application for Compensation for Legal Services Rendered as Special Litigation Counsel.

3. I have read and reviewed this Reply and the documents attached hereto and know of the content therein, and attest to their accuracy and truthfulness.

4. I opened my own law office in 1998, and in 2006 hired three additional employees bringing the number to 4. During the years I litigated the <u>Paris v. Daneshrad</u> case my litigation practice expanded to 5 employees including a third attorney, a law clerk, a paralegal and a legal assistant (at one point I had 4 employees and 2 extern law clerks). I paid monthly advertising costs of $4,500, maintained malpractice insurance, and rented a 2,100 square foot office in Tarzana with 5 offices, a conference room, kitchen and lobby area at $3,600 per month. Excluding myself, my payroll was $20,000 and my monthly overhead totaled $35,000-$40,000.

5. Throughout the years my schedule has been to wake weekdays at 5:30 a.m., and I regularly worked from 7:30 a.m. to 5:30 p.m. I also working 3-5 hours weekends at the office and sometimes at home in the evening. I presently work as a paralegal at my brother's law office.

6. While my drinking has had an impact upon my personal life, other than the Trustee and one other client having had to retain alternate counsel, no other case was ever been adversely affected by it. Invariably, I maintained my files and worked up my cases properly.

7.  My custom was, upon arriving home I would have 3 drinks and eat dinner between 6:00 to 7:30 p.m., go to bed between 9:00-9:300 p.m., and wake each morning well rested. I would occasionally drink more on weekends, but never before early evening. I was sober from May of 2010 to September of 2012, and has now been sober since September of 2014 (I entered the State Bar LAP program in September of 2014).

8.  The June of 2013 domestic dispute with my girlfriend caused our relationship to end for a period and did cause me for the first time to suffer from anxiety, and within months of the breakup that anxiety turned into depression.

9.  In both January and June of 2014 I complained of anxiety to my doctor (and was prescribed an anti-anxiety medication). It was not until the approach of the holidays that I began to realize I was suffering from depression, and on December 11, 2014, I was prescribed an antidepressant.

10. I returned to my doctor in late December of 2014 and again in March of 2015, and by late June of 2015, after 6 months of antidepressants, I stopped taking them (attached as Exhibit "F" is a true and correct copy of those medical records).

11. On March 11, 2015, I filed in the state court case, with Trustees approval, of a Motion for Leave to File an Amended Complaint (attached hereto as Exhibit "G" is a true and correct copy of that Motion for Leave). In my declaration I documented much about my anxiety and depression and apologized to the court for my past behavior.

12. My anxiety and depression coincided precisely in time with my preparation for and reopening of the bankruptcy case, and the Trustee's Application for my Employment.

13. In my Application for Compensation I neglected to offer explanation for my failure to timely apply for my employment retroactively.

14. By the time I contacted the original Trustee, Amy Goldman, I had been working on the bankruptcy matter several months, ultimately preparing and filing the motion to reopen the bankruptcy and appearing at the hearing. After the original trustee recused herself, I had immediate and continuing contact with Trustee Zamora. It was at all times understood by the

Trustee the extent to which I had litigated the matter and that my retainer called for a 40% contingency fee.

15. By October of 2014, I was suffering from moderate depression but was not yet medicated (see a true and correct copy, with redactions, of the October 24, 2014 email I forwarded to my girlfriend attached as Exhibit "H"). I was at that time giving full attention to both the state court case and my caseload, but was clearly suffering from difficulties with concentration, indecisiveness and lack of sleep.

16. On November 6, 2014, Wolkowitz copied me with an email wherein he instructed his associate to draft the employment application with the terms "in accordance with the retainer agreement between Spear and the debtor" (please see a true and correct copy of the November 6, 2014 email attached as Exhibit "I"). In November 19, 2014, I signed and forwarded the Application for Employment back to Wolkowitz. At no time did I suspect that I would not be paid fully for the services I had performed on the case.

17. I signed the Application for Employment having only limited knowledge of the effects my depression had on my capacity to understand and appreciate its content. Short of sleep, fatigued and still losing weight, I erred in relying upon my belief that the Trustee understood, and would in fact honor, my desire for the Application for Employment to be retroactive.

18. Sometime around December 9, 2014 I finally scheduled an appointment with my doctor for December 11, 2014.

19. During that time I never considered the possibility the Application for Employment may exclude my right to recover for the prior 3.5 years of work I had completed. I had no experience in such bankruptcy matters, and relied upon my understanding of the facts and my belief that equitable principles would protect my interests.

20. The one meritorious complaint the Trustee had about my handling of the case was that through much of my representation I often failed to copy either her or her counsel with email communications. As a private practitioner and plaintiff's attorney, the obligation to provide progress and status updates to anyone was something new and unfamiliar to me, and I often simply forgot.

21. From roughly the beginning of my representation the Trustee and Wolkowitz treated me in a demeaning fashion. This was particularly true of Wolkowitz. Due to my experience with other attorneys who know about my State Bar record I understood it was something I had to accept.

22. I never failed to adequately represent the Trustee or the best interests of the Estate. I kept the Trustee and her counsel updated as to the status and proceedings of the case, and communicated with her and heeded her instructions. I never treated the Debtor as my client, and never failed to faithfully and adequately represent the Estate.

23. I have several emails and documents that contradict the accusations made in the Objection, which I refute as absolutely false.

24. Prior to ever speaking to me the Trustee was fully aware of my past and pending disciplinary matters. When she first called me we discussed the matters fully. After that conversation she was agreed that I was the best choice to continue as her special litigation counsel. That conversation was confirmed in a brief September 30, 2014 email I forwarded to the Trustee (attached hereto as Exhibit "J" is a true and correct copy of the September 30, 2014 email). The Trustee filed the Application for Employment fully informed and knowing that there was a pending disciplinary against me and that I had been disciplined previously.

25. On November 2, 2015, I forwarded to the Trustee an email stating, first, that my license would be suspended on November 25, 2015, and second, that due to there being no trial date there was no urgency regarding the actual handling of the case. Next, on December 2, 2015, I forwarded the Trustee an email reminding her that "at this time you are without an attorney", to which she responded "I will discuss with general counsel and advise you later". I never heard back from the Trustee on the issue. True and correct copies of the November 2 and December 2, 2015 emails are attached hereto collectively as Exhibit "K".

26. Finally, I forwarded the December 23, 2015 "Suspension Letter" to the Trustee as mandated by California Rules of Court, Rule 9.20(a)(1).

27. My State Bar disciplinary case was set for trial, and the evidence of convictions warranting discipline were uncontroverted. Had I gone to trial, with my record, I believe there was a

100% probability that I would have lost and received an equal or worse sentence of suspension.

28. Attached hereto as Exhibit "L" is a true and correct copy of the 1998 A.L.R. publication "Attorney's right to compensation as affected by disbarment or suspension before complete performance".

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 22nd day of November, 2016, at Chatsworth, California.

/s/ Bradley H. Spear
Bradley H. Spear

# EXHIBIT "F"

| PATIENT'S NAME | Spear, Brad | DATE JAN 08 2014 |

Wt: 197

T. 98.2                    Bp: 120/63

S: 1. Abdominal pain, heart burn, no N+V
no diarrhea, no rectal bleeding
2 - Anxious, Insomnia not depressed.
O: HENT: TM's, phx and nasal mucosa are intact
neck. supple no adenopathy
c. clear to P+A
Heart RR
Abd. soft nontender no organ?
Ext no edema.
neuro: Hyper reflexia, Anxiety

A. Anxiety, Gastritis
P. Referral to GI
    Log Lorazepam 1 mg B16 x30 1RF

JUN 03 2014                               M
Wt: 171          Bp: 121/73
                      p. 78

T. 98.6

S: On diet and exercise, Lost about 20 lbs
physically feels well. Has occasional Anxiety
epis(?), insomnia. not depressed.

O: HENT: TM's and phx are not ????
PERLA   EOM's full
neck. supple no adenopathy
c. clear   Heart RR
Abd. soft, nontender
neuro. reflexes wn?
not depressed, not suicidal or homicidal

A. Anxiety disorder
P. Ativan 1 mg a day PRN

NAME: Spear, Bradley   DOB: 7/10/59   DATE: DEC 11 2014

WT:183   BP: 117/66   T:97.9
P: 68

S: Has been depressed and anxious. Has poor
concentration, complains of insomnia

is not evident

O: imp. clear to P4A
Neck RR
abd. soft, non tender
Neuro Psych. Awake, alert and oriented.
Depressed mood, crying spell.
A. Depression Anxiety

R. Lexapro   20mg   1 dz.
   Ativan   0.5   1dz.

DEC 26 2014

WT. 183   [signature] MD

BP 118/59   T-981

S. F.U on Depression
Lexapro has helped a lot but had side
effect of ████ ████
Pt is not suicidal and much depressed

P. switch to wellbutrin XR 150 1dz.
cialis 20 samples x3

[signature]

NAME: Speak, Bradley     DOB:      DATE: MAR 2 3 2015

WT: 178

BP 110/70    P 80    R 18    T-98

S: F.V on Depression. Has responded and
wellbutrin and Ativan but still had
several episodes of depression and insomnia

Not suicidal

O: skin warm and dry.
HENT: TM's pink che intact
neck: supple no adenopathy
lg. clear      Heart RR
Abd: soft, nontender

Psych: Awake, alert, oriented, depressed
mood, not suicidal

A. Depression
P: ↑ wellbutrin XR to 300 mg a day and
Ativan 1mg a day x30  2 RF

AUG 2 0 2015

WT: 192      BP: 135·77      Torry
                  P: 70

S: FV on Depression anxiety disorder
Has much less depression but still feel
anxious

O: ppr clear
Heart RR
Abd- soft, nontender
Ext no edema.
A Anxiety

P. Lorazepam

EXHIBIT "G"

**SPEAR LAW FIRM**
BRADLEY H. SPEAR / #133371
18455 Burbank Blvd., Suite 210
Tarzana, CA 91356
(818) 344-5100

Attorney for Plaintiff,
Nancy J. Zamora, Chapter 7 Trustee of the Bankruptcy Estate of David M. Paris

**CONFORMED COPY**
**ORIGINAL FILED**
Superior Court of California
County of Los Angeles

**MAR 11 2015**

Sherri R. Carter, Executive Officer/Clerk
By Steve Gille, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| NANCY J. ZAMORA, CHAPTER 7 TRUSTEE OF THE BANKRUPTCY ESTATE OF DAVID M. PARIs, | Case No.: PC052997 |
| | Assigned to Hon. Melvin Sandvig / Dept. "F-47" |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR ORDER GRANTING LEAVE TO FILE FIFTH AMENDED COMPLAINT ON SHORT NOTICE; POINTS AND AUTHORITIES; DECLARATION OF BRADLEY H. SPEAR; PROPOSED FIFTH AMENDED COMPLAINT** |
| vs. | |
| MOJDEH DANESHRAD, ALAN B. SMITH, PALEY COMMERCIAL REAL ESTATE, INC., AMERICAN LENDING AND RELATY, INC. and DOES 1 to 25, inclusive, | |
| | Date:    April 9, 2015 |
| | Time:    8:30 a.m. |
| Defendants. | Dept.:    "F-47" |

TO ALL PARTIES AND TO THEIR ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that on April 9, 2015 at 8:30 a.m in Department F-47 of the above-captioned Superior Court, located at 9425 Penfield Ave., Chatsworth, CA 91311, Plaintiff DAVID M. PARIS will move the Court for an Order Granting Leave to File A Fifth Amended Complaint to re-allege a cause of action against Louisville Ladder, Inc. for Products Liability.

This Motion is based upon California Code of Civil Procedure §128, §473(a)(1) and §576, the attached Memorandum of Points and Authorities, the Declaration of Bradley H. Spear,

---

MOTION FOR LEAVE TO AMEND

1

1   and all pleadings, records, and files herein as well as that evidence which is presented at the time

2   of the hearing, all of which will show good cause for the court to grant this motion.

3   Dated: March 11, 2015                          SPEAR LAW FIRM

4

5                                            By: _____

6                                               BRADLEY H. SPEAR
                                                Attorneys for Plaintiff
7                                               DAVID M. PARIS

8

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.   INTRODUCTION

Attached hereto as Exhibit "A" is the Proposed Fifth Amended Complaint which is essentially identical to the Fourth Amended Complaint, but which contains a Cause of Action against Louisville Ladder, Inc. for Products Liability.

This action involves an incident wherein David Paris was injured when, for reasons uncertain, he fell from a ladder manufactured and sold by Louisville Ladder, Inc. Upon ascertaining that the ladder was manufactured by Louisville Ladder, Plaintiff filed its Second Amended Complaint naming Louisville Ladder as a defendant and alleging against it a third cause of action for Products Liability.

That cause of action for Products Liability was erroneously omitted by counsel for Plaintiff from the prior Third Amended Complaint and then from the Fourth Amended Complaint filed by Plaintiff.

On February 11, 2015, Plaintiff's counsel attended the hearing in the Bankruptcy Court for Approval of Plaintiff's Motion for Good Faith Settlement with Louisville Ladder, at which the Bankruptcy Judge determined that he would require review of additional documentation, and ordered that a copy of the operative complaint in the within State Court action to be filed with the Bankruptcy Court on March 15, 2015 (see the Declaration of Bradley H. Spear).

Because the presently operative Fourth Amended Complaint does not contain a cause of action for Products Liability against Louisville Ladder, which is the only viable theory of liability against Louisville Ladder, Plaintiff brings the within Motion for Leave to correct the error. Plaintiff seeks to have the Exhibit "A" deemed the Fifth Amended Complaint and deemed filed for all purposes.

In his declaration Plaintiff's counsel takes this opportunity to address a matter of personal importance regarding his handling of this litigation and his appearances in this Court.

///
///
///

2.   **IT IS WITHIN THE DISCRETION OF THE COURT TO GRANT LEAVE TO AMEND THE COMPLAINT AT ANY STAGE OF THE LITGATION**

California Code of Civil Procedure §473(a)(1) provides as follows:

> "The court may, in furtherance of justice, and on any terms as may be proper, allow a party to amend any pleadings or proceedings by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect; and may, upon like terms, enlarge the time for answer or demurrer. <u>The court may likewise, in its discretion, after notice to the adverse party, allow, upon any terms as may be just, an amendment to any pleading or proceeding in other particulars;</u> and may upon like terms allow an answer to be made after the time limited by this code." [Emphasis added]

Additional authority is found in C.C.P. §576, which simply states:

> "Any judge, at any time before or after commencement of trial, in the furtherance of justice, and upon such terms as may be proper, may allow the amendment of any pleading or pretrial order."

As the above statutes indicate, the court may permit the amendment of the complaint at the present stage of the litigation.

3.   **JUDICIAL POLICY FAVORS THE LIBERAL EXERCISE OF DISCRETION BY THE COURT IN GRANTING LEAVE TO AMEND**

In addition to the fact that it is strongly favored that all disputes between the parties be resolved within the same litigation, it is policy that the court's discretion in granting leave to amend will be exercised liberally.  <u>Nestle v. Santa Monica</u> (1972) 6 C3d 920, 939, 101 CR 568, 581; <u>Mabie v. Hyatt</u> (1998) 61 CA4th 581, 596, 71 CR2d 657, 666.

The policy was very clearly stated in <u>Morgan v. Superior Court</u> (1959) 172 CA2d 527, 343 P2d 62, when it stated as follows:

> "If the motion to amend is timely made and the granting of the motion will not prejudice the opposing party, it is error to refuse permission to amend; and, where the refusal also results in a party being deprived of the right to assert a meritorious cause of action or a meritorious defense, it is not only error but an abuse of discretion." [Id at P. 172 CA2d 530]

///
///
///

**4.    THE FACTS SUPPORT ALLOWING AMENDMENT TO INCLUDE THE PRODUCTS LIABILITY CAUSES OF ACTION AGAINST LOUISVILLE LADDER, INC..**

The above detailed amendment is necessary and proper due to the fact that Defendant Louis Ladder, Inc. was previously named the defendant as to the Third Cause of Action for Products Liability. That Cause of Action having been erroneously omitted from the Third and Fourth Amended Complaints, must be reinstated into the operative Complaint.

It was error for the Third Cause of Action for Products Liability to have been omitted. The Proposed Fifth Amended Complaint is essentially identical to the Fourth Amended Complaint, with the only material change being the inclusion of the Third Cause of Action, at page 6, against Louisville Ladder, Inc. for Products Liability.

**5.    CONCLUSION**

It is respectfully submitted that that there will be little or no prejudice to any party in allowing amendment to re-allege a cause of action against Louisville Ladder for Products Liability, which was inadvertently omitted by Plaintiff from the Fourth Amended Complaint. Plaintiff respectfully requests that the present motion be granted, and that the Fifth Amended Complaint be deemed filed and served as of the date of granting this motion.

Dated: March 11, 2015                         SPEAR LAW FIRM


By: _____
    BRADLEY H. SPEAR
    Attorneys for Plaintiff
    NANCY J. ZAMORA, CHAPTER 7 TRUSTEE OF
    THE BANKRUPTCY ESTATE OF DAVID M. PARIS

## DECLARATION OF BRADLEY H. SPEAR

I, Bradley H. Spear, declare as follows:

1. I am an attorney duly admitted to practice law before all courts of the State of California, and the attorney of record herein for Plaintiff David M. Paris, in the within case <u>Paris v. Daneshrad, et al,</u> Case No. LC088148. In that capacity I have personal knowledge of the facts stated below, and if called upon to do so, I could and would competently testify thereto.

2. This declaration is provided in support of Plaintiff's Motion for an Order Granting Leave to File a Fifth Amended Complaint. The original of the proposed Fifth Amended Complaint is attached and marked Exhibit "A".

3. The sole material change to the Fifth Amended Complaint is simply the addition of the Third Cause of Action for Products Liability against Louisville Ladder, Inc. at page 6 of the Complaint.

4. This action involves an incident wherein David Paris was injured when, for reasons uncertain, he fell from a ladder manufactured and sold by Louisville Ladder, Inc. Upon ascertaining that the ladder was manufactured by Louisville Ladder, I caused to have filed Plaintiff's Second Amended Complaint naming Louisville Ladder as a defendant and alleging against it a third cause of action for Products Liability. That cause of action for Products Liability was erroneously omitted from both the Third and Fourth Amended Complaints I filed on behalf of Plaintiff.

5. The above amendment is necessary and proper due to the fact that the only viable cause of action that Defendant Louis Ladder, Inc. may be named as a Defendant in is for Products Liability. In preparing the Third and Fourth Amended Complaints I inadvertently omitted the Third Cause of Action for Products Liability against Louisville Ladder, Inc.

6. On February 11, 2015, I attended the hearing in the Bankruptcy Court for Approval of Plaintiff's Motion for Good Faith Settlement with Louisville Ladder, wherein the Bankruptcy Judge determined that he would require review of additional documentation, and ordered that a copy of the operative complaint in the within State Court action to be filed with the Bankruptcy Court on March 15, 2015.

7. Because the presently operative Fourth Amended Complaint does not contain a cause of action for Products Liability against Louisville Ladder. Plaintiff brings the this Motion for Leave to correct the error. The Products Liability cause of action is necessary, and is the only viable theory of liability against Louisville Ladder.

8. **On a personal note,** I have maintained for nearly a decade a professional and respectful relationship with His Honor Judge Sandvig, and during recent appearances I have found myself behaving in a disrespectful manner. I also find myself treating opposing counsel in a similar manner, and although I believe their behavior is intended to cause confusion and delay, this conduct is not acceptable and I regret my recent behavior in court.

9. In March of 2014, I experienced a sudden and difficult end of an important relationship. I soon began to suffer severe depression accompanied by a loss of appetite and a 35 pound weight loss, sleep of no more than 3-5 hours a night, fatigue, constant anxiety and sadness, inability to concentrate or work more than 4-5 hours per day.

10. From approximately April to December my work suffered and this case, with its many complicated issues, was among the most difficult for me to properly attend to. I made mistakes which created unnecessary confusion. In early December I finally sought the proper help for my condition and have, since that time, improved significantly, and while this case continues to suffer unnecessary delays I believe my client is presently well-positioned in this litigation.

11. That unpleasant period is now over and my courtroom demeanor will return to its proper form. Again, I regret any behavior which came across as anything other than zealous advocacy, and that extends to everyone present in the courtroom during my appearances.

    I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    Executed this 11th day of March, 2015, at Tarzana, California.

_____
Bradley H. Spear

## PROOF OF SERVICE

STATE OF CALIFORNIA          )
                             ) ss
COUNTY OF LOS ANGELES        )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 18455 Burbank Blvd., Suite 210, Tarzana, CA 91356.

On March 11, 2015, I served the foregoing document described as **NOTICE OF MOTION AND MOTION FOR ORDER GRANTING LEAVE TO FILE FIFTH AMENDED COMPLAINT ON SHORT NOTICE; POINTS AND AUTHORITIES; DECLARATION OF BRADLEY H. SPEAR; PROPOSED FIFTH AMENDED COMPLAINT** on the interested parties in this action.

(XX)    By placing ( ) the original/(X) a true copy thereof enclosed in a sealed envelope addressed as follows:

See attached Service List

(X) (BY MAIL)        I deposited such envelope(s) in the mail at Tarzana, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

(X) (BY FACSIMILE) I caused the original document to be forwarded, via facsimile, to the offices of counsel for Cross-Defendant, at Los Angeles, CA at numbers set forth in the below attached Service List.

( ) BY PERSONAL SERVICE) I caused such envelope(s) to be delivered by hand to the office(s) of the addressee(s) as to Defendant Alan B. Smith only.

(X) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 11th day of March, 2015, at Tarzana, California.

Bradley H. Spear

---

MOTION FOR LEAVE TO AMEND

8

1

## Service List

2   Mr. Alan B. Smith
    20742 Skouras Dr.
3   Winnetka, CA 91306

4

5   Jonathan R. Murphy, Esq.    (714) 427-7799    Fax
    Snell & Wilmer LLP
6   600 Anton Blvd. #1400
7   Costa Mesa, CA  92626-7689

8

    Sean Kim                   (213) 427-2330    Fax
9   Yoka & Smith LLP
    445 So. Figueroa Street, 38th Floor
10  Los Angeles, CA  90017

11

12  Mr. Edward O'Connor        (818) 887-4465    Fax
13  Law Offices of Perry Wolf
    21550 Oxnard St., Warner Center Plaza 2, Suite 600
14  Woodland Hills, CA 91367

15

16  Frank Ozello, Jr.          (818) 587-9147    Fax
    Maranga Morgenstern
17  5859 Canoga Ave., Suite 600
    Woodland Hills, CA  91367

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "H"

**Subject:**   Moderate Depression

**From:**   Bradley Spear (b.h.spear@att.net)

**To:**   jill.bromberg.495@my.csun.edu;

**Date:**   Friday, October 24, 2014 9:59 AM


Dear Jill:

Last night, at the attorney group meeting, I shared some of what I have gone through the past 7 months. The counselor, an MFT, immediately told me that I had been suffering from *moderate* depression (which I resisted but ultimately began to accept). As recently as 6 weeks ago I met four of the nine criteria for Major Depression (a minimum of 5 are required). Highlighted below in yellow are the 4 criteria I met for about 4-5 months. Arguably, numbers 2, 6 and 7 applied in certain ways but to a lesser extent. I definitely met numbers 1, 3, 4 and 8 for a full 3-4 months (frequent tearfulness, lack of appetite, insomnia and loss of concentration).



I hope this begins to explain my behavior and why I was adamant about getting closure. This has been a side of me that I never knew could exist, but now I do. Nothing will ever hurt me this way again.

DSM IV

### Major Depressive Episode

A. At least five of the following symptoms have been present during the same 2-week period and represent a change from previous functioning: at least one of the symptoms is either 1) depressed mood or 2) loss of interest or pleasure.

1. Depressed mood most of the day, nearly every day, as indicated either by subjective report (e.g., feels sad or empty) or observation made by others (e.g., appears tearful)
2. Markedly diminished interest or pleasure in all, or almost all, activities most of the day, nearly every day (as indicated either by subjective account or observation made by others)
3. Significant weight loss when not dieting or weight gain (e.g., a change of more than 5% of body weight in a month), or decrease or increase in appetite nearly every day
4. Insomnia or hypersomnia nearly every day
5. Psychomotor agitation or retardation nearly every day (observable by others, not merely subjective feelings of restlessness or being slowed down)
6. Fatigue or loss of energy nearly every day
7. Feelings of worthlessness or excessive or inappropriate guilt (which may be delusional) nearly every day (not merely self-reproach or guilt about being sick)
8. Diminished ability to think or concentrate, or indecisiveness, nearly every day (either by subjective account or as observed by others)
9. Recurrent thoughts of death (not just fear of dying), recurrent suicidal ideation without a specific plan, or a suicide attempt or specific plan for committing suicide

B. The symptoms do not meet criteria for a mixed episode.

C. The symptoms cause clinically significant distress or impairment in social, occupational, or other important areas of functioning.

D. The symptoms are not due to the direct physiological effects of a substance (e.g. a drug of abuse, a medication) or a general medical condition (e.g., hypothyroidism).

E. The symptoms are not better accounted for by bereavement, i.e., after the loss of a loved one, the symptoms persist for longer than 2 months or are characterized by marked functional impairment, morbid preoccupation with worthlessness, suicidal ideation, psychotic symptoms, or psychomotor retardation.

Bradley

# EXHIBIT "I"

IN ERROR, PLEASE ADVISE THE SENDER AND DELETE OR DESTROY THE MESSAGE AND
ANY COPIES OF IT. THANK YOU.

THINK OF THE ENVIRONMENT BEFORE PRINTING THIS PAGE

**From:** zamora3@aol.com [mailto:zamora3@aol.com]
**Sent:** Thursday, November 06, 2014 2:51 PM
**To:** Edward M. Wolkowitz; Jeffrey S. Kwong
**Subject:** Re: Paris

Ed/Jeffrey:

Thank you.

Also, did Mr. Spear discuss with you the settlement amount paid by the ladder company that needs to be
approved by the state and bankruptcy courts? I am informed that Mr. Spear deposited these funds in his client
trust account and has used a large portion of the funds for litigation expenses.

We may need to address this matter in some way in the employment application and/or a separate
compromise motion (after the fact) to correct what was done and to provide full disclosure to the court. My
concern is that if we don't address this, it may provide a basis for the other state court defendants to object
(even though their standing in the bankruptcy is questionable).

Nancy

-----Original Message-----
**From:** Edward M. Wolkowitz <EMW@lnbyb.com>
**To:** Jeffrey S. Kwong <JSK@lnbyb.com>
**Cc:** zamora3 <zamora3@aol.com>
**Sent:** Thu, Nov 6, 2014 2:02 pm
**Subject:** Paris

Jeffrey,

Please draft an application to employ Bradley Spear as the Trustee's special litigation counsel. The terms will
be in accordance with the retainer agreement between Spear and the debtor – copy attached. The application
should also provide that the trustee is the real party in interest in the litigation and will have sole discretion to
decide whether to recommend a settlement for approval. The application should also provide that the net
litigation proceeds will be paid to the estate and the court will subsequently decide how they should be
allocated.

Edward M. Wolkowitz
LEVENE, NEALE, BENDER, YOO & BRILL LLP
  800 South Figueroa St. Suite 1260
  Los Angeles, CA 90017
Main Office:
  10250 Constellation Bl. Suite 1700
  Los Angeles, CA 90067

310-229-3364 Direct
310-229-1234
310-861-1992 - Fax

emw@lnbyb.com

# EXHIBIT "J"

**Subject:**   Paris Bankruptcy / Paris v. Daneshrad

**From:**   Bradley Spear (b.h.spear@att.net)

**To:**   zamora3@aol.com;

**Date:**   Tuesday, September 30, 2014 11:04 AM

Ms. Zamora:

It was a pleasure speaking with you. You obviously have done your homework, and I hope I gave you the information that you needed.

Attached are my Retainer Agreement with Mr. Paris and the Statutory Lien letter from Hunter Donaldson. I don't believe that this lien was perfected prior to the filing of the bankruptcy.

I look forward to hearing from you and working with you.

Bradley H. Spear
Spear Law Firm
18455 Burbank Blvd., Suite 210
Tarzana, CA 91356
(818) 344-5100

## Attachments

- CCF09242014.tif (186.09KB)
- CCF09302014.tif (633.13KB)

# EXHIBIT "K"

**Subject:**  Re: In Re Paris

**From:**  Bradley Spear (b.h.spear@att.net)

**To:**  zamora3@aol.com;

**Cc:**  emw@lnbyb.com; jsk@lnbyb.com;

**Date:**  Monday, November 2, 2015 8:01 AM

Nancy:

Here is my update, addressing all of the issues you list below.

Most important is that on October 29, 2015 I received notice that my law license will be suspended on November 25, 2015. Among my obligations is that I must notify all of my clients, and find alternate counsel. You, of course, have known about my pending suspension and in regard I again contacted the attorney whom I have sought to take over this case. I will again contact him by this Tuesday.

First, while obtaining alternate counsel has now become more pressing, please understand that there is no real urgency regarding the actual handling of the case. There are two primary reasons for that: 1) Because we do not yet have a trial date set there is no discovery cutoff date set. We do not even go to court to get a trial date until the hearing of the Case Management Conference now set for January 21, 2016. The court will definitely set a trial date at the CMC, but will also give deference to any new trial counsel regarding providing adequate time to complete discovery and prepare for trial. 2) The fact is that my office has already completed all of the basic and essential discovery. There is, no doubt, additional discovery that could be done, but for that I will defer to the new attorney. Again, however, we will not even be given a trial date for nearly 3 months, at which time the court undoubtedly will allow additional time for discovery.

Regarding the matter of experts and witnesses, the only concern at this point will be to identify those persons familiar with Mr. Paris and who can offer testimony as to his pre-accident status and how this incident has affected him. The only percipient witness to the accident was JP Pierce who has been deposed, but who also has stage 4 cancer and will almost certainly be unavailable for trial. The only other witnesses would be defendant Alan Smith, who was the painting contractor that hired Mr. Pierce, and Mr. Paley, who hired Mr. Smith.

Regarding expert witnesses, we have already obtained the opinions of liability expert Brad Avrit. He is among the very elite experts in Los Angeles, and many see him as the very best. His further involvement will likely be only at trial. It is probable that a neuropsychological expert and likely an economist and a life-care planner should be engaged. That should be decided by the new attorney. Those experts would go to establishing the existence of significant general damages and special (past and future out of pocket) damages.

Nest, I do believe mediation should be given serious consideration, however not until the new attorney has the opportunity to get up to speed. Also, please understand that I am a member of CAALA and am familiar with and have access to many excellent litigation and trial firms.

Under the worst case scenario you could substitute my brother, Paul D. Spear, in as counsel once my
license is suspended, who would thereafter substitute out when the right firm takes the case.
Respectfully, Paul has your and my best interests at heart, and can and will do whatever he must to
assist this situation.  In the meantime I intend to continue moving forward on this matter.

Finally, I have attempted to contact Providence Health & Services regarding their $1 million lien.  On
Friday I was provided a phone number for the legal department which I intend to contact today.


Bradley H. Spear
Spear Law Firm
18455 Burbank Blvd., Suite 210
Tarzana, CA 91356
(818) 344-5100

---

**From:** "zamora3@aol.com" <zamora3@aol.com>
**To:** b.h.spear@att.net
**Cc:** emw@lnbyb.com; jsk@lnbyb.com
**Sent:** Friday, October 23, 2015 9:42 AM
**Subject:** Re: In Re Paris

Mr. Spear:

I appreciate the update and request that you provide a weekly update from now until we
have new trial counsel.

There are a number of outstanding issues to discuss and we may need a conference call to
discuss with general bankruptcy counsel.  Here are some of the topics although there may
be others:

medical liens and other claims in the case
status of discovery and discovery cut-off date
experts
witnesses
possible mediation
possible settlement
selection of new trial counsel whose employment must be approved by the bankruptcy court
your status with the state bar and when it changes

Nancy




-----Original Message-----
From: Bradley Spear <b.h.spear@att.net>
To: Nancy Zamora <zamora3@aol.com>
Cc: Edward M. Wolkowitz <emw@lnbyb.com>; Jeffrey S. Kwong <jsk@lnbyb.com>
Sent: Fri, Oct 23, 2015 8:34 am

**Subject:**   Re: In Re Paris--atty-client privileged communication

**From:**   zamora3@aol.com (zamora3@aol.com)

**To:**   b.h.spear@att.net;

**Cc:**   emw@lnbyb.com; jsk@lnbyb.com;

**Date:**   Wednesday, December 2, 2015 2:20 PM


Bradley:

I do not want Paul to substitute.

I will discuss with general counsel and advise you later.

Nancy


-----Original Message-----
From: Bradley Spear <b.h.spear@att.net>
To: Nancy Zamora <zamora3@aol.com>
Cc: emw <emw@lnbyb.com>; jsk <jsk@lnbyb.com>
Sent: Wed, Dec 2, 2015 2:15 pm
Subject: Re: In Re Paris--atty-client privileged communication

Nancy:

As you are aware, my suspension was effective November 25, 2015.  Therefore, at this time you are
without an attorney.  I have handled this situation with my other clients by advising them that
they have the right to obtain alternate counsel and that my brother, Paul D. Spear, is willing and
able to take on the case.  Without exception each of my clients has agreed to continue their case with
Paul, who has been an attorney now nearly 8 years.

As I have not heard from you I anticipate that you have been preoccupied.  Nonetheless, the issue of
retaining a new attorney must be addressed shortly.

Please advise whether you would be inclined to retain the services of Paul D. Spear, at least for the
interim, so that there will be no real break in you having legal representation, or otherwise advise me
how you want to proceed.

Of course you are aware that I am no longer able to offer legal advise regarding the handling of this
case, however I feel that I am able to discuss status and other clerical information.

Bradley H. Spear
Spear Law Firm
18455 Burbank Blvd., Suite 210
Tarzana, CA 91356
(818) 344-5100

# EXHIBIT "L"

59 A.L.R.5th 693 (Originally published in 1998)

American Law Reports
ALR5th
The ALR databases are made current by the weekly addition of relevant new cases.

George L. Blum, J.D.

Attorney's right to compensation as affected by disbarment or suspension before complete performance

The creation of the relation of attorney and client by contract, express or implied, is essential to the right of an attorney to recover compensation for services. The determination whether an attorney has a right to compensation for services rendered can be severely impacted by the attorney's voluntary withdrawal from the case or the client's discharge of the attorney without cause. The issue also arises as to whether an attorney who has entered into a contract of representation with a client, and who has partially performed under the contract, is entitled to compensation where the attorney is disbarred or suspended from the practice of law before complete performance under the contract has been achieved. In In re Mekler (1995, Del) 672 A2d 23, 59 ALR5th 887, for example, the court held that a suspended attorney was not precluded from receiving payment for services rendered by the attorney prior to his suspension, the court reasoning that nothing in the judgment of suspension precluded the attorney from taking appropriate means to collect past-due accounts properly owing, provided that all such steps taken by him were clearly taken as an individual creditor and that no such step would be undertaken in a manner which would lead a reasonable person to believe that the attorney was "acting as a lawyer." This annotation collects and analyzes the cases dealing with an attorney's right to recover compensation for legal services rendered as it is affected by his or her disbarment or suspension before complete performance.

---

**TABLE OF CONTENTS**

Article Outline
Index
Table of Cases, Laws, and Rules
Research References

---

**ARTICLE OUTLINE**

I Preliminary Matters

§ 1[a] Introduction—Scope

§ 1[b] Introduction—Related annotations

§ 2[a] Summary and comment—Generally

§ 2[b] Summary and comment—Practice pointers

II Litigation Between Disbarred or Suspended Attorney and Client

§ 3 View that disbarment or suspension forfeits right to compensation

§ 4 View that disbarment or suspension does not forfeit right to compensation

§ 5[a] New York cases—Recovery disallowed

§ 5[b] New York cases—Recovery allowed

III Litigation Between Disbarred or Suspended Attorney and Other Attorney

§ 6 Recovery disallowed

§ 7 Recovery allowed

Research References

---

## INDEX

Abandonment of contract, §§ 3- 5[a], 6, 7
Ability of attorney, § 5[b]
Accounting of assets and income of law partnership, § 7
Affirmative wrongdoing, § 5[a]
Ambulance chasing, § 5[a]
Attorney-client relationship, §§ 3, 4
Background, § 2[a]
Bankruptcy of attorney, §§ 4- 6
Benefit received by client, evidence as to, § 5[b]
Billing of fees before date of suspension, § 4
Burden of establishing value of services rendered, § 5[b]
Claim against United States, § 3
Client and disbarred or suspended attorney, litigation between, §§ 3- 5
Comment and summary, § 2
Complexity of matter, § 5[b]
Connection of conduct leading to disbarment or suspension to services rendered, §§ 4, 5
Consideration for retainer payments, absence of, § 4
Contempt for violation of suspension order, § 4
Contingent-fee contracts, §§ 3- 7
Court of Claims, § 3
Creditor, taking of steps to collect past-due accounts as, § 4
Criminal contempt for violation of suspension order, § 4
Customary fees for similar work, § 5[b]
Depositions, notifying of, § 7
Dissolution of law firm, §§ 4, 7
Division of fees, §§ 5[a], 7
Earned prior to suspension, fees which were, § 7
Estates, § 3
Experience or reputation of attorney, § 5[b]
False statements on application for admission to Bar, § 4
Firm as also precluded from recovering fees, § 4
Introduction to annotation, § 1
Irrigation district, § 4
Joint enterprise between disbarred attorney and other attorneys, § 6
Litigation between disbarred or suspended attorney and client, §§ 3- 5
Litigation between disbarred or suspended attorney and other attorney, §§ 6, 7
Locating witnesses and clients, § 7
Loss of file, § 5[b]
Medical examinations, notifying of, § 7
Medical malpractice, § 4
Operation of law, termination of attorney-client relationship by, § 4
Other attorney, litigation between disbarred or suspended attorney and, §§ 6, 7
Partnership status of attorney on date of suspension, § 7
Passive conduct, § 5[a]
Past-due accounts, § 4
Pension claim, receiving greater compensation than allowed by law for prosecution of, § 4
Personal-injury actions, §§ 4, 5, 7

Power of attorney to prosecute claim before Treasury Department, § 4
Practice pointers, § 2[b]
Prefatory matters, §§ 1, 2
Profits, share of former partner, § 7
Public-service company, § 7
Quantum meruit, §§ 3- 7
Railroad company, § 3
Referral-fee agreement, § 4
Related matters, § 1[b]
Reputation of attorney, § 5[b]
Results accomplished, evidence as to, § 5[b]
Retainer agreements and payments, §§ 4, 5[a], 7
Scope of annotation, § 1[a]
Skill required, § 5[b]
Summary and comment, § 2
Tax refund, suit for, § 5[a]
Telephone directory, continued listing as attorney in, § 4
Time sheets, failure to produce, § 5[b]
Transportation, arranging, § 7
Treasury Department, matters before, § 4
Unjust enrichment of client, §§ 4, 5[b]
Usual fee charged by other attorneys for similar services, § 5[b]
Value of services rendered, burden of establishing, § 5[b]

---

**Table of Cases, Laws, and Rules**

**Second Circuit**
Woodworth, In re, 85 F.2d 50 (C.C.A. 2d Cir. 1936) — 2[b], 4, 5[b]

**Third Circuit**
Eisenberg v. General Motors Acceptance Corp., 761 F. Supp. 20 (E.D. Pa. 1991) — 2[b]

**Fifth Circuit**
Cooper v. Texaco, Inc., 961 F.2d 71 (5th Cir. 1992) — 2[b], 4

**District of Columbia Circuit**
Fletcher v. Krise, 120 F.2d 809 (App. D.C. 1941) — 4

**Colorado**
Jenkins v. Weinshienk, 670 F.2d 915 (10th Cir. 1982) (applying Colorado law) — 4

**Delaware**
Mekler, Matter of, 672 A.2d 23, 59 A.L.R.5th 887 (Del. 1995) — 2[b], 4

**District of Columbia**
Fletcher v. Krise, 120 F.2d 809 (App. D.C. 1941) (applying District of Columbia law) — 3

**Illinois**
Berg, In re, 387 B.R. 524 (Bankr. N.D. Ill. 2008) (applying Illinois law) — 4
Harris Trust & Sav. Bank v. Chicago College of Osteopathic Medicine, 116 Ill. App. 3d 906, 72 Ill. Dec. 448, 452 N.E.2d
701 (1st Dist. 1983) — 2[b], 4

## Missouri

Kimmie v. Terminal R. Ass'n of St. Louis, 344 Mo. 412, 126 S.W.2d 1197 (1939) — 3, 7

Pollock v. Wetterau Food Distribution Group, 11 S.W.3d 754 (Mo. Ct. App. E.D. 1999) — 4

Sympson v. Rogers, 406 S.W.2d 26, 24 A.L.R.3d 1183 (Mo. 1966) — 5[a], 7

Sympson v. Rogers, 314 S.W.2d 717 (Mo. 1958) — 7

## New Jersey

Stein v. Shaw, 6 N.J. 525, 79 A.2d 310 (1951) — 2[b], 4

## New York

Alexander v Kraemer (1962, Sup) NYLJ 14 — 5[b]

Torgerson v Harboro Associates, Inc. (1962, Sup) NYLJ 17 — 5[b]

Biagioni v. Narrows MRI and Diagnostic Radiology, P.C., 127 A.D.3d 800, 2015 WL 1542529 (2d Dep't 2015) — 5[b]

Dudar v. Milef Realty Corp., 227 A.D. 279, 237 N.Y.S. 499 (1st Dep't 1929) — 5[a]

Eisen v. Feder, 307 A.D.2d 817, 763 N.Y.S.2d 279 (1st Dep't 2003) — 7

Emanuel, In re, 422 B.R. 443 (Bankr. S.D. N.Y. 2009) (applying New York law) — 5[b]

Flecha v. Goodman, 31 Misc. 2d 444, 221 N.Y.S.2d 823 (Sup 1961) — 5[b], 7

Gary v. Cohen, 34 Misc. 2d 971, 231 N.Y.S.2d 394 (Sup 1962) — 2[b], 5[a]

Goldman v. Rio, 19 Misc. 3d 384, 853 N.Y.S.2d 837 (Sup 2008) — 4

Greenberg v. Cohn, 153 Misc. 2d 495, 582 N.Y.S.2d 597 (Sup 1992) — 2[b], 7

Jordan v. Freeman, 40 A.D.2d 656, 336 N.Y.S.2d 671 (1st Dep't 1972) — 2[b]

Mitchell v. B.A.S.F., 145 Misc. 2d 930, 548 N.Y.S.2d 135 (Sup 1989) — 2[b], 5[b], 7

Polansky, In re, 33 Misc. 2d 292, 223 N.Y.S.2d 606 (Dist. Ct. 1962) — 5[b]

Posner v. Messinger, 197 A.D.2d 508, 602 N.Y.S.2d 204 (2d Dep't 1993) — 7

Potts v. Hines, 144 A.D.2d 189, 534 N.Y.S.2d 507 (3d Dep't 1988) — 2[b], 5[b]

Rosenzweig v. Gomez, 250 A.D.2d 664, 672 N.Y.S.2d 907 (2d Dep't 1998) — 5[b]

Rothman v. Benedict P. Morelli & Associates, P.C., 43 A.D.3d 769, 843 N.Y.S.2d 211 (1st Dep't 2007) — 5[a]

Shabbona Creston Oil & Gas Corp. v. Doherty, 264 A.D. 909, 35 N.Y.S.2d 839 (1st Dep't 1942) — 5[b]

Tiringer v. Grafenecker, 38 Misc. 2d 29, 239 N.Y.S.2d 567 (App. Term 1962) — 5[b]

Woodworth, In re, 85 F.2d 50 (C.C.A. 2d Cir. 1936) (applying New York law) — 5[a]

## North Dakota

Bessie v. Northern Pac. Ry. Co., 14 N.D. 614, 105 N.W. 936 (1905) — 4

## Pennsylvania

Eisenberg v. General Motors Acceptance Corp., 761 F. Supp. 20 (E.D. Pa. 1991) (applying Pennsylvania law) — 4

## South Dakota

Davenport v. Waggoner, 49 S.D. 592, 207 N.W. 972, 45 A.L.R. 1126 (1926) — 4, 6, 7

Egan v. Waggoner, 41 S.D. 239, 170 N.W. 142 (1918) — 5[a], 6, 7

## Tennessee

Moyers v. Graham, 83 Tenn. 57, 1885 WL 2869 (1885) — 4

## Texas

Royden v. Ardoin, 160 Tex. 338, 331 S.W.2d 206 (1960) — 3

## Washington

Hawkins, In re, 81 Wash. 2d 504, 503 P.2d 95 (1972) — 4

## I. Preliminary Matters

### § 1[a] Introduction—Scope

This annotation [1] collects and analyzes the cases dealing with an attorney's right to recover compensation for legal services rendered as it is affected by his or her disbarment or suspension before complete performance. The term "before complete performance" means, as to situations involving litigation, that the case for which compensation was sought was not completely terminated by either settlement or trial at the time of disbarment or suspension. [2]

The subject annotated is the right to compensation, and therefore excluded from the annotation are cases dealing with the actual determination of the reasonable value of the disbarred or suspended attorney's services in jurisdictions where such recovery has been allowed by the courts.

A number of jurisdictions have rules, regulations, constitutional provisions, or legislative enactments directly bearing upon this subject. These provisions are discussed herein only to the extent and in the form that they are reflected in the court opinions that fall within the scope of this annotation. The reader is consequently advised to consult the appropriate statutory or regulatory compilations to ascertain the current status of all statutes discussed herein, including those listed in the Jurisdictional Table of Cited Statutes and Cases.

### § 1[b] Introduction—Related annotations

Related Annotations are located under the Research References heading of this Annotation.

### § 2[a] Summary and comment—Generally

As a general proposition, lawyers are entitled to compensation for services rendered to their clients, and, in the absence of an express agreement as to the amount of the compensation, they are entitled to reasonable remuneration. Unless restricted by a contingent-fee contract, an attorney who gives ordinary care and diligence to matters entrusted to his or her care is entitled to compensation for his or her services regardless of benefits accruing to the client. [3]

The creation of the relation of attorney and client by contract, express or implied, is essential to the right of an attorney to recover compensation for services. In general, there can be no recovery from one who did not employ or authorize employment of the attorney, regardless of however valuable the result of the attorney's services may have been. Moreover, unless the circumstances show that services were intended to be gratuitous, a party's acceptance of, or acquiescence in, the services rendered by an attorney will raise an implied promise to pay for the services. The party sought to be charged must be free to take or reject the benefit of the services, however. [4]

The creation of an attorney-client relationship is essentially contractual. It is not necessary that any particular formalities be observed in the formation of the relationship or that a retainer be demanded or paid. A retainer is said to be the act of a client by which he or she engages an attorney. It is a preliminary fee given to counsel to secure his or her services or to prevent the opposite side from engaging them. [5]

Contracts employing attorneys for professional services, where the services may be completely performed within a year, are not within the statute of frauds and are not required to be in writing. If, however, an attorney and his client agree upon a conveyance of land involved in the litigation as part or all of the fees, the agreement must be in writing in order to be valid under the statute of frauds. [6]

The essentials of an express-fee contract for legal services are the same as for any other contract of employment and are governed by the ordinary rules of contract law. Hence, ordinarily, construction of a contract for compensation of an attorney is governed by the same rules that apply to contracts generally. Whether a contract between client and attorney is overreaching and unconscionable is generally a question of fact for the trial court. [7]

Contingent-fee contracts between attorney and client are recognized as valid unless obtained by fraud, mistake, undue influence, or suppression of facts on the part of the attorney, or unless the contract is contrary to public policy. In the absence of a prohibitory statute, the contract is upheld when made by a public body employing an attorney, provided the fee is reasonable. [8]

In some jurisdictions, a contract for a contingent fee is deemed to create a pro tanto equitable assignment, to transfer an equitable interest in favor of the attorney in the judgment or the proceeds of settlement, or to give him or her a lien on the judgment or its proceeds. Other courts hold that a contingent-fee contract does not operate as an assignment without an express agreement to that effect. A contingent-fee contract based on a percentage of the recovery is not such an assignment as necessitates the attorney joining as a party plaintiff. [9]

It is generally held that an attorney who does not at all times represent his or her client with undivided fidelity is not entitled to compensation for his or her services, even though his or her conduct was not intentionally prejudicial to the client's interest. An attorney who is guilty of actual fraud or bad faith toward the client, or who seeks to secure personal advantage to the prejudice of the client, is not entitled to any compensation for services. Nor can the attorney recover for services rendered in violation of the requirements of professional responsibility. And a client may show, as a defense to a claim for compensation, that the attorney's services were worthless because of ignorance or negligence, although it should be remembered that an attorney is not an insurer of the result in a case in which he or she is employed unless the attorney makes a special contract to that effect. [10]

Where an attorney has accepted employment to represent an interest adverse to that of a former client, the courts have, on the facts presented, sometimes held that the attorney's conduct did not free the former client from the obligation to pay the attorney the fees called for by the contract, but in other instances the courts have held that the attorney could not recover the fee from the party wronged. In some, but not all, cases, the courts have refused to enforce the employment contract between the attorney and the later client. [11]

The issue arises as to whether an attorney who has entered into a contract of representation with a client, and who has partially performed under the contract, is entitled to compensation where the attorney is disbarred or suspended from the practice of law before complete performance under the contract has been achieved.

A number of courts, implementing the theory that they are in the position of those who voluntarily and willfully abandon their contracts of employment, have held that attorneys who are disbarred or suspended before the completion of their employment contracts are not entitled to recover from their clients for legal services rendered prior to the disbarment or suspension (§ 3). In other cases, though, the courts have allowed a disbarred or suspended attorney to recover from a client for the "reasonable value" of legal services performed before the attorney's disbarment or suspension (§ 4).

In New York, the rule as to whether a disbarred or suspended attorney can recover for services rendered, but not completed, prior to his or her disbarment or suspension appears to be somewhat uncertain, there being some authority denying recovery on, for example, a quantum meruit basis (§ 5[a]) but other authority allowing such recovery, at least where there is no claim that there was any misconduct in connection with the case for which the compensation is sought (§ 5[b]).

Lastly, in the reported decisions involving litigation between a disbarred or suspended attorney and other attorneys, it has been held that the former could not recover for services rendered prior to his disbarment or suspension, on the theory that disbarment or suspension annuls the contract of employment or that it is equivalent to a voluntary abandonment of the contract (§ 6). There is contrary authority, however, where the contract for the division of fees between an attorney facing disbarment proceedings and other attorneys was made, for example, with their full knowledge of his intention to turn in his license (§ 7).

### § 2[b] Summary and comment—Practice pointers

The argument that an attorney who consents to his or her disbarment has therefore "voluntarily" abandoned the client without just cause, such that the attorney is not entitled to fees for unpaid services rendered, has been termed by one court to be a "distinction without a difference." The court noted that the loss of one's license to practice law, regardless of whether voluntarily or involuntarily, prohibits one from practicing law and provides a proper reason to withdraw from a case. [12]

While an attorney may be allowed compensation for services rendered before he or she was suspended or disbarred, the suspended lawyer is typically prohibited from taking any actions to collect on the "debt" of unpaid fees which could characterize the "creditor" as acting in the role of an attorney. [13]

At least one court has held that a state disciplinary rule governing an attorney's resignation from the bar during the pendency of disbarment proceedings cannot be interpreted to mean that an attorney, by so resigning, thereby is agreeing to the forgiveness of all debts currently owed. [14]

Some courts which determine that an attorney, subsequent to his or her suspension or disbarment, is nonetheless entitled to the reasonable value of services rendered prior to the suspension or disbarment, provided that the conduct leading up to the discipline was unrelated to the subject case, utilize an "unjust-enrichment" theory. [15]

In some jurisdictions, a suspended or disbarred attorney claiming fees for services rendered prior to the suspension or disbarment on a quantum meruit basis must establish the facts upon which the "reasonable value" of the disbarred attorney's services may be measured. [16] As such, it may be difficult for the attorney requesting such compensation to recover fees for services rendered if he or she does not have a proper "paper record" documenting the work performed. [17] Some courts, however, have set counsel fees on an incomplete record based on the courts' own assessment of the value of the attorney's services. [18]

At least one court has noted the potential difficulty in determining the value of services due a suspended or disbarred attorney from a former partner with respect to contingency-fee cases on which the disciplined attorney worked prior to his or her suspension or disbarment. The court held that each contingency case must be examined and its status at the time of the plaintiff's suspension determined. [19] For those cases settled or otherwise concluded, but for which no fee had yet been collected at the time of the plaintiff's suspension or disbarment, the court held, the plaintiff would be entitled to his one-third share of 100 percent of the fee (pursuant to the partnership agreement which had been entered into by the plaintiff and the defendant). For those cases which were in various stages of litigation, preliminary or actual, at the time of the suspension or disbarment, the court elaborated, an examination of each file must be made and a determination reached as to the value of the partnership interest earned in each file as of the date of the suspension, expressed as a percentage of the total fee to be earned in that case.

It should be noted that, subsequent to the suspension of an attorney who is a sole partner or shareholder in a law corporation, the court may order that neither the attorney nor his "firm" may be entitled to fees on affected cases during the period of suspension. [20]

A suspended attorney who, after reinstatement to the bar, engages contemporaneously with subsequently retained counsel to effectuate a settlement of the case will nonetheless generally be unable to collect more than on a quantum meruit basis, the rationale being that whatever contract the suspended attorney had previously entered into with the client prior to the suspension is not automatically revived upon the attorney's reinstatement. [21]

Some courts, in allowing recovery by attorneys for the reasonable value of services provided prior to the attorney's disbarment or suspension, reason that, while the disbarment or suspension discharges the original contract between attorney and client, the prior existence of such contract does not preclude the recovery by the attorney from the client in quasi-contract for the reasonable value of services rendered. [22]

Counsel concerned with the question whether a disbarred or suspended attorney is entitled to recover compensation for services rendered, but not completed, prior to his or her disbarment or suspension should, of course, also be familiar with the effect of disbarment or suspension upon the various kinds of attorneys' liens. A number of cases discussed in this annotation have involved the assertion of a lien by the disbarred or suspended attorney in connection with his or her claim for compensation. There is authority that disbarment, ipso facto, destroys an attorney's retaining lien [23] and, further, that suspension of an attorney from the right to practice causes a forfeiture of any retaining lien that he or she may have. [24]

One court has noted that relevant issues to be determined in an analysis of the eligibility of a suspended or disbarred attorney to compensation for services rendered prior to his or her suspension or disbarment are whether he or she had substantially performed services in the case prior to the cancellation of his or her license to practice law; whether the attorney's act giving rise to the disciplinary proceedings did or did not pertain to the instant case and, if not, whether it was before or after his or her retention in the case; and whether the disbarment resulted from conduct passive in nature, such as neglect of the interests of other clients, as distinguished from positive acts of affirmative wrongdoing. [25]

## II. Litigation Between Disbarred or Suspended Attorney and Client

### § 3. View that disbarment or suspension forfeits right to compensation

The courts in the following cases, applying the theory that the disbarment or suspension of an attorney for misconduct is equivalent to a voluntary abandonment of his or her contract of employment, held that a disbarred or suspended attorney is not entitled to recover for legal services which he or she rendered before being disbarred or suspended from practice.

The court in Fletcher v. Krise, 120 F.2d 809 (App.D.C D.C. Cir. 1941), cert. denied, 314 U.S. 608, 62 S. Ct. 88, 86 L. Ed. 489 (1941) and (declined to follow by, Eisenberg v. General Motors Acceptance Corp., 761 F. Supp. 20 (E.D. Pa. 1991)) (applying District of Columbia law), § 4, reasoning that disbarment prior to the completion of a case is equivalent to a voluntary and unjustified withdrawal from the matter, held that the disbarred attorney thereafter loses the right to compensation. Pursuant to a contract on a contingent-fee basis entered into with the defendant as the receiver of a certain corporation, the plaintiff attorney, together with another lawyer, instituted suits in the state and federal courts in Virginia in connection with a claim against the United States. The evidence indicated that the plaintiff prepared the pleadings and other documents but that none of the suits was successful. Subsequently, the attorney was disbarred, but he nevertheless prepared a bill for introduction in Congress to enable the receiver to sue on his claim in the Court of Claims. Although this bill was vetoed, a similar bill was introduced and passed, which enabled other counsel to secure judgment in the Court of Claims for the receiver. The plaintiff thereafter sued on the contingent-fee contract to recover

25 percent of the money judgment. The court held that the attorney's disbarment prior to the successful completion of the litigation, and his consequent inability to render professional services in promoting the claim, deprived him of any right to compensation either under his contract or on a quantum meruit theory. Affirming a judgment for the receiver rendered by the court below, the court concluded that the receiver was entitled to a judgment as a matter of law.

In Kimmie v. Terminal R. Ass'n of St. Louis, 344 Mo. 412, 126 S.W.2d 1197 (1939) (disagreement on other grounds recognized by, City of Keytesville v. Kelco Industries, Inc., 773 F. Supp. 1264, 91-2 U.S. Tax Cas. (CCH) ¶50483, 68 A.F.T.R.2d (P-H) P 68 91-5918 (E.D. Mo. 1991)), the court, considering an attorney's suspension to be the equivalent of a "voluntary abandonment" of his contract of employment with his client, held that the attorney was not entitled to recover for services rendered prior to his suspension. The injured client retained the services of an attorney to prosecute his claim for damages against a railroad company; under a written contingency contract fixing the attorney's fee at 40 percent of the amount collected, the attorney filed suit against the company. Subsequent to obtaining two successive verdicts for his client, each of which was reversed on appeal, and while the case was awaiting a third trial, the attorney was suspended from practice for a period of two years. Despite being under suspension, the attorney continued to confer for a number of days with his client and the company's attorney with reference to a settlement of the case, though the negotiations concluded without success. After the client had engaged the services of another attorney, negotiations for a settlement were resumed, and the case was ultimately settled for $15,000. A consent judgment for $15,000 was entered, and the amount was deposited in court so as to give the suspended attorney an opportunity to assert and to have the court determine his lien upon the judgment, if any. The suspended attorney pleaded in two counts for an attorney's fee —the first count was on the contract for 40 percent of the amount collected by suit or otherwise, and the second was on quantum meruit. The trial court denied the suspended attorney any lien as against the judgment collected by his former client, and the attorney appealed. The court, on review, pointed out that the attorney conceded that, if he "willfully abandoned" his contract or wrongfully refused to perform the same, he would obviously not be entitled to a fee upon the contract or in quantum meruit. It is the rule, the court continued, that an attorney forfeits all rights to payment for services by abandoning his or her client without just cause before the termination of the services for which he or she was retained. Moreover, the court explained, if a single engagement of service is had for a specified time, or to do a specified thing, there can be no recovery if the plaintiff quits the service without cause, and of his or her own fault, before the expiration of the time. Moreover, the court stated, if the attorney agrees to complete a certain service and quits without cause and without fault of his or her employer, the attorney cannot recover. As such, the court clarified, the issue to be determined was whether the attorney, in view of his suspension from the practice of law, had "quit the service" of the client or would be entitled to a lien for legal services against the settlement proceeds. The court, affirming the judgment of the court below, reasoned that, since the misconduct for which the attorney was suspended was voluntary conduct on his part, his suspension was equivalent to voluntary abandonment, he could not recover any compensation for services performed, and he was not entitled to any lien on the fund awarded to his former client.

For New York cases wherein the courts determined that attorneys who had been suspended or disbarred from practice were not entitled to compensation for services rendered prior to the suspension or disbarment, see § 5[a].

An attorney who was suspended prior to completing the services that he contracted for under a contingent-fee contract was not entitled to collect either on the contract or upon a quantum meruit theory, the court held in Royden v Ardoin (1960) 160 Tex 338, 331 SW2d 206, rehg of cause overr (Feb 10, 1960). The attorney entered into a written contract of employment from a widow in consideration of a contingent fee consisting of one-third of what he might recover for his client out of her deceased son's estate. After his license to practice law was suspended, the attorney was temporarily enjoined from having anything to do with his client's property or affairs. The attorney subsequently sued the guardian of the person and estate of the client in quantum meruit for services rendered to her prior to the guardian's appointment. The intermediate appellate tribunal ruled that it was immaterial that the respondent was an attorney and that his license to practice had been suspended, since the contract involved did not create an attorney-client relationship but was one "preferable by a layman," and further concluded that recovery could be allowed for the value of such services as were of benefit to, and were accepted by, the other contracting party. The state supreme court, however, on review, declared that

the respondent was employed as a lawyer, performed services that a lawyer would be called upon to perform, and filed his suit for legal services. The court, affirming a summary judgment rendered by the trial court for the guardian, ruled that an attorney's disbarment or suspension is tantamount to, and has the same effect as, a "voluntary abandonment" of the case, for the attorney, by knowingly and willfully practicing such a course of conduct that would lead to the termination of his or her right to practice, renders it impossible to complete the work that he or she engaged to perform. Consequently, the court concluded, an attorney so situated would not be entitled to collect for legal services either on the contract or on quantum meruit.

### § 4. View that disbarment or suspension does not forfeit right to compensation

#### [Cumulative Supplement]

In the following cases, the courts held that disbarment or suspension prior to complete performance by an attorney would not serve to preclude the attorney's recovery for the reasonable value of services rendered prior to the loss of his or her license to practice law.

See Jenkins v Weinshienk (1982, CA10) 670 F2d 915 (applying Colorado law), a case not in point for this annotation, in which the court noted that disbarment is a circumstance justifying the forfeiture of the attorney's files, although, "even in such cases Colorado has protected the attorney's lien right for fees owed in cases in which there was no misconduct."

According to the court in In re Mekler (1995, Del) 672 A2d 23, 59 ALR5th 887, a suspended attorney would not be precluded from receiving compensation for services rendered prior to the suspension. The subject attorney was suspended from the practice of law for a period of not less than one year upon findings of certain violations of the state's rules of professional conduct pertaining to lawyers. The attorney, following the judgment of the court, requested instructions regarding, among other things, the receipt of fees for services rendered but not paid. The state supreme court, upon the request for instructions, held that nothing in the original judgment prohibited the receipt of such fees. The court, specifically referencing that portion of the judgment which stated that, during the suspension, the attorney "shall conduct no act directly or indirectly constituting the practice of law (including the sharing or receipt of any legal fees)," pointed out that all active files which had been handled by the subject attorney had been transferred to another lawyer, with appropriate notice given to all clients and opposing counsel. The court noted that the subject attorney was due fees for services already rendered, however, and, assuming that the fees had been billed before the date of suspension and that such charges were proper, the attorney would be a creditor and the former client a debtor as to such proper charges. Nothing in the judgment precluded the attorney from taking appropriate means to collect past-due accounts properly owing, the court reasoned, provided that all such steps taken by him were clearly taken as an individual creditor and that no such step would be undertaken in a manner which would lead a reasonable person to believe that the attorney was "acting as a lawyer." The court commented that the attorney could engage a member of the bar to represent him in the collection of past-due accounts but that his role in that event would be solely as a "client-creditor," and he could not leave any impression that he was acting as a lawyer or as the agent of a lawyer.

The court in Harris Trust & Sav. Bank v Chicago College of Osteopathic Medicine (1983, 1st Dist) 116 Ill App 3d 906, 72 Ill Dec 448, 452 NE2d 701, held that a disbarred attorney, as with the case of a discharged attorney, is entitled to a recovery of compensation for services rendered up to the point of his or her disbarment. The parents of an injured minor retained the subject attorney in connection with a claim of medical malpractice; the attorney ultimately turned over the file to another lawyer for the purpose of acting as trial counsel. Approximately one year later, the subject attorney was disbarred for making several material false statements on his application for admission to the bar, after which the minor's parents discharged the attorney and retained the trial counsel as sole attorney on the case. After the trial counsel effectuated a settlement of $2 million against the defendants, the trustee for the disbarred attorney's bankruptcy estate filed a petition for fees against the settlement, claiming that, based upon the referral-fee agreement between the disbarred attorney and trial counsel, the disbarred attorney was entitled to 42.5 percent of the recovery. Upon a denial of attorney's

fees for the disbarred attorney by the court, the bankruptcy trustee filed a petition for rehearing. More specifically, the trustee alleged, among other things, that the disbarred attorney was entitled to fees for services rendered prior to the disbarment on a quantum meruit basis. The court, on rehearing, found at the outset that the disbarred attorney had no claim that he was owed additional fees under the referral agreement, since he had been paid a sum of money by the trial counsel to whom the case was referred in complete discharge and release for all claims the disbarred attorney might have for attorney's fees and costs in connection with the subject litigation. With respect to the quantum meruit claim, however, the court noted that, after his or her discharge from a case, an attorney's right to recover fees is limited to reasonable fees for services rendered up to his or her discharge. The same rule applies to a disbarred attorney, the court related, in that his or her recovery for fees is limited to the reasonable value of the services rendered up to the time of the disbarment. Referencing Stein v Shaw (1951) 6 NJ 525, 79 A2d 310, this section, the court reasoned that to deprive an attorney of his or her claim for any compensation for services rendered prior to the disbarment, when the unprofessional conduct leading to the disbarment or suspension was not in any way connected with the services rendered, would be inequitable. The court commented that there would be no sound legal reason for permitting the client to use the attorney's disbarment as an escape from paying the attorney for services rendered or necessary disbursements made by him in the client's behalf. In the instant case, however, the court instructed, the evidence indicated without contradiction that the trial counsel had advanced the disbarred attorney large sums not only in anticipation of his referral-fee interest in the case but also to satisfy any claim by the disbarred attorney for fees, and, in consideration for such, the disbarred attorney released in writing any lien he might have had. Given the initial payment by the trial counsel to the referring attorney, the court concluded, the disbarred attorney was not entitled to any further sums for services rendered prior to his disbarment on a quantum meruit basis.

According to the court in Cooper v. Texaco, Inc., 961 F.2d 71 (5th Cir. 1992), reh'g denied, (June 9, 1992) and related reference, 1993 WL 353457 (E.D. La. 1993) (applying Louisiana law), while neither a suspended attorney nor his firm could receive fees for services performed subsequent to the order suspending the attorney, the attorney could recover fees on a quantum meruit basis for work performed on pre-existing cases prior to his suspension. At the time of the attorney's suspension, he was the sole partner and shareholder of a professional law corporation; after his suspension, he hired two associates who became the attorneys of record for all of the suspended attorney's cases pending in the district from which he was suspended. The evidence indicated that, subsequent to his suspension, the attorney, among other things, negotiated and approved settlements, advised clients, and wrote letters on his professional stationery relating to cases filed in the subject district. The attorney was ultimately found guilty of criminal contempt for violating his suspension order, the judge further ruling that the attorney could not collect fees for any legal work performed on the pertinent district cases after the suspension order against him was entered. The court, on review of the attorney's appeal, pointed out that the clients in all six cases pending in the district from which the attorney had been suspended had entered into contingency-fee contracts with the attorney's firm and that three were clients at the time of the suspension order and three others became clients after the order had been entered. The attorney, the court related, was entitled to recover quantum meruit fees for work performed on the three pre-existing cases before he was suspended, but he could recover no fees from the three cases that he assumed after the suspension order. The court concluded that, since the suspension order barred the attorney from acting in the capacity of supervising attorney on any of the pertinent cases, neither he nor his firm could receive legal fees for any work performed on such cases after the date of the order and during his period of suspension.

Reasoning that a contrary determination would result in the unjust enrichment of the client, the court in Stein v Shaw (1951) 6 NJ 525, 79 A2d 310, reversing a judgment dismissing the attorney's complaint to recover for legal services for failure to state a cause of action, held that a disbarred attorney should be permitted to recover in quasi-contract for the reasonable value of his or her services rendered and disbursements made prior to the disbarment. Pursuant to an oral agreement whereby the attorney was to receive one-third of any recovery for damages obtained in his client's personal-injury action, the attorney instituted suit and opened negotiations for a settlement. During the negotiations, the attorney was disbarred from the practice of law for reasons unrelated to the client's litigation. After the attorney's disbarment, other attorneys were substituted for him, and the damage suit was subsequently settled for a certain sum. The disbarred

attorney, upon the client's refusal to pay fees, commenced an action against her, seeking to recover a reasonable value of his services and disbursements in the first count and one-third of the amount of the settlement in the second count. The court, in allowing recovery, stated that it would be inequitable to deprive the attorney of his claim for any and all compensation for services rendered prior to his disbarment when the services were not involved in the unprofessional conduct occasioning disciplinary action. There is no sound reason in law or morals for permitting the client to use the attorney's disbarment as an escape from paying him or her for services rendered or for necessary disbursements made by him or her in the client's behalf, the court added. Moreover, the court declared, the exercise by the court of its constitutional duty to discipline members of the bar does not affect either civil or criminal actions by or against the attorney disciplined by the court. Disbarment, the court continued, is not a "form of outlawry," and to bring economic considerations into disciplinary proceedings would not only needlessly complicate them but in many instances serve to defeat the essential purpose. Referencing Davenport v Waggoner (1926) 49 SD 592, 207 NW 972, 45 ALR 1126, § 6, and In re Woodworth (1936, CA2 NY) 85 F2d 50 (superseded by statute on other grounds as stated in Banner v Bagen (In re Bagen) (BC SD NY) 186 BR 824, 34 CBC2d 629, CCH Bankr L Rptr ¶76709), § 5[a], which reach a contrary result, the court said that it could not subscribe to the theory on which those decisions were premised—that withdrawal from a suit by reason of disbarment constitutes a voluntary abandonment of the contract without just cause. The court reasoned that the contract between attorney and client was not "voluntarily abandoned" but was automatically terminated by operation of law when the order of the court made further performance impossible. Moreover, observed the court, while the attorney was disbarred because of his wrongful acts, he was guiltless so far as this client was concerned; it was pure fiction to say that he had intentionally and without cause abandoned his contract with the client. The court, although conceding that the analogy was not complete, commented that the effect on the client of an attorney's disbarment is the same as where an attorney accepts appointment to the bench and is thereby prohibited from further practice of law, since in either situation the attorney's disability is the result of conduct wholly unrelated to his client's case. The situation resulting from the attorney's disbarment is also similar to that when an attorney is incapacitated by reason of death, illness, or insanity, noted the court, and in such cases it has been uniformly held that, because of his or her inability to perform, the contract is discharged but that the attorney may nevertheless recover in quasi-contract for the reasonable value of the services rendered. A recovery in quasi-contract is not barred by virtue of the express contract for a contingent fee, since that contract was discharged by operation of law when its performance was rendered impossible by the attorney's disbarment, noted the court.

For New York cases wherein the courts determined that attorneys who had been suspended or disbarred from practice were entitled to compensation for services rendered prior to the suspension or disbarment, see § 5[b].

In Bessie v Northern Pac. Ry. (1905) 14 ND 614, 105 NW 936, appeal after remand on other grounds 18 ND 507, 121 NW 618, the court noted that, upon dissolution of a law firm due to the suspension of one of its members, the mere fact that two nonsuspended members of the dissolved firm had told their client how they were to divide the fees in pending cases did not create a new relation whereby each had a separate and individual contract with the client. The court stated that, since there was no evidence to show that the client's original contract with the firm was modified in any way, it would be presumed that the "case would be cared for by the attorneys under the old contract" as members of the dissolved firm. Stating that the suspended member of the firm had an interest in the suit up to the firm's dissolution, the court also noted that his suspension from practice did not prevent him from claiming what was due to him upon an accounting with the firm for business done by it before the dissolution.

The court in Eisenberg v General Motors Acceptance Corp. (1991, ED Pa) 761 F Supp 20 (applying Pennsylvania law), held that an attorney who withdrew from representation due to his disbarment from the practice of law would not be considered to have "unjustifiably abandoned" his representation and that he would, as a result, be entitled to make a claim for an entitlement to fees earned prior to the disbarment. The plaintiff attorney represented the defendant company as a collection attorney for approximately 12 years. At one point, the defendant advised the attorney that it would not be forwarding new cases to him but that he could continue to work on all pending matters; approximately one year thereafter, the attorney resigned from the practice of law, pursuant to Pa Rules of Disciplinary Enforcement, Rule 215,

for reasons unrelated to his representation of the defendant company. When the defendant learned that the plaintiff was no longer a member of the bar, it directed him to return all opened and closed files which had previously been assigned to him. The plaintiff thereafter filed an action seeking, among other things, quantum meruit recovery of contingent fees and reimbursements allegedly incurred during the period of his representation of the defendant; the defendant company moved to dismiss the action, alleging that the plaintiff had failed to state a claim upon which relief could be granted. More specifically, the defendant contended that the plaintiff's "voluntary resignation from the practice of law" during the period of his representation should absolutely bar the plaintiff from recovering fees from the defendant, in that the disciplinary resignation or disbarment of an attorney prior to his completion of his representation of a client was equivalent to the voluntary and unjustifiable withdrawal prior to the completion of a case by which an attorney forfeits his or her right to compensation. The court, although recognizing that the courts in certain cases, including Fletcher v. Krise, 120 F.2d 809 (App.D.C D.C. Cir. 1941), cert. denied, 314 U.S. 608, 62 S. Ct. 88, 86 L. Ed. 489 (1941) (applying District of Columbia law), § 3, have held that disbarment before the completion of the case is tantamount to a voluntary and unjustified withdrawal from the case, such that the disbarred attorney loses his or her right to compensation, adhered to the ruling of Stein v Shaw (1951) 6 NJ 525, 79 A2d 310, this section, that, when an attorney is disbarred or suspended from practice for reasons which are unrelated to his or her representation of a particular client, the attorney is still entitled to recover for the "reasonable value" of services provided to that client prior to the disbarment. As such, the court continued, withdrawal from a suit because of disbarment cannot be deemed equivalent to an unjustified abandonment of a contract; disbarment or disciplinary resignation automatically terminates the attorney-client relationship by operation of law, while voluntary abandonment can occur only because of the action or inaction of the attorney. The court concluded that the plaintiff's cause of action for reimbursement of fees would not be dismissed and that the plaintiff attorney would be given his opportunity to prove his entitlement to compensation.

In Moyers v Graham (1885) 83 Tenn 57, 15 Lea 57, the court, though noting that, "strictly speaking," an attorney who is disbarred after being employed with an irrevocable power of attorney to prosecute his client's claim before the Treasury Department could recover nothing, stated that there is a possibility of equitable relief as to compensation for services rendered by a disbarred attorney if the affected attorney provides sufficient proof as to the value of the services allegedly rendered. The attorney entered into a contract of employment which provided for a lien in favor of the attorney on any draft issued in payment of the client's claim. Prior to the contract being formed, however, information had been filed against the attorney for wrongfully and illegally demanding and receiving a greater compensation than allowed by law for the prosecution of a pension claim. The Secretary of the Treasury ultimately issued an order directing that he should not thereafter be recognized as an attorney in any claim or matter before the Treasury Department, following which the client revoked the power of attorney to his former lawyer and appointed another to prosecute his claim. The claim was finally decided in the proceedings instituted by the subsequent attorney, and a judgment was collected thereon; the former attorney thereafter sued to impound the judgment, basing his suit on the lien given in his contract of employment with the client, and to recover one-half of the amount collected or, if this relief could not be had, to recover on quantum meruit for the value of services rendered. The court noted that, if a party to an executory contract upon mutual promises becomes incapable, except by the act of God or "the public enemy," of performing his or her part of the contract, the consideration of the promises of the other party necessarily fails, and he has the right to rescind, and the party failing to perform can recover nothing on the contract. The court added that the only ground for equitable relief as to compensation for his services would be to show that beneficial services were actually rendered by the disbarred attorney. In his answer, however, the client asserted that the claim was prosecuted, and all the proof taken and filed, by the lawyer substituted for the former lawyer after the latter's disbarment, the court pointed out. While a power of attorney, although in terms irrevocable, may nevertheless be revoked, subject to damages for the breach of any contract therein, there is no more ground for damages than in the case of a justifiable rescission if the revocation grew out of the failure of the attorney to perform, the court continued. Although the disbarred attorney's proof tended to show that some papers were prepared and filed by him, the court related, he failed to prove that they were in fact used in adjudging the claim or to prove what his services were worth. Finding that the disbarred attorney failed to meet the burden which rested on him to make out his case and to prove that what he had done was of service to his client, the court affirmed the decree below, denying him recovery either on the written agreement or on quantum meruit for services.

According to the court in In re Hawkins (1972) 81 Wash 2d 504, 503 P2d 95, while an attorney would be entitled to keep that portion of the retainer agreement entered into with his client which represented the work he had performed prior to his suspension, he would have to refund retainer payments covering the time of his suspension, for it is implicit in an order suspending an attorney from the practice of law that the attorney cannot be paid any fees during the period of suspension. The suspended attorney was issued an order to show cause why he should not be adjudged in contempt of his order of suspension, since he, among other things, continued his listing as an attorney in the community telephone directory. The court, on review, noted that the record also indicated that the attorney received, during the first few months of his suspension, monthly retainer payments from an irrigation-district client. More specifically, the district had an oral contract with the attorney which was renewed each year, whereby he was paid a monthly retainer fee for which he was to perform no legal services, but for which he was to hold himself in readiness to render services when asked to do so. While the attorney advised the board of his suspension, he did not inform it to discontinue the retainer payments. Being in doubt as to its obligations under the contract, the district continued to make the payments until it was told that the payments were being made in error. The court commented that the retainer at issue was a fee which the client paid to retain the attorney to act for the district, thereby preventing him from acting for the client's adversary. After the attorney was suspended, however, he could no longer render those services to the district or represent an adversary of the client. As such, the court noted, the payments made to the attorney during the period of his suspension were without consideration, and the attorney was not entitled to receive them. Implicit in the order of suspension, the court continued, was a direction that the attorney advise his clients that he could not represent them during the period of suspension and that he could not be paid any fees which were not already earned. While the attorney did advise the district that he had been suspended, the court related, he failed to advise it of the effect that that suspension would have upon the retainer arrangement. The court stated that the attorney allowed the client to assume that it was still under obligation to him under the arrangement, even though he knew, or should have known, that the contrary was true. An attorney who has withdrawn from a case after accepting a retainer is obliged to refund any portion of the retainer which he or she has not earned pursuant to CPR EC 2-32, the court concluded as it ordered the attorney to refund those retainer payments which covered periods during which he was suspended and unable to perform legal services for the irrigation district had he been called upon for such services.

## CUMULATIVE SUPPLEMENT

### Cases:

Under Illinois law, a disbarred attorney can recover fees on the basis of quantum meruit, but this recovery is limited to the reasonable value of the services rendered up to the time of attorney's disbarment. In re Berg, 387 B.R. 524 (Bankr. N.D. Ill. 2008) (applying Illinois law).

Under theory of quantum meruit, an attorney is allowed to recover for the reasonable value of services rendered prior to disbarment so long as he was not disbarred for misconduct associated with the case. Pollock v. Wetterau Food Distribution Group, 11 S.W.3d 754 (Mo. Ct. App. E.D. 1999).

Suspended and subsequently disbarred attorney is entitled to recover legal fees earned and disbursements incurred for legal services rendered or disbursements incurred prior to his suspension or disbarment on quantum meruit basis. Goldman v. Rio, 19 Misc. 3d 384, 853 N.Y.S.2d 837 (Sup 2008).

### [Top of Section]

### [END OF SUPPLEMENT]

### § 5[a] New York cases—Recovery disallowed

#### [Cumulative Supplement]

In New York, the rule as to whether an attorney who is disbarred or suspended can recover for services rendered, but not completed, before the loss of his or her right to practice appears to be somewhat uncertain, and, in the following cases, the courts held that disbarred or suspended attorneys are not allowed to recover for such services.

Where an attorney, after his disbarment, turned over to other attorneys a personal-injury action for which he was originally retained and made an agreement with them to split their share in any recovery, the court held in Dudar v Milef Realty Corp. (1929) 227 App Div 279, 237 NYS 499, that both the disbarred attorney and the other attorneys forfeited any alleged right to a lien for compensation on the cause of action. The subject attorney entered into a contingent-fee contract with a client to prosecute a personal-injury action. After he was disbarred for "ambulance chasing," and subsequent to the attorney's performing unspecified services in the prosecution of the case, the client retained additional attorneys on the recommendation of the disbarred attorney. The newly retained counsel agreed to divide their fee with the disbarred attorney; the disbarred attorney argued that the purpose of the agreement was to compensate him for the reasonable value of the services already rendered by him prior to the disbarment. The court pointed out that the disbarred attorney's interest as provided for in his agreement with the subsequently retained attorneys was not limited by the reasonable value of the services which he had performed. The court reasoned that, even assuming that the disbarred attorney would be entitled to any compensation where he had made an entire contract with his client to take a percentage of any amount recovered, which contract he was unable to perform because of his unlawful acts, the instant agreement was nonetheless not for the reasonable value of such services but was an agreement whereby, in consideration of the disbarred attorney's turning over the case to the other attorneys, they would divide with him the contingent fee which they might receive. As such, the court related, the agreement, entered into after the original attorney had ceased to be a member of the bar, directly contravened NY Penal Law § 274, which prohibits attorneys from procuring retainers by offering or giving any valuable consideration therefor. This code section, the court concluded, had previously been interpreted as including the payment or agreement to pay any layperson, out of the prospective profits of cases, for services in inducing desired clients to place their claims in the attorneys' hands for enforcement.

According to the court in In re Woodworth (1936, CA2 NY) 85 F2d 50 (superseded by statute on other grounds as stated in Banner v Bagen (In re Bagen) (BC SD NY) 186 BR 824, 34 CBC2d 629, CCH Bankr L Rptr ¶76709) (applying New York law), an attorney who was disbarred after being adjudicated a bankrupt while preparing to prosecute a suit for a tax refund on a contingent-fee basis lost his attorney's lien on the papers in the suit and his right to compensation for the reasonable value of the services rendered on a quantum meruit basis, as a result of which the attorney's trustee in bankruptcy was not entitled to retain the suit papers as against the client or to recover for the attorney's services. After the attorney's disbarment, the client applied for an order for the substitution of new attorneys in place of the disbarred bankrupt and for an order requiring the attorney's trustee to turn over to the newly retained attorneys all pleadings relative to the suit. The trustee, who thereafter filed an attorney's lien as against the client's documents to secure compensation for the services that the attorney had rendered prior to his disbarment, specifically requested that, before the client's documents were released, the amount of compensation due the bankrupt for professional services be determined by the court on a quantum meruit basis and that it be paid to the trustee. The court, affirming the lower tribunal's order denying the trustee's petition to enforce payment, reasoned that, if voluntary withdrawal without justification by an attorney from his or her client's case destroys the attorney's lien, withdrawal by reason of disbarment would have the same effect. Citing Dudar v Milef Realty Corp. (1929) 227 App Div 279, 237 NYS 499, this section, the court commented that, in such circumstances, the attorney's incapacity follows from his or her own wrongful act. Referencing Egan v Waggoner (1918) 41 SD 239, 170 NW 142, § 6, the court observed that, where an attorney's retainer contract is annulled by his disbarment, such "annulment [is] brought about by his own wrongdoing, and [is] therefore as much of a voluntary annulment of his contracts of employment as attorney as though he had expressly refused to

perform such contracts." So, too, would a quantum meruit recovery be warranted, the court related, since one having willfully abandoned a contract involving personal services has no right to recover in quantum meruit therefor.

See Gary v Cohen (1962) 34 Misc 2d 971, 231 NYS2d 394, where the court, because of the inadequacy of the record, declined to decide whether the suspension or disbarment of an attorney is so akin to "willful abandonment" as to completely deprive the attorney of compensation for services rendered to the point of suspension or disbarment. The court, however, ruled that disbarment or suspension causes a forfeiture of any "retaining lien" that an attorney may have on the papers in his possession. In denying a motion insofar as it related to the existence and scope of a statutory or "charging" lien on behalf of an attorney who was allegedly suspended or disbarred while litigation was pending, the court suggested that relevant issues in deciding the eligibility of a disbarred or suspended attorney to compensation would be whether he or she had substantially performed services in the case prior to the cancellation of his or her license to practice law; whether the attorney's act giving rise to the disciplinary proceedings did or did not pertain to the instant case and, if not, whether it was before or after his or her retention in the case; and whether the disbarment resulted from conduct passive in nature, such as neglect of the interests of other clients, as distinguished from positive acts of affirmative wrongdoing. [26]

## CUMULATIVE SUPPLEMENT

### Cases:

Attorney who was disbarred during pendency of his former clients' actions could not recover on quantum meruit basis for legal services personally rendered prior to disbarment, where clients had not been given notice of application for payment of compensation and separate applications were not made in courts wherein actions had been pending. N.Y.Ct.Rules. § 603.13(b). Rothman v. Benedict P. Morelli & Associates, P.C., 43 A.D.3d 769, 843 N.Y.S.2d 211 (1st Dep't 2007).

### [Top of Section]

### [END OF SUPPLEMENT]

### § 5[b] New York cases—Recovery allowed

### [Cumulative Supplement]

While the rule in New York as to whether an attorney who is disbarred or suspended can recover for services rendered, but not completed, before the loss of his or her right to practice appears to be somewhat uncertain, [27] the courts in the following cases held that attorneys so situated would be allowed to recover for such services.

An attorney suspended from practice was entitled to an attorney's lien for the reasonable value of legal services rendered and out-of-pocket disbursements incurred in connection with his prosecution of a personal-injury action prior to his suspension, where there was no claim of any misconduct in such action which would destroy such lien, the court held in Flecha v Goodman (1961) 31 Misc 2d 444, 221 NYS2d 823. After the attorney's suspension, the clients moved to substitute new attorneys and to have their file transferred from the suspended attorney to their newly retained counsel. The suspended attorney, who had been initially retained pursuant to an agreement under which he was to receive one-half of any amount recovered by way of suit or settlement as compensation for his services, sought reimbursement of out-of-pocket disbursements in connection with the action and a charging lien equal to 25 percent of the gross recovery as a condition precedent to the order of substitution sought by the plaintiffs. The evidence presented indicated that the suspended attorney had investigated the claims, obtained pertinent photographs and witness statements, conducted an examination before trial, and was present at a physical examination. The case had been promptly placed on a calendar and there were two pretrial conferences and an unsuccessful motion made by the suspended attorney for a summary

judgment. At the time of the attorney's suspension, all that remained to be done on the subject lawsuit was the settlement or trial of the matter. The suspended attorney, in response to the clients' motion to substitute, asserted that his right to a lien in the case had not been destroyed by his suspension from practice, because suspension operates merely to deprive an attorney temporarily of the right to practice his profession. The court, while acknowledging that suspension from practice is not as serious as disbarment, commented nonetheless that a suspended lawyer is disbarred temporarily and has no greater rights with respect to an attorney's lien for the reasonable value of the legal services rendered by him prior to his suspension than has a disbarred lawyer. The court referenced Shabbona Creston Oil & Gas Corp. v Doherty (1942) 264 App Div 909, 35 NYS2d 839, app den 264 App Div 918, 36 NYS2d 426 and reh den 265 App Div 812, 37 NYS2d 831, apparently not in point for this annotation, which dealt with the right of a disbarred lawyer under an oral retainer to recover the reasonable value of legal services claimed to have been rendered prior to his disbarment. In Shabbona, the court pointed out, while the judgment in favor of the plaintiff was reversed, the Appellate Division of the First Department did not dismiss the complaint but ordered a new trial. As such, the court commented, it would seem that a disbarred attorney or his assignee may recover the reasonable value of services rendered prior to his disbarment pursuant to a noncontingent retainer, and the same rule should apply where the retainer providing for remuneration for legal services is conditioned upon recovery. According to NY Judiciary Law § 475, which deals with the creation of attorney's liens, a suspended attorney's lien for the reasonable value of his or her services is created at the commencement of the action, the court observed. Here, the former attorney was in good standing when he performed the subject legal services, the court declared, and just as his subsequent suspension from practice could not strip him retroactively of his property right in those disbursements and the reasonable value of his services, so should it not deprive him of assurance for the payment thereof from the client's recovery when and if it became available. To deprive the suspended attorney of security for such payment could result in the clients' unjust enrichment to the extent that a recovery in quasi-contract for services rendered and disbursements made in their behalf, which were unconnected with the disciplinary action, should prove uncollectable, the court added. The court distinguished In re Woodworth (1936, CA2 NY) 85 F2d 50 (superseded by statute on other grounds as stated in Banner v Bagen (In re Bagen) (BC SD NY) 186 BR 824, 34 CBC2d 629, CCH Bankr L Rptr ¶76709), § 5[a], pointing out that the attorney in that case, who was disbarred after an adjudication as a bankrupt, lost his retaining lien on papers and pleadings in an action prosecuted on a contingent basis and his right to the immediate payment of the reasonable value of his services, and, consequently, his trustee in bankruptcy could not retain the papers demanded by the client and recover for such services before the fund in connection with which they were rendered became available. The court concluded that substitution of attorneys would be granted unconditionally, though the new attorneys would be "charged with the necessary reasonable disbursements paid out in connection therewith and the reasonable value of all legal services rendered by [the initial attorney] prior to the order suspending him from practice."

According to the court in Tiringer v Grafenecker (1962) 38 Misc 2d 29, 239 NYS2d 567, since there was no showing that the plaintiff's former attorney was disbarred for conduct in connection with the subject litigation, [28] the disbarred attorney would be entitled to a lien for his disbursements and for legal services rendered prior to his disbarment. The disbarred attorney should have a lien on the proceeds of the action, realized by trial or settlement, for the disbursements in the sum of $98.15 advanced by him, and for the reasonable value of the services performed by him prior to his disbarment, which should be determined by the court on the trial of the issue or upon application after settlement of the action, the court concluded.

In Alexander v Kraemer (1962, Sup) NYLJ 14 (March 27, 1962, column 1), on a motion for substitution of attorneys and for a direction to the outgoing attorney to turn over papers in his possession, the court ruled that one disbarred for reasons not connected with the case in which the question of lien is raised is entitled to a lien for his services if they benefited the client and certainly to a lien for the expenses necessarily incurred by him in the prosecution of the case. The incoming attorney contended that, because the outgoing attorney had been disbarred, he was not entitled to any lien upon the action, pointing to In re Polansky (1962) 33 Misc 2d 292, 223 NYS2d 606, [29] in which it was held that a disbarred attorney cannot have a lien upon a cause of action. The court rejected this contention and referred the incoming attorney to Flecha v Goodman (1961) 31 Misc 2d 444, 221 NYS2d 823, this section, in which the contrary was held. It

would be unjust enrichment to an incoming attorney to oust the outgoing attorney from such expenses and from such lien, the court concluded.

A disbarred attorney was held entitled to recover the reasonable value of services rendered prior to his disbarment in Torgerson v Harboro Associates, Inc. (1962, Sup) NYLJ 17 (June 12, 1962, column 2), wherein the court granted the plaintiff's motion in a personal-injury action for substitution of attorneys. The original retainer was on a contingency basis. The disbarred attorney, after his disbarment, turned over the file to the present attorney, and the case was terminated by settlement during the trial. It appeared from the papers submitted, however, that the disbarred attorney could not be located at the time that the case was settled. When the file was turned over, all preliminary work had already been done, and the case was on the trial calendar. Since there was no claim that the disbarred attorney had been guilty of misconduct in connection with this case, and since he had performed all the legal services required with the exception of the trial, the court held that he was entitled to one-half of the fee of the present attorney, which would be fixed by the court at a submission of the compromise papers.

The court in Potts v Hines (1988, 3d Dept) 144 App Div 2d 189, 534 NYS2d 507, although ordering a suspended attorney to return the full retainer received from a client before his suspension, since he failed to satisfy his burden of establishing the value of the services that he rendered, held that a suspended attorney is entitled to recover on quantum meruit basis for services performed prior to suspension. The plaintiffs hired an attorney to represent them and paid him $5,000 pursuant to a retainer agreement. After the attorney was suspended for conduct unrelated to their case, the plaintiffs requested the return of their file and requested that the attorney submit a bill for services and refund the balance of the retainer; the plaintiffs never received any response. The plaintiffs' subsequently retained counsel moved to set the original attorney's fee and to have the suspended attorney produce his file. The court, on review, affirmed the lower tribunal's determination that the suspended attorney refund the entire retainer fee. The court, in so ruling, nonetheless referenced undisputed testimony that the suspended attorney performed some work on the clients' case, including meeting with the clients and preparing and serving some pleadings. The court pointed out that the suspended attorney, however, did not produce any time sheets or work product, and there was no testimony offered concerning the attorney's experience or reputation, the result accomplished, the plaintiffs' benefit from the services performed, or the fees customarily charged for similar work. The court, though declaring that a suspended attorney is entitled to recover on a quantum meruit basis for services performed prior to suspension, 22 NYCRR 806.9[b], emphasized that an attorney seeking counsel fees must establish the value of his or her services by showing such factors as the time and skill required; the matter's complexity; the attorney's experience, ability, and reputation; the client's benefit from the services; and the fee usually charged by other attorneys for similar services. Here, however, the court continued, the lower tribunal's determination that the attorney failed to satisfy his burden was proper, for there was insufficient evidence as to the value of the attorney's services. It is difficult to perceive, the court stated, what value the plaintiffs received from the attorney's work, for, while the action was commenced by the attorney, the file was lost. Without the records, correspondence, pleadings, and other work product in the file, the court concluded, plaintiffs' new counsel had to, in essence, begin the case "anew."

The court in Mitchell v B.A.S.F. (1989, Sup) 145 Misc 2d 930, 548 NYS2d 135 (criticized by Greenberg v Cohn (Sup) 153 Misc 2d 495, 582 NYS2d 597), § 7, though holding that a suspended attorney was entitled to receive fees for services rendered prior to his suspension on a quantum meruit basis, denied the attorney's request for the agreed upon contingency share, even though the settlement resulting in the contested share did not occur until after the suspended attorney had been reinstated. The attorney provided certain services for his client in commencing a lawsuit; the client agreed to a contingent fee of one-third of any recovered amount, including necessary disbursements and costs. Subsequently, the attorney was suspended from the practice of law and, upon hearing of his suspension, transferred the case, with the approval of the client, to another attorney. The case remained active during the attorney's suspension, and only after the attorney's period of suspension expired did the case settle for $45,000. The second attorney moved the court for an order setting the reinstated attorney's fees for services performed on the case prior to his suspension on a quantum meruit basis. The reinstated attorney opposed the motion on the grounds that the termination of his suspension terminated the applicability of NY Rules of Appellate Division, Third Department, Rule 806.9, a rule which reads, in pertinent

part, as follows: "A disbarred, suspended or resigned attorney may not share in any legal fee for legal services performed by another attorney during the period of his removal from the bar, but he or she may be compensated on a quantum meruit basis for legal services rendered and disbursements incurred prior to the effective date of removal." The court, on review, found that the referenced rule directly addressed the reinstated attorney's right to compensation for services rendered prior to his suspension. The court related that, despite his contingent-fee arrangement with his client, Rule 806.9 mandated that payment by his former client for his services would be available only on a quantum meruit basis. The attorney's reinstatement, the court stressed, did not render the rule inapplicable, for the rule clearly applies to fix the fee of an attorney prior to suspension. That the order to fix the fee was sought after the suspension did not affect a motion to fix the presuspension fee, the court concluded.

## CUMULATIVE SUPPLEMENT

### Cases:

In determining appropriate award of quantum meruit compensation for an attorney's services rendered prior to disbarment, a court must weigh the relevant factors, which include evidence of the time and skill required in that case, the complexity of the matter, the attorney's experience, ability, and reputation, the client's benefit from the services, and the fee usually charged by other attorneys for similar services. 22 NYCRR 691.10(b). Biagioni v. Narrows MRI and Diagnostic Radiology, P.C., 127 A.D.3d 800, 2015 WL 1542529 (2d Dep't 2015).

Under New York law, disbarred attorney may be compensated in quantum meruit for services rendered prior to his disbarment, provided that the misconduct leading to his disbarment does not relate to representation for which compensation is sought. In re Emanuel, 422 B.R. 443 (Bankr. S.D. N.Y. 2009) (applying New York law).

Suspended attorney may be compensated on a quantum meruit basis for legal services rendered, as well as for disbursements which he or she may have incurred prior to the effective date of the suspension, and amount of the award should be based upon evidence of the time and skill required in that case, the complexity of the matter, the attorney's experience, ability, and reputation, the client's benefit from the services, and the fee usually charged by other attorneys for similar services. N.Y. Ct. Rules, § 691.10(b). Rosenzweig v. Gomez, 672 N.Y.S.2d 907 (App. Div. 2d Dep't 1998).

### [Top of Section]

### [END OF SUPPLEMENT]

### III. Litigation Between Disbarred or Suspended Attorney and Other Attorney

#### § 6. Recovery disallowed

The court in the following case held that a disbarred or suspended attorney may not recover from other attorneys for services performed, on the theory that his or her disbarment or suspension annuls the attorney's contract of employment or is equivalent to a voluntary abandonment of such contract.

In Davenport v Waggoner (1926) 49 SD 592, 207 NW 972, 45 ALR 1126, the court denied recovery to an attorney seeking quantum meruit compensation for services rendered prior to the time of his disbarment. After the decision in Egan v Waggoner (1918) 41 SD 239, 170 NW 142, [30] the trustee in bankruptcy of the disbarred attorney sued again, amending the complaint to specify what specific services were performed by the disbarred attorney and what services were performed by the other retained attorneys subsequent to the former's disbarment. In this action, the trustee no longer sought to recover according to the disbarred attorney's contract giving him a one-half part of the contingent fees but alleged that the reasonable value of the services performed was $2,000; the trustee therefore requested recovery of this

amount from the contingent fee of $2,553 actually received by the attorneys who continued handling the case up to its final termination. The trial judge instructed the jury to apportion the sum of $2,553 into two parts and to determine how much was earned jointly by the disbarred attorney and the other attorneys prior to disbarment and how much was earned by the attorneys alone after disbarment; the jury was thereafter directed to find for the disbarred attorney for one-half of the part of the total fee earned prior to his disbarment. The court, on review of the appeal brought by the other retained counsel, characterized the trial instructions as "manifestly improper" and further declared that the subject agreement was one entire contract and was not subject to being thus divided. With respect to the disbarred attorney, the court continued, he was employed by the other attorneys to assist them until the termination of the case upon a contingent fee. The court, pointing out that the disbarred attorney had, as settled by the former appeal, abandoned the contract without just cause before the case was terminated, ruled that by such abandonment he forfeited all right to payment for any services previously rendered. The court rejected the theory of the trustee that, upon entering into the contract, the disbarred attorney and the other attorneys became parties to a joint enterprise so that, on severing his connection with the enterprise, the disbarred attorney was nevertheless entitled to recover for his one-half of the services rendered up to the date that he ceased to act. Conceding the applicability of a theory of joint enterprise or joint adventure, the court commented that the disbarred attorney, by virtue of the decision on the former appeal, must nevertheless stand in the position of having willfully, wrongfully, and intentionally abandoned the joint enterprise, and, hence, in accordance with the rule in such a case, the other parties were not liable to him for any profits subsequently made by them. The court, determining that the disbarred attorney wrongfully abandoned the enterprise at a time when there was no profit in it and determining that there could never be a profit unless the enterprise was carried into a successful conclusion, stressed that the disbarred attorney could not thereafter come in and claim to share in a subsequent profit which would have never been realized except for the services subsequently rendered by the other attorneys. The court concluded that the disbarred attorney's right must be measured as of the time of his abandonment.

## § 7. Recovery allowed

### [Cumulative Supplement]

In the following cases, given the circumstances presented, the courts allowed recovery by a disbarred attorney for services rendered prior to his or her disbarment against other attorneys also holding an interest in the contested legal fees.

The court in Sympson v Rogers (1966, Mo) 406 SW2d 26, 24 ALR3d 1183, reasoning that an attorney's disbarment did not constitute an abandonment of the contract, held that an oral contract entered into by the attorney with other attorneys for the division of fees in consideration of, among other things, legal services already rendered, was enforceable.

In this second appeal of the case, [31] the plaintiff, as assignee of the former lawyer, sought to recover a certain sum alleged to have become due under the terms of a contract entered into between the assignor and three attorneys. The court below held that, since the assignee and his assignor were both disbarred before any of the cases transferred by the assignor to the three attorneys were terminated, they were thereby precluded by their own wrongdoing from performing the alleged agreement and hence could not recover any compensation, either on the contract or on quantum meruit, for any services previously rendered under the contingent-fee contract. The evidence presented indicated that the assignor was a duly-licensed attorney and had 50-percent-contingent contracts in five listed personal-injury suits against a public-service company. All of the cases had been filed, investigated, and prepared for trial, and one of them had already been tried the first time. Upon an understanding with his client, the assignor forwarded these files to the three other attorneys. Disbarment proceedings were thereafter filed against the assignor; he then decided to surrender his license, and he advised the three attorneys of these facts and requested them to return the five cases and files so that he might settle or dispose of them. Upon the suggestion of the other attorneys, they and the assignor entered into a new agreement whereby it was agreed, among other things that the assignor should be deemed to have "already earned" 50 percent of all fees eventually obtained by the successor attorneys; that the assignor would recommend that his clients employ the successor attorneys to prosecute their respective claims; that he would release all such clients from any liens and claims of his; and that for this and for such services as the assignor might perform—such as assisting to locate witnesses and clients, so as to notify them

for depositions, medical examinations, and trial, and to arrange transportation if requested—the successor attorneys would arrange to collect one-half of the compensation for the assignor as money earned by him. The assignor, pursuant to the agreement, carried out all such arrangements, and his clients accepted the successor attorneys as their new counsel. By settlement in three cases and by trial and appeal in the other two cases, the successor attorneys obtained judgments for their clients and derived total fees of $39,180.60. The assignee prayed judgment for one-half of this amount, with interest. The court, on review of the assignee's appeal from a motion to dismiss, acknowledged that Kimmie v. Terminal R. Ass'n of St. Louis, 344 Mo. 412, 126 S.W.2d 1197 (1939) (disagreement on other grounds recognized by, City of Keytesville v. Kelco Industries, Inc., 773 F. Supp. 1264, 91-2 U.S. Tax Cas. (CCH) ¶50483, 68 A.F.T.R.2d (P-H) P 68 91-5918 (E.D. Mo. 1991)), § 3, held that a suspended attorney could not recover any part of his client's total recovery, either on contract or on quantum meruit, but declared that, insofar as the opinion might be considered as precluding recovery on the contract of a successor lawyer, it would seem to be dictum. The court referenced, as well, two South Dakota cases, Egan v Waggoner (1918) 41 SD 239, 170 NW 142, § 6, and Davenport v Waggoner (1926) 49 SD 592, 207 NW 972, 45 ALR 1126, § 6, but noted that, in those cases, the agreement between the parties was made at a time when disbarment was contemplated by no one, and thus it might be said that the employing attorney stood in the same position as his client and that he, too, had been abandoned. Here, the court commented, the assignor's disbarment did not constitute an abandonment of the contract with the successor attorneys, since the latter, with their eyes open and with full knowledge that the former was to surrender his license, accepted five of his cases for further handling and agreed to pay him a part of all fees eventually received in the specified cases. Since the petition alleged full performance by the assignor, the court concluded, the lower tribunal's judgment would be reversed, and the contract for fees would be deemed enforceable.

According to the court in Posner v Messinger (1993, 2d Dept) 197 App Div 2d 508, 602 NYS2d 204, app dismd without op 82 NY2d 920, 610 NYS2d 154, 632 NE2d 464, a partner in a law firm who had been suspended was entitled to receive from the firm his share of legal fees earned prior to his suspension from practice. The plaintiff and the defendant were the surviving partners in a law firm which dissolved after approximately two years of operation. Approximately 10 months subsequent to the dissolution of the partnership, the plaintiff was suspended from practicing law for a period of five years. Following the plaintiff's suspension, the defendant obtained judgments against former clients of the law firm in the amount of $16,250, fees which resulted from work conducted on cases while the plaintiff was a member of the partnership. The plaintiff, contending that, notwithstanding his suspension, he was entitled to his partnership share of the $16,250 which was earned by the partnership prior to his suspension but not collected until after his suspension, brought an action for an accounting and to recover moneys allegedly due to him under the partnership agreement. Upon an order of the trial court that the plaintiff was entitled only to a quantum meruit share of certain partnership assets, the plaintiff appealed. The court, on review, modified the order by deleting the provision therein which found that the plaintiff was entitled only to a quantum meruit share of the disputed fees, substituting instead a provision holding that the plaintiff was entitled to his partnership share of the contested fees. In so ruling, the court referenced 22 NYCRR 691.10[b], which provides, in pertinent part, that a suspended attorney may not share in any fee for legal services performed by another attorney during the period of his or her removal from the bar and that such an attorney may be "compensated on a quantum meruit basis for legal services rendered and disbursements incurred by him prior to the effective date of the ... suspension order." In the instant case, the court reasoned, the plaintiff earned his partnership share of the disputed fees prior to the time of his suspension. That the funds were not collected by the defendant until after the plaintiff's suspension, the court continued, was of no import. The court stated that, while the plaintiff could not share in any fee earned by the defendant for work actually performed by the defendant during the period of the plaintiff's suspension, the work that generated the contested fees was completed, and hence the fees were earned, prior to the onset of the plaintiff's suspension. As such, the court concluded, 22 NYCRR 691.10[b] was inapplicable to the subject action and did not relegate the plaintiff to a mere quantum meruit recovery.

The court in Greenberg v Cohn (1992, Sup) 153 Misc 2d 495, 582 NYS2d 597, held in an action for an accounting of assets and income of a law partnership arising subsequent to the suspension of one of the partners that the suspended attorney would be entitled to legal fees earned for services performed by the partnership prior to his suspension. The plaintiff and the defendant formed a partnership, with the plaintiff having a one-third share and the defendant a two-

third share; the partnership continued successfully for several years, until the plaintiff was temporarily suspended from the practice of law. The defendant argued that the plaintiff was entitled to compensation only on a quantum meruit basis for services actually performed by the plaintiff and for disbursements incurred by him prior to the date of his suspension. The plaintiff, in addition to disputing the number of cases accounted for by the defendant, contested the defendant's method of calculation. The court referenced, at the outset, 22 NYCRR 691.10[b], which provides, in pertinent part, that a disbarred, suspended, or resigned attorney may not share in any fee for legal services performed by another attorney during the period of his or her removal from the bar and that a disbarred or suspended attorney may be compensated on a quantum meruit basis for legal services rendered and disbursements incurred by him prior to the effective date of the disbarment or suspension order. While it is true that the cited rule prohibits the plaintiff from sharing legal fees for services performed by the defendant after the plaintiff was suspended, the court pointed out, the plaintiff was not seeking such relief. Rather, the court elaborated, he was seeking fees for legal services performed by the partnership prior to his suspension. To read 691.10[b] so as to prohibit collection of fees after an attorney is suspended, which fees were earned prior to the suspension, the court continued, would result in a "retroactive and confiscatory rule," something which was not contemplated by the drafters of the provision. In the instant case, the court reasoned, to the extent that cases were settled or otherwise concluded but for which the earned fee had not yet been received as of the date of the attorney's suspension, the attorney would clearly be entitled to his share of the fees. With respect to those cases retained pursuant to an ordinary noncontingent-fee retainer agreement, the court related, the plaintiff would be entitled to share in the legal fees earned by the partnership prior to his suspension on a quantum meruit basis. In this instance, the court added, quantum meruit would not restrict the plaintiff to an hourly wage for work he actually performed on a file; instead, the plaintiff, as a former partner, would be entitled to his one-third share of the profits resulting from fees earned up until the point of his suspension. With respect to contingency-fee cases, the court elaborated, the method of computation would be somewhat more complicated, and two alternative approaches would be appropriate. The court explained that the amount could be fixed by the court, or, where the attorneys could agree, an appropriate percentage figure could be applied to contingency-fee cases on hand as of the date of suspension, thereby establishing the sum due to the suspended or disbarred attorney. Referencing Flecha v Goodman (1961) 31 Misc 2d 444, 221 NYS2d 823, § 5[b], the court stated that there is no sound reason for permitting the defendant to use the plaintiff's disbarment as an escape from paying the plaintiff for services rendered or for necessary disbursements made by him. The court emphasized that it was not seeking to reward the plaintiff but was rather prescribing a method for determining the compensation due to the plaintiff based upon quantum meruit. In so holding, the court clarified, it was specifically rejecting the defendant's contention that the plaintiff was entitled to only an hourly wage for work actually completed by him. Such a finding, the court concluded, would disregard the partnership status of the plaintiff on the date of his suspension and require forfeiture of fees already earned by him as a partner prior to his suspension. The court specifically distinguished Mitchell v B.A.S.F. (1989, Sup) 145 Misc 2d 930, 548 NYS2d 135, § 5[b], noting that, while the court therein held that a suspended attorney was not entitled to share in an ultimate recovery on an equitable basis, that case did not involve a dispute between former partners but, rather, involved a successor attorney.

## CUMULATIVE SUPPLEMENT

### Cases:

While disbarred attorney who referred cases to another attorney prior to his disbarment could be compensated on a quantum meruit basis for legal services and disbursements he rendered and incurred before the date of his disbarment, he could not share in any fee for legal services performed by other attorney after that date. N.Y. Ct. Rules, § 603.13(b). Eisen v. Feder, 763 N.Y.S.2d 279 (App. Div. 1st Dep't 2003).

### [Top of Section]

### [END OF SUPPLEMENT]

## RESEARCH REFERENCES

Westlaw® Natural Language Search Query: disbarment or suspension of attorney affecting right to compensation

### West's Key Number Digest

West's Key Number Digest, Attorney and Client ⚖60
West's Key Number Digest, Attorney and Client ⚖130
West's Key Number Digest, Attorney and Client ⚖134(1)
West's Key Number Digest, Attorney and Client ⚖134(2)
West's Key Number Digest, Attorney and Client ⚖135
West's Key Number Digest, Attorney and Client ⚖145
West's Key Number Digest, Attorney and Client ⚖148(1)
West's Key Number Digest, Attorney and Client ⚖149
West's Key Number Digest, Attorney and Client ⚖150
West's Key Number Digest, Attorney and Client ⚖151
West's Key Number Digest, Attorney and Client ⚖158

### Westlaw Databases

Westlaw® Search Query: ((attorney lawyer counsel) /5 (right entitl!) /5 (fee compensat! money "quantum meruit")) /15 (disbar! suspen!)

### A.L.R. Library

A.L.R. Index, Attorneys' Fees

A.L.R. Index, Attorneys' Liens

A.L.R. Index, Disbarment of Attorney

A.L.R. Index, Voluntary or Involuntary Acts

A.L.R. Index, Withdrawal

Construction and Application of Professional Conduct Rules Concerning False or Misleading Claims about Legal Services, 5 A.L.R.7th Art. 2

Court Rules and Rules of Professional Conduct Limiting Amount of Contingent Fees or Otherwise Imposing Conditions on Contingent Fee Contracts, 49 A.L.R.6th 505

Reciprocal Discipline of Attorneys—Commingling or Other Mishandling of Client Funds, 45 A.L.R.6th 175

Reciprocal Discipline of Attorneys—Noncriminal Misconduct Towards Clients Not Involving Client Funds, 44 A.L.R.6th 75

Reciprocal Discipline of Attorneys—Criminal Conduct, 43 A.L.R.6th 163

Legal Malpractice in Connection with Attorney's Withdrawal as Counsel—Tort, Civil Rights, Family Law, Probate, and Unspecified Cases, 42 A.L.R.6th 463

Matters Constituting Unauthorized Practice of Law in Bankruptcy Proceedings, 32 A.L.R.6th 531

Attorney's Charging Excessive Fee as Ground for Disciplinary Action—Business and Tax, Employee Benefits and Termination, Civil Rights, and Other Limited Civil Matters, 27 A.L.R.6th 1

Attorney's Charging Excessive Fee as Ground for Disciplinary Action—Estate, Trust, Domestic Relations, and Family Law Matters, 26 A.L.R.6th 1

Attorney's Charging Excessive Fee as Ground for Disciplinary Action—Criminal, Tort, and Real Property Matters, 25 A.L.R.6th 1

Validity and Enforceability of Express Fee-Splitting Agreements Between Attorneys, 11 A.L.R.6th 587

Construction and Operation of Attorney's General or Classic Retainer Fee or Salary Contract Under State Law, 102 A.L.R.5th 253

Limitation to quantum meruit recovery, where attorney employed under contingent-fee contract is discharged without cause, 56 A.L.R.5th 1

Circumstances under which attorney retains right to compensation notwithstanding voluntary withdrawal from case, 53 A.L.R.5th 287

Priority between attorney's charging lien against judgment and opposing party's right of setoff against same judgment, 27 A.L.R.5th 764

Excessiveness or inadequacy of attorney's fees in matters involving commercial and general business activities, 23 A.L.R.5th 241

Excessiveness or adequacy of attorneys' fees in matters involving real estate—modern cases, 10 A.L.R.5th 448

Attorney's retaining lien: what items of client's property or funds are not subject to lien, 70 A.L.R.4th 827

Court appointment of attorney to represent, without compensation, indigent in civil action, 52 A.L.R.4th 1063

Disciplinary action against attorney for aiding or assisting another person in unauthorized practice of law, 41 A.L.R.4th 361

Mental or emotional disturbance as defense to or mitigation of charges against attorney in disciplinary proceeding, 26 A.L.R.4th 995

Validity, construction, and effect of contract providing for contingent fee to defendant's attorney, 9 A.L.R.4th 191

Legal malpractice in connection with attorney's withdrawal as counsel, 6 A.L.R.4th 342

Validity and construction of rule or order requiring attorney to submit to physical or mental examination to determine capacity to continue in practice of law, 52 A.L.R.3d 1326

Validity and application of regulation requiring suspension or disbarment of attorney because of mental or emotional illness, 50 A.L.R.3d 1259

Attorney's death, prior to final adjudication or settlement of case, as affecting compensation under contingent fee contract, 33 A.L.R.3d 1375

Right of attorney appointed by court for indigent accused to, and court's power to award, compensation by public, in absence of statute or court rule, 21 A.L.R.3d 819

Construction of state statutes providing for compensation of attorney for services under appointment by court in defending indigent accused, 18 A.L.R.3d 1074

Validity and effect of contract for attorney's compensation made after inception of attorney-client relationship, 13 A.L.R.3d 701

Right of attorney admitted in one state to recover compensation for services rendered in another state where he was not admitted to the bar, 11 A.L.R.3d 907

Measure or basis of attorney's recovery on express contract fixing noncontingent fees, where he is discharged without cause or fault on his part, 54 A.L.R.2d 604

When Do Terms and Conditions of Court-Approved Professional Person's Employment Prove to Have Been "Improvident" so as to Permit Allowance of Different Compensation Under § 328(a) of Bankruptcy Code (11 U.S.C.A. § 328(a)), 13 A.L.R. Fed. 2d 357

Construction and Operation of Attorney's General or Classic Retainer Fee or Salary Contract in Bankruptcy Context, 181 A.L.R. Fed. 1

Calculations of attorneys' fees under Federal Tort Claims Act—28 U.S.C.A. § 2678, 86 A.L.R. Fed. 866

**Legal Encyclopedias**

Am. Jur. 2d, Attorneys at Law § 266
Am. Jur. 2d, Attorneys at Law § 266
C.J.S., Attorney and Client §§ 280–292

**Trial Strategy**

Reasonableness of Contingent Fee in Personal Injury Action, 46 Am. Jur. Proof of Facts 2d 1
Reasonableness of Contingent Fee in Personal Injury Action, 46 Am. Jur. Proof of Facts 2d 1
Amount of Allowance for Attorney Fees in Domestic Relations Action, 45 Am. Jur. Proof of Facts 2d 699
Recovery for Part Performance of Contract, 43 Am. Jur. Proof of Facts 2d 523
Recovery for Part Performance of Contract, 43 Am. Jur. Proof of Facts 2d 523
Attorneys' Fees, 2 Am. Jur. Proof of Facts 233

Setting the Fee, 1 Am. Jur. Trials 93

**Forms**

3 Am. Jur. Legal Forms 2d, Attorneys at Law §§ 30:151- 30:164, 30:241- 246

2B Am. Jur. Pleading and Practice Forms. Attorneys at Law, Forms 231–301

**Model Codes and Restatements**

Restatement (Third) of the Law Governing Lawyers § 40 (2000), Fees on Termination.

Westlaw. © 2011 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

Footnotes

1    This supersedes the annotation at 24 A.L.R.3d 1193.

2    Although nearly all the cases in this annotation deal with claims for fees for work involved in uncompleted litigation, the
     scope of the annotation also includes cases involving a disbarred or suspended attorney's right to compensation for services
     rendered with respect to such matters as the drafting of a will or other documents, the handling of an estate, and so on, as long
     as it appears that the attorney had not finished the work for which he or she is claiming compensation before his suspension
     or disbarment.

3    Am. Jur. 2d, Attorneys at Law § 237.

4    Am. Jur. 2d, Attorneys at Law § 238.

5    Am. Jur. 2d, Attorneys at Law § 245.

6    Am. Jur. 2d, Attorneys at Law § 246.

7    Am. Jur. 2d, Attorneys at Law § 247.

8    Am. Jur. 2d, Attorneys at Law § 254.

9    Am. Jur. 2d, Attorneys at Law § 258.

10   Am. Jur. 2d, Attorneys at Law § 260.

11   Am. Jur. 2d, Attorneys at Law § 261.

12   In Eisenberg v General Motors Acceptance Corp. (1991, ED Pa) 761 F Supp 20 (applying Pennsylvania law), the court
     emphasized that the plaintiff's decision to resign from the bar may itself have been voluntary but that the termination of
     his professional services to the defendant was simply an inevitable consequence of his decision rather than a voluntary,
     independent act.

13   See, for example, In re Mekler (1995, Del) 672 A2d 23, 59 ALR5th 887, wherein the court noted, by way of clarification, that,
     while the suspended attorney had a right to unpaid fees, and while he could retain another lawyer to handle his claim, the
     suspended lawyer could not, for example, use his office letterhead or other indicia of his former status as a lawyer for any
     purpose during his suspension, including the collection of past-due accounts.

14   See, for example, Eisenberg v General Motors Acceptance Corp. (1991, ED Pa) 761 F Supp 20 (applying Pennsylvania law),
     citing Pa Rules of Disciplinary Enforcement. Rule 215.

15   See, for example, Stein v Shaw (1951) 6 NJ 525, 79 A2d 310, wherein the court noted that there is "no sound reason in law
     or morals for permitting the defendant to use the plaintiff's disbarment as an escape from paying him for services rendered
     or necessary disbursements made by him in [the client's] behalf." The court added that, if the rule were otherwise, "the effect
     of disciplinary action would inevitably be retroactive, which is not the intent or purpose in imposing discipline. The court,
     moreover, would never know the extent of such retroactive punishment without an undesirable inquiry as to the extent of the
     attorney's pending business and the monetary value thereof."

16   See, for example, Harris Trust & Sav. Bank v Chicago College of Osteopathic Medicine (1983, 1st Dist) 116 Ill App 3d 906,
     72 Ill Dec 448, 452 NE2d 701, in which the court found that the trustee of the disbarred attorney's bankruptcy estate did not
     make sufficient allegations as to the necessary factors to be considered in determining the reasonable value of professional
     services. The court specifically referenced the following factors which may be considered in making such a determination: the
     skill and standing of the attorney employed; the nature of the cause and the novelty and difficulty of the questions at issue; the
     amount and importance of the subject matter; the degree of responsibility involved in the management of the cause; the
     time and labor required; the usual and customary charge in the community; and the benefits resulting to the client.

17   See, for example, Potts v Hines (1988, 3d Dept) 144 App Div 2d 189, 534 NYS2d 507, wherein the court, in ordering that a
     suspended attorney refund an entire $5,000 retainer fee to his clients, pointed out that it was difficult to perceive what value

the plaintiffs received from the suspended attorney's work. The court reasoned that, while the clients' action was commenced by the attorney who was subsequently suspended, the file had apparently been lost and, without the records, correspondence, pleadings, and other work product in the file, the clients' new counsel "must essentially begin anew."

18    See, for example, Potts v Hines (1988. 3d Dept) 144 App Div 2d 189, 534 NYS2d 507, citing Jordan v Freeman, 40 App Div 2d 656. 336 NYS2d 671. And in Mitchell v B.A.S.F. (1989, Sup) 145 Misc 2d 930, 548 NYS2d 135 (criticized by Greenberg v Cohn (Sup) 153 Misc 2d 495, 582 NYS2d 597), § 7, the court, though finding that the record before it was not "complete," nonetheless determined that it had sufficient facts before it to fix a suspended attorney's fee at $1,000 on a quantum meruit basis.

19    See, for example, Greenberg v Cohn (1992, Sup) 153 Misc 2d 495. 582 NYS2d 597.

20    See, for example, Cooper v. Texaco, Inc., 961 F.2d 71 (5th Cir. 1992), reh'g denied, (June 9, 1992) and related reference, 1993 WL 353457 (E.D. La. 1993) (applying Louisiana law), where an attorney, after his suspension, hired two associates who became the attorneys of record for all of the suspended attorney's cases pending in the district from which he had been suspended. The court, though holding that the attorney could recover on a quantum meruit basis fees for cases upon which he performed work prior to his suspension, pointed out that the suspended attorney was the sole shareholder of the firm and the sole beneficiary of the firm's contingency contracts. Since the attorney was suspended and thus forbidden from working in the capacity of supervising attorney, the court noted, he could not receive legal fees for performing work in violation of that order, and neither the attorney nor his firm could receive legal fees for any work on the affected cases performed during the period of the attorney's suspension.

21    See, for example, Mitchell v B.A.S.F. (1989, Sup) 145 Misc 2d 930. 548 NYS2d 135 (criticized by Greenberg v Cohn (Sup) 153 Misc 2d 495, 582 NYS2d 597), § 7, where an attorney, upon his suspension, transferred his client's case to another attorney. After the attorney's reinstatement, he allegedly "aided" the prosecution of the action and helped obtain a favorable settlement. The court, holding that the original attorney would be entitled, per a local court rule, to receive fees for services rendered prior to his suspension on a quantum meruit basis only, discounted the attorney's claim that the local rule did not apply since settlement had not been reached until after his reinstatement. In fact, the court elaborated, the attorney's purported work on the file after his suspension ended was entirely irrelevant. The court added that, while arguably the suspended attorney would be entitled to some compensation for services rendered to the subsequent attorney in bringing about a settlement, his contract and contact with the client ended upon his suspension. The court emphasized that the attorney's return to practice did not automatically revive his contractual relationship with the client and that any right to a share in the ultimate settlement, failing a postsuspension agreement with the client, could not be regained by consulting with the subsequent attorney.

22    See, for example, Stein v Shaw (1951) 6 NJ 525, 79 A2d 310.

23    In re Woodworth (1936, CA2 NY) 85 F2d 50 (superseded by statute on other grounds as stated in Banner v Bagen (In re Bagen) (BC SD NY) 186 BR 824, 34 CBC2d 629, CCH Bankr L Rptr ¶76709) (holding that a disbarred attorney lost his lien on papers in a suit that he was preparing to prosecute); and Gary v Cohen (1962) 34 Misc 2d 971, 231 NYS2d 394.

24    Gary v Cohen (1962) 34 Misc 2d 971. 231 NYS2d 394.

25    See, for example, Gary v Cohen (1962) 34 Misc 2d 971, 231 NYS2d 394.

26    Citing this case, the court in Sympson v Rogers (1966, Mo) 406 SW2d 26. 24 ALR3d 1183, § 7, remarked that the law in New York is said to be unsettled on the question, but the possibility of a recovery for services rendered prior to disbarment is not precluded, perhaps on quantum meruit.

27    Under a rule adopted by the justices of the Appellate Division of the Supreme Court of New York in the First and Second Judicial Departments, effective January 1, 1965, a suspended attorney may be compensated on a quantum meruit basis for legal services rendered and disbursements incurred by him prior to the effective date of the order of suspension. Moreover, according to an opinion by the New York State Bar Association Committee on Professional Ethics (NY St Bar Assn Ethics Opn No 609 (1990)), as a matter of ethics, "as long as the disbarment was unrelated to the matter in which the fees were earned, an attorney may properly share in fees for work performed or responsibility assumed until the time of disbarment, but not for services performed or responsibility assumed after the time of disbarment."

28    This case modified the order appealed from in In re Polansky (1962) 33 Misc 2d 292. 223 NYS2d 606. a proceeding on a motion to fix a fee and to determine a lien of a disbarred attorney, where the court granted the motion to the extent of substituting a new counsel and determining that the former counsel, whose disbarment prevented his performance of a contract to handle the action on a contingent-fee basis, after he had performed substantial legal work but before either a settlement or a verdict had been obtained, was entitled to no lien on either the papers or the proceeds of the action.

29    For a discussion of the Polansky case, see Tiringer v Grafenecker (1962) 38 Misc 2d 29, 239 NYS2d 567, this section.

30    According to the court in Egan v Waggoner (1918) 41 SD 239, 170 NW 142, an attorney who undertook to assist other attorneys in the prosecution of a claim for damages but was disbarred shortly after filing their client's brief in the Appellate Court was not entitled to recover on his employment contract from the other attorneys, the court reasoning that, immediately

upon the entry of disbarment, every contract of employment as attorney entered into by the disbarred attorney was effectively annulled. The evidence established that two attorneys were retained to prosecute a personal-injury claim for a contingent fee of 50 percent of the net amount finally collected. These attorneys then entered into a written contract, approved by the client, under which the plaintiff, then a duly-licensed attorney, agreed to assist them in the prosecution of the damage suit to final termination. A judgment was obtained for the client, and all parties continued in full performance of their duties under the contracts up to and including the preparation and filing of the client's brief on appeal. Shortly after the filing of the appellate brief, the assisting attorney was disbarred; the other attorneys appeared at the oral argument, and the judgment of the lower court was affirmed. Of the 50 percent of the judgment received by the two attorneys, the disbarred attorney, relying on his contract with them, demanded one-half and brought the instant action after they refused to pay. A verdict for the attorney was directed by the lower tribunal, and, from the judgment entered on such verdict and from an order denying a new trial, the other attorneys appealed. The court, on review, found error in the action of the trial court directing a verdict for the disbarred attorney, further holding that any disability which renders a contract for legal services impossible of performance annuls the contract. Here, the court emphasized, such annulment was brought about by the disbarred attorney's own wrongdoing and was therefore as much of a voluntary annulment of his contracts of employment as attorney as though he had expressly refused to perform such contracts, or had accepted an office which disqualified him to perform such contracts. Having annulled his contract, the court concluded, the disbarred attorney certainly was not entitled to any compensation for services rendered by the other two attorneys thereafter in the performance of those duties which he had contracted to assist in performing.

31    The first appeal of the case is reported at Sympson v Rogers (1958, Mo) 314 SW2d 717, wherein the court, reversing and remanding the cause, ruled that the trial court erred in its failure and refusal to permit the filing of an amended petition, since the assignee of the disbarred attorney was not completely barred from stating a claim upon which recovery could be had for services rendered by the attorney prior to voluntarily surrendering his license to practice law.

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
20943 Devonshire St., Suite 206, Chatsworth, CA 91311.

A true and correct copy of the foregoing document entitled (*specify*): **REPLY TO TRUSTEE'S OBJECITON TO FINAL APPLICATION FOR COMPENSATION FOR LEGAL SERVICES RENDERED BY SPECIAL LITIGATION COUNSEL FOR CHAPTER 7 TRUSTEE NANCY J. ZAMORA; DECLARATION OF BRADLEY H. SPEAR** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On November 23, 2016 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Frank F Barilla - INACTIVE -barillabklaw@yahoo.com
- Asa S Hami ahami@sulmeyerlaw.com; agonzalez@sulmeyerlaw.com; agonzalez@ecf.inforuptcy.com; ahami@ecf.inforuptcy.com
- Elizabeth Jiang ejiang@vedderprice.com; elizabeth.z.jiang@gmail.com; nortega@vedderprice.com; ecfdocket@vedderprice.com
- Jeffrey S. Kwong jsk@lnbyb.com; jsk@ecf.inforuptcy.com
- Elissa Miller emiller@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com; emillersk@ecf.inforuptcy.com; dwalker@ecf.inforuptcy.com
- Juliet Y oh jyo@lnbrb.com; jyo@lnbrb.com
- Brett Ramsaur bramsaur@swlaw.com; kcollins@swlaw.com
- Ramesh Singh claims@recoverycorp.com
- Paul D Spear pdspear@spearlaw.com
- United States Trustee (SV) ustpregion16.wh.ecf@usdoj.gov
- Edward M Wolkowitz emw@lnbrb.com
- Nancy J Zamora (TR) zamora3@aol.com, nzamora@ecf.epiqsystems.com

**2. SERVED BY UNITED STATES MAIL**:
On November 23, 2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
☒                                                       Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on November 23, 2016, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Martin R. Barish                                    Michael David Paris
United States Bankruptcy Court                           17300 Roscoe Blvd., #205
21041 Burbank Boulevard, Suite 342 / Courtroom 303       Northridge, CA 91325
Woodland Hills, CA 91367                                  ☒     Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

November 23, 2016     Johnny Fooladi                                    */s/ Johnny Fooladi*

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_Date_                    _Printed Name_                              _Signature_

**Served by Personal Delivery**

Professionals


Andre E. Jardini
Knapp, Peterson & Clarke
550 North Brand Blvd.
Suite 1500
Glendale, CA  91203

Samuael R. Biggs
SLBIGGS, a division of
Singer Lewak
10960 Wilshire Blvd., 7th Floor
Los Angeles, CA  90024

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_                                                  **F 9013-3.1.PROOF.SERVICE**

Edward Wolkowitz, Esq.
Jeffrey S. Kwong, Esq.
Levene, Neale, Bender, Yoo & Brill L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, CA  90067

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Franchise Tax Board
Bankruptcy Section MS: A-340
PO Box 2952
Sacramento, CA 95812-2952

Centers for Medicare & Medicaid
Services c/o Chief Administrator, Chief
Executive Officer, or. Authorized Agent
for Service
7500 Security Boulevard
Baltimore, MD 21244

Medi-Cal/CA Department of Health Care
Services/Health Care Options
c/o Chief Administrator, Chief Executive
Officer, or. Authorized Agent for Service
P.O. Box 989009
West Sacramento, CA 95798-9850

Jonathan Murphy
Snell & Wilmer
600 Anton Blvd., Suite 1400
Costa Mesa, CA  92626

Christopher E. Faenza, Esq.
Sung Ho "Sean" Kim, Esq.
Yoka & Smith, LLP
445 S. Figueroa St., 38th Floor
Los Angeles, CA 90071

Robert Morgenstern, Esq.
Hillary Patton, Esq.
Maranga Morgenstern, APLC
5850 Canoga Ave Ste. 600
Woodland Hills, CA 91367

Providential Health & Services
c/o John R. Tate
Suite 2400
865 South Figueroa Street
Los Angeles, CA 90017-2566

DHS/Recovery Section/PI (Medi-Cal)
c/o Chief Administrator, Chief Executive
Officer, or. Authorized Agent for Service
M/S 4720, P.O. Box 997425
Sacramento, CA 95899-7425

Hunter Donaldson, LLC as trustee for
Providence Health & Services
c/o Matt Oostra
P.O. Box 39
Brea, CA 92822-0039

Olive View UCLA Medical Center (2
vols.; Billings)
Olive View UCLA Medical Center
14445 Olive View Drive
Sylmar, CA 91342

Encino Diagnostic Center
5363 Balboa Blvd Ste 100
Encino, CA 91316

Northridge Hospital Medical Center
18300 Roscoe Blvd
Northridge, CA 91328

Cardiology Consultants Medical Group of
the Valley, Inc./Cardiology Consultants
Medical Grp of the Valley, Inc.
18370 Burbank Blvd
Tarzana, CA 91356-2830

Center for Orthopedic Specialists
Robert Fields, MD
7301 Medical Center Dr, Ste 400
West Hills, CA 91307

Alan B. Smith
20742 Skouras Drive
Winnetka, CA 91306

County of Los Angeles DHS
c/o Linebarger Goggan Blair & Sampson,
LLP/The Cleveland office Building
1515 Cleveland Place, Suite 300
Denver, CO 80202

Simi Valley San Fernando Valley
Urology
c/o Cimplify
720 Cool Springs Blvd., Suite 510
Franklin, TN 37067

Medi-Cal re David Paris for Recipient
FILE # 91761497E
DHS/Recovery Section/PIMIS 472.0
P. O. Box 997425
Sacramento, CA 95899-7425

CMS (Centers for Medicare &
Medicaid Services)
c/o Medicare - Data Collections
P.O. Box 138897
Oklahoma City, OK 73113-8897

Providence Health & Services
4180 W. 190th Street
Torrance, CA 90504

CMS (Centers for Medicare & Medicaid
Services) c/o Commercial Repayment
Center - NGHP
PO Box 93965
Cleveland, OH 44101

Los Angeles City Fire Department
200 N. Main Ste. 1620
Los Angeles, CA 90012

Midvalley Comprehensive Health
Center
7515 Van Nuys Blvd. Ste 450
Van Nuys, CA 91405

Reseda Family Medical & Urgent
Care (or Reseda Urgent Care)
6860 Reseda Blvd.
Reseda, CA 91335

San Fernando Post Acute Hospital
12260 Foothill Blvd.
Sylmar, CA 91342

Alexis Medical Management (billing
for Dr. Ali Namazie)
18425 Burbank Blvd. Ste. 625
Tarzana, CA 91356

Hillary D. Patton, Esq.
Maranga * Morgenstern, APLC
5850 Canoga Avenue, Suite 600
Woodland Hills, California 91367

Employment Development Dept.
Bankruptcy Group MIC 92E
PO Box 826880
Sacramento, CA 94280-0001

Biggs & Co.
3250 Ocean Park Blvd.
Suite 350
Los Angeles, CA 90405-3257

SLBiggs
10960 Wilshire Boulevard
7th Floor
Los Angeles, CA 90024-3710

The Bank of New York Mellon FKA The Bank of
c/o Law Offices Les Zieve
18377 Beach Blvd., Suite 210
Huntington Beach, CA 92648-1349

ADVANCED CARDIOVASCULAR INTERP
POB 2311
CHATSWORTH CA  91313

ALI R NAMAZIE MD
POB 5436
SHERMAN OAKS 91413-5436

Afni, Inc.
Po Box 3097
Bloomington, IL 61702-3097

American InfoSource LP as agent for
T Mobile/T-Mobile USA Inc
PO Box 248848
Oklahoma City, OK  73124-8848

American Lending and Realty, Inc.
c/o SulmeyerKupetz, APC
Asa S. Hami, Esq.
333 South Hope Street, 35th Floor
Los Angeles, CA 90071-1406

BOWERS AMBULANCE SERVICE
3355 E SPRING ST 301
LONG BEACH CA 90806-6826

Balboa La
Pob 3125
Granada Hills, CA 91394-0125

CAINE & WEINER
POB  5010
WOODLAND HILLS CA 91365-5010

CARDIOVASCULAR CONSULTANTS MEDICAL
15243 VANOWEN ST STE 301
VAN NUYS CA 91405-3646

CIMPLIFY CREDIT
720 COOL SPRINGS BLVD
FRANKLIN TN 37067-2626

CMRE/BUENA VISTA ANESTHESIA MED
3075 E IMPERIAL HWY STE 200
BREA CA 92821-6753

Caine & Weiner
21210 Erwin St
Woodland Hills, CA 91367-3714

California Business Bu
1711 S Mountain Ave
Monrovia, CA 91016-4256

Care Financial Svcs In
3075 E Imperial Hwy Ste
Brea, CA 92821-6753

Collection Bureau Of America
PO Box 5013
Hayward, CA 94540-5013

(p)DIRECTV LLC
ATTN BANKRUPTCIES
PO BOX 6550
GREENWOOD VILLAGE CO 80155-6550

Discover Bank
DB Servicing Corporation
POB 3025
New Albany Ohio 43054-3025

Discover Fin Svcs Llc
Po Box 15316
Wilmington, DE 19850-5316

Fidelity Creditor Svc
216 S Louise St
Glendale, CA 91205-1637

Holy Cross Medical Center
15031 Rinaldi St
Mission Hills, CA 91345-1207

LINEBARGER GOGGAN BLAIR & SAMPSON
1515 CLEVELAND PL #300
DENVER CO 80202-5113

Los Angeles County Tax Collector
PO Box 54018
Los Angeles, CA 90054-0018

M Leonard And  Associates
14520 Erwin Street
Van Nuys, CA 91411-2340

MOTION PICTURE AND TELEVISION FUND
FILE 1778
PASADENA CA 91199-0001

Modern Adjustment Bure
6226 Vineland Ave
North Hollywood, CA 91606-3792

NCO FINANCIAL
POB 15630 DEPT 980
TRENTON NJ 08650-4912

PROFESSIONAL IMAGING
25020 AVE STANFORD
GRANADA HILLS CA  91344-4536

Pathology Associates Of So CA
PO Box 2311
Chatsworth, CA 91313

Recovery Management Systems Corporation
25 S.E. 2nd Avenue, Suite 1120
Miami, FL 33131-1605

SPEAR LAW FIRM/BRADLEY H SPEAR
18455 BURBANK BLVD STE 210
TARZANA CA 91356-6633

Specialized Loan Servicing LLC
8742 Lucent Blvd, Suite 300
Highlands Ranch, CO 80129-2386

West Asset
2703 N Highway 75
Sherman, TX 75090-2567

Michael David Paris
8357 Tunney Avenue
Northridge, CA 91324-4262

Mojdeh Daneshrad
c/o SulmeyerKupetz, APC
Asa S. Hami, Esq.
333 South Hope Street, 35th Floor
Los Angeles, CA 90071-1406

NORTH VALLEY GI CONSULTANTS
10515 BALBOA BLVD STE 380
GRANADA HILLS CA 91344-6383

PROVIDENCE HOLY CROSS MED CENTER
POB 541050
LOS ANGELES CA 90054-1050

Progressive Mgmt Syste
1521 W Cameron Ave Fl 1
West Covina, CA 91790-2738

SPECIALIZED LOAN SERVICING
8742 LUCENT BLVD STE 300
LITTLETON CO 80129-2386

Staniscoontr
914 14th St
Modesto, CA 95354-1011

World Financial Bank
PO Box 182782
Columbus, OH 43218-2782

Nancy J Zamora (TR)
U.S. Bank Tower
633 West 5th Street, Suite 2600
Los Angeles, CA 90071-2053

Motion Picture & Television Fund
File 1178
Pasadena, CA 91199-0001

Paley Commercial Real Estate, Inc.
c/o SulmeyerKupetz, APC
Asa S. Hami, Esq.
333 South Hope Street, 35th Floor
Los Angeles, CA 90071-1406

ROBERT E THOMSPON MD
17075 DEVONSHIRE ST #205
NORTHRIDGE CA 91325-5408

SOLUTIONS MPM
FILE 749267
LOS ANGELES CA  90074-9267

Simi San Fernando Valley Uro Assoc
C/O CIMplify
720 Cool Springs Blvd
Franklin, TN 37067-2626

UROLOGY SPECIALIST OF SO CA
FILE 749267
LOS ANGELES CA  90074-9267

Frank F Barilla - INACTIVE -
Law Offices Barilla and Associates
1900 Quail St Ste 130
Newport Beach, CA 92660-2303

Paul D Spear
Spear Law Firm
18455 Burbank Blvd, Ste 210
Tarzana, CA 91356-6633

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).