1    EDWARD M. WOLKOWITZ (SBN 68298)
    JEFFREY S. KWONG (SBN 288239)
2    LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
    10250 Constellation Boulevard, Suite 1700
3    Los Angeles, California 90067
    Telephone: (310) 229-1234
4    Facsimile: (310) 229-1244
    Email: EMW@LNBYB.COM; JSK@LNBYB.COM
5

6    Attorneys for Nancy J. Zamora, Chapter 7 Trustee

7

8                **UNITED STATES BANKRUPTCY COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10             **SAN FERNANDO VALLEY DIVISION**

11

| | |
|---|---|
| In re | Case No. 1:12-bk-11446-MB |
| MICHAEL DAVID PARIS, | Chapter 7 |
| Debtor. | **CHAPTER 7 TRUSTEE'S SUPPLEMENTAL BRIEF RE: OBJECTION TO FEE APPLICATION OF THE SPEAR LAW FIRM** |
| | <u>Hearing:</u><br>Date: April 17, 2017<br>Time: 10:30 a.m.<br>Place: Courtroom 303<br>       21041 Burbank Boulevard<br>       Woodland Hills, CA 91367 |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO THE HONORABLE MARTIN BARASH, UNITED STATES BANKRUPTCY JUDGE:**

Nancy J. Zamora, the duly appointed Chapter 7 Trustee (the "Trustee") in the bankruptcy case of Michael David Paris (the "Debtor"), hereby files this Supplemental Brief in support of her objection to the Fee Application [Doc. No. 191] filed by Bradley H. Spear ("Spear"):

**I.** **Spear's Fees/ Costs Should Be Denied In Their Entirety Because Of His Failure To Disclose The Asserted Lien In His Employment Application Pursuant To Rule 2014(a).**

Federal Rule of Bankruptcy Procedure ("Rule") 2014(a) provides, in relevant part, that an attorney's employment application:

> "shall state the specific facts showing the necessity for the employment . . . ***any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee***. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest . . . ."

Fed. R. Bankr. P. 2014(a).  The disclosure requirements of the Bankruptcy Code and Rules "impose upon attorneys an independent responsibility," and the "failure to comply . . . is a sanctionable violation, even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule." *In re Park-Helena Corp.*, 63 F.3d 877, 880 (9th Cir. 1995).  Attorneys are required to broadly disclose "[a]ll facts that may be pertinent to a court's determination of whether an attorney is disinterested or holds an adverse interest to the estate" in their employment applications.  *In re Hathaway Ranch P'ship*, 116 B.R. 208, 219 (Bankr. C.D. Cal. 1990).  "The disclosure rules are applied literally, even if the results are sometimes harsh."  *Park-Helena*, 63 F.3d at 881.

Here, the Court should deny Spear's request for fees and costs in their entirety, because of his violation of Rule 2014(a).  When the Trustee initially retained Spear as special counsel, he neither: (1) told the Trustee that he had or intended to assert an attorneys' lien (the "Asserted Lien") on the settlement proceeds of the Personal Injury Action (the "Settlement Proceeds"); nor (2) disclosed the Asserted Lien in his employment application [Doc. No. 87] (the "Employment Application").

1

Pursuant to FRBP 2014(a), Spear was required, but failed, to disclose "any proposed arrangement for compensation" and "all of the person's connections with the debtor" – which would include the Asserted Lien. *See Hathaway*, 116 B.R. at 219. ***Not only was such non-disclosure a violation of Rule 2014(a), it was a material and serious omission that must be disclosed***. *See In re Dearborn Const., Inc.*, No. 02-00508, 2002 WL 31941458, at *9 (Bankr. D. Idaho 2002) ("The claim of possession or entitlement to a lien position is a material and relevant factor, and must be disclosed under § 327(a) and Rule 2014(a)); *In re Printcrafters, Inc.*, 233 B.R. 113, 119 (D. Colo. 1999) ("counsel's security interest in a retainer is a conflict which 'the Code recognizes and generally tolerates . . . so long as fully disclosed . . . .'") (internal citation omitted); *In re Dick Cepek, Inc.*, 339 B.R. 730 , 741 (9th Cir. BAP 2006) (" . . . a security interest in a debtor's funds [must] be adequately documented. The Bankruptcy Code and Rules require full disclosure of all interests held by a professional who seeks employment on behalf of the Estate."). Further, the Asserted Lien was and is material to the Court's analysis of the Employment Application; specifically, with regards to whether Spear had an "adverse interest" to the estate, because the Asserted Lien could lessen the value of distribution to estate creditors, and may place Spear and the estate at odds over the entitlement and priority to the Settlement Funds.[1] Although harm is not a prerequisite to denying fees and costs based on non-disclosure, Spear's non-disclosure caused actual harm, because the Court approved his employment without full knowledge of the facts surrounding Spear's employment. *See In re B.E.S. Concrete Prod., Inc.*, 93 B.R. 228, 237 (Bankr. E.D. Cal. 1988) (denying all fees, and opining that the inadequate disclosure "caused actual harm . . . [because it] caused me to permit, erroneously, a representation that was not in the best interest of the estate (as well as constituting an impermissible conflict).").

By failing to disclose the Asserted Lien in his Employment Application, Spear "proceed[ed] at [his] own risk," and he should "expect nothing more than the denial of

---

[1] *See Dye v. Brown*, 355 B.R. 139, 149 (9th Cir. BAP 2006) (defining "adverse interest" as: "(1) possession or assertion of an economic interest that would tend to lessen the value of the bankruptcy estate; or (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is a rival claimant; or (3) possession of a predisposition under circumstances that create a bias against the estate.").

1  compensation requested and disgorgement of fees received." *In re Cook*, 223 B.R. 782, 794 (10th

2  Cir. BAP 1998).  This Court should – like various other courts opining or considering similar non-

3  disclosure issues have favored or done – deny all of Spear's requested fees and costs.  *See e.g.*,

4  *Park-Helena*, 63 F.3d at 882 (affirming court's denial of all fees for failure to adequately disclose

5  source of retainer); *In re Woodcraft Studios, Inc.*, 464 B.R. 1 (N.D. Cal. 2011) (affirming court's

6  denial of all fees and ordering disgorgement where attorney failed to disclose pre-petition work

7  performed for debtor); *see In re Coastal Equities, Inc.*, 39 B.R. 304, 308 (Bankr. S.D. Cal. 1984)

8  ("If . . . an attorney holds an undisclosed adverse interest, the court is empowered to deny all

9  compensation and reimbursement of expenses."); *Gray v. English*, 30 F.3d 1319, 1324 (10th Cir.

10  1994) ("[W]e think the court should lean strongly toward denial of fees, and if the past benefit to

11  the wrongdoer fiduciary can be quantified, to require disgorgement of compensation[.]"); *In re

12  Downs*, 103 F.3d 472, 479 (6th Cir. 1996) ("The bankruptcy court should deny all compensation

13  to an attorney who exhibits a willful disregard of his fiduciary obligations to fully disclose[.]").

14      To the extent that Spear alleges that his violation of Rule 2014(a) should be excused

15  because of his negligence and/or inadvertence (*e.g.*, because he is unfamiliar with bankruptcy law

16  or failed to carefully read his declaration in support of the Employment Application before filing),

17  the Court should reject such arguments as irrelevant.  *Park-Helena*, 63 F.3d at 881 ("Negligent or

18  inadvertent omissions 'do not vitiate the failure to disclose.'").  Spear's failure to disclose the

19  Asserted Lien warrants denial of all of his requested fees and costs, and may warrant

20  disgorgement of any sums paid to him.

21  **II.    Spear's Preemption Argument Re: The Court's Lack Of Authority To Review His

22  Fees And Asserted Lien Is Patently Wrong.**

23      Spear also appears to argue that this Court lacks authority to disallow or invalidate the fees

24  or lien to which he is entitled to under California law.[2]  This is complete nonsense.  Not only does

25  it run contrary to the Supremacy Clause of the United States Constitution, it also ignores

26  _____

27  2 Spear's citation to *Viva! Int'l Voice For Animals v. Adidas Promotional Retail Operations, Inc.*, 41 Cal. 4th 929, 946, 162 P.3d 569, 579 (2007) is largely, if not completely, inapplicable.  That case does not address attorney' fees and liens, but rather the federal regulation/deregulation of Kangaroos.

28

established case law. *In re Woodcraft Studios, Inc.*, 464 B.R. 1 (N.D. Cal. 2011) is a case in which the appellate court rejected the attorney's argument that the Bankruptcy Court lacked authority to disgorge his retainer because he allegedly had "a valid security interest under state law." *Id.* at 11. In doing so, the court reasoned that "*all* retainer agreements – and fee arrangements in general – are subject to the Bankruptcy Court's approval and modification, regardless of how those arrangements are treated under state law." *Id.* at 12; *see also Brown v. Gerdes*, 321 U.S. 178, 182 (1944) ("Bankruptcy Act 'provided a centralized control over all administrative expenses, of which lawyers' fees are a part.'"). It further reasoned that "*all* retainers, regardless of type and when they are received, are subject to disgorgement in response to disclosure violations." *Woodcraft*, 464 B.R. at 13.

**III.    California Law Provides That Spear Is Not Entitled To Any Compensation Or Lien On The Settlement Proceeds.**

In addition to violating the bankruptcy disclosure rules, California law also provides that Spear is not entitled to any compensation for his services, or an attorneys' lien on the Settlement Proceeds. First, Spear cannot recover any compensation for his services because he voluntarily withdrew from representing the estate in the Personal Injury Action without "justifiable cause." *See Duchrow v. Forrest*, 215 Cal. App. 4th 1359, 1382 (2013); *Royden v. Ardoin*, 160 Tex. 338, 341, 331 S.W.2d 206, 209 (1960). Second, Spear does not have a valid lien on the Settlement Proceeds because his mere reliance on the existence of a contingency fee agreement, without more, is insufficient to create an attorneys' lien. *Gelfand, Greer, Popko & Miller v. Shivener*, 30 Cal. App. 3d 364, 375, 105 Cal.Rptr. 445 (1973). For the sake of brevity and because these arguments were previously detailed in the Trustee's Fee Objection and "*Reply To Oppositions To The Chapter 7 Trustee's Notice Of Motion And Motion For Order Approving Compromise Of Controversy With Providence Holy Cross Medical Center By Providence Health & Services*" (the "9019 Reply"), by this reference, the Trustee hereby incorporates all such arguments herein.

**IV.    CONCLUSION**

In his Employment Application and supporting declaration, Spear represented to the Trustee and to the Court that he was willing and able to represent the estate as special litigation

1    counsel and prosecute the Personal Injury Action to a successful conclusion.  Nothing could

2    have been further from the truth.  Not long after Spear was employed, he advised the Trustee

3    that he was being suspended by the State Bar for two years.  Prior to his suspension taking

4    effect, he made little or no effort to associate counsel to continue with the litigation, when he

5    knew he could not.  Had he done so, one would have to assume that he would have negotiated

6    some financial arrangement with associate counsel consistent with his initial fee arrangement.

7    Moreover, such an arrangement would have obviated his voluntary withdrawal from the case.

8    Instead, he did nothing and left the Trustee completely in the lurch.  As a result, the Trustee was

9    forced to find a law firm to step in and take over the litigation.  Fortunately, she was able to

10   retain a law firm that was able to bring the personal injury litigation to a successful conclusion.

11          It is clear that Spear failed to abide by the disclosure requirements of the Bankruptcy Code

12   and Rules, in failing to disclose (and even making contradictory statements related to)[3] his

13   Asserted Lien and ability to pursue the litigation.  At this juncture, an evidentiary hearing is not

14   required because Spear's fees and costs can be completely denied without regard to the alleged

15   deficient quality of his services.  *See Cook*, 223 B.R. at 794 ("Winship further argues that . . .

16   disgorgement of all fees was not warranted since there was no evidence of harm and that his

17   services provided a significant benefit to the estate.  However, we review not the quality of his

18   representation, but his application for employment as it was presented to the bankruptcy court.").

19   Based on the foregoing, the Trustee requests that the Court deny Spear's requested fees and costs

20   in their entirety.

21   Date:  March 24, 2017                    LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

22                                            By:  ___/s/ Jeffrey S. Kwong_____
                                             EDWARD M. WOLKOWITZ
23                                           JEFFREY S. KWONG
24                                           Attorneys for Nancy J. Zamora, Chapter 7 Trustee

25

26   _____

27   [3] Specifically, Spear's Declaration specifically disavows that any lien was created, and states that "[t]he Spear firm
     has not received a retainer *nor will it receive a lien in property of the Debtor with respect to its representation*."
     (Doc. No. 87, 11 ¶ 8:15-16) (emphasis added).

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit "1"
[Unpublished Decision(s)]

2002 WL 31941458
Only the Westlaw citation is currently available.
United States Bankruptcy Court,
D. Idaho.

In re DEARBORN CONSTRUCTION,
INC., dba DCI dba DCI Design
Associations dba Design Associates, Debtor

No. 02–00508.
|
Dec. 20, 2002.

**Attorneys and Law Firms**

Kelly Greene McConnell, Brad V. Sneed, Givens Pursley,
LLP, Boise, Idaho, for Debtor.

Larry E. Prince, Andrea P. Patterson, Holland & Hart,
LLP, Boise, Idaho for U.S. Bank National Association.

MEMORANDUM OF
DECISION (LIEN/RETAINER)

MYERS, Bankruptcy J.

I. INTRODUCTION

**\*1** In this case, a number of issues are presented
regarding the nature, terms and costs of legal
representation in a chapter 11 proceeding. The issues
involve the construction and treatment of a retainer paid
to counsel for the chapter 11 debtor prior to debtor's
filing the petition, including: (1) debtor's counsel's claims
that they hold a common law lien in the retainer; (2) the
nature of the disclosures required regarding the lien as a
precondition to employment; (3) counsel's eligibility to be
employed as debtor's counsel; and (4) debtor's counsel's
receipt of certain additional sums of money post-petition
that enhanced the retainer, and the required disclosures
regarding those funds.

Additionally, the attorneys involved have requested
compensation for services performed and reimbursement
of costs and expenses incurred. These requests exceed
$72,000.00 for a period of slightly under three months.
Objections to the allowance of fees and costs have been
filed in addition to objections regarding the lien, retainer,
disclosure and disqualification issues.

Resolution of these issues has required extended analysis,
and this disposition is unfortunately lengthy. The Court
has therefore decided to issue its Decision in two segments.
This present Memorandum of Decision (Lien/Retainer)
addresses the group of issues identified in the opening
paragraph of this introduction. A separate Memorandum
of Decision (Fees/Costs) addresses the compensation
issues summarized in the second paragraph of this
introduction. A single Order shall be issued in regard to
both Decisions.

II. BACKGROUND AND FACTS

On February 21, 2002, Dearborn Construction, Inc.
("Debtor") filed a voluntary petition for relief
under chapter 11. Debtor provided construction and
construction management services. Its business had a
twenty year history in the western U.S., and it had
offices in five states. At the time of filing, Debtor was
engaged in forty-two ongoing construction projects in six
states. Debtor represented that the ongoing projects had a
cumulative value of over $25 million. *See* Doc. No. 46, at
Exhibit A(1). The magnitude and complexity of the case
was evident from the first hearings which were held almost
immediately upon filing. *See, e.g.,* Doc. No. 3 (motion
to approve interim use of cash collateral); Doc. No. 6
(affidavit of Dan Dearborn, alleging monthly operating
expenses in excess of $267,000). The schedules showed
assets approaching $4 million and liabilities in excess of $5
million. *See* Doc. No. 20.

On February 25, 2002, Debtor filed an application
pursuant to § 327(a), Doc. No. 9 ("Application"),
requesting that the Court approve employment of
attorney Kelly Greene McConnell and her law firm,
Givens Pursley, LLP (collectively "Counsel"). The
Application and Ms. McConnell's Rule 2014(a) affidavit,
Doc. No. 10 ("Affidavit"), asserted that Counsel did not
represent or hold any interest adverse to the interests of
Debtor's estate and was disinterested. [1] Application at 2;
Affidavit at 2.

**\*2** The Application disclosed that Debtor and Counsel
had entered into a retainer agreement ("Agreement")
under which Debtor submitted a $50,000.00 retainer to
be held in the law firm's trust account. Counsel proposed
to bill attorneys' fees on an hourly basis with actual
payment "as approved by the Court." Application at 3.

The Agreement, attached as Exhibit A to the Application, provided in part:

> As to our prior discussions regarding a retainer, we are in receipt of Dearborn's $50,000.00 deposit into our trust account. This money will be held in Dearborn's name in our firm's trust account. After securing approval of payment from the Court, the firm will submit a monthly bill to Dearborn for its review and payment. The firm will not draw money from the submitted retainer as long as Dearborn pays its monthly bills. Please be advised that this matter may ultimately cost much more than $50,000.00, causing Dearborn to incur charges over and above the previously submitted retainer. When Givens Pursley's representation of Dearborn in this matter ceases, the funds remaining in the trust account will be disbursed to Dearborn once all outstanding invoices are settled by Dearborn.

*Id.* at 2.

On March 5, the Court entered an order approving Debtor's employment of Counsel. *See* Doc. No. 14. This order indicated, among other things, that fees could be paid to Counsel only on prior approval of the Court. On March 7, 2002, Counsel filed the Disclosure of Compensation of Attorney for Debtor required under § 329(a) and Rule 2016(b). *See* Doc. No. 21 ("Disclosure"). [2] Counsel represented that, in addition to the $50,000.00 retainer, it had been paid $5,712.63 pre-petition and that Debtor owed nothing more at the time of filing. *Id.* [3]

On April 23, 2002, Counsel requested interim compensation pursuant to § 331 in the amount of $19,414.00 in attorneys' fees and $2,335.25 in costs (a total of $21,749.25) for the seven-day period between the February 21, 2002 petition date and February 28, 2002. *See* Doc. No. 44, Doc. No. 46. [4] Counsel had initially sought attorney fees in the amount of $29,014.50 and costs of $3,191.01 (a total of $32,205.51) for the period from

January 30, 2002 to February 28, 2002. *See* Doc. No. 31. This request, however, was amended and suspended by Doc. No. 46 which removed the charges for the period prior to the petition's February 21 filing. As can be seen from the totals, this reduced the request by $10,456.26. [5]

In addition to the request for interim fees and costs in Doc. No. 46, Counsel sought amended approval of its employment *nunc pro tunc* to the date the petition was filed (February 21) rather than the date Debtor filed and served the § 327(a) Application (February 25). [6] In an earlier hearing, the Court approved Counsel's four-day *nunc pro tunc* request, however, issues related to Counsel's fee request were continued for further hearing.

On May 6, 2002, Debtor voluntarily converted its case to a chapter 7 liquidation. This followed Debtor's April disclosure that reorganization was not viable, due primarily to the loss of major contracts in California. [7]

**\*3** Counsel subsequently filed a "Motion and Supporting Memorandum for Order Allowing Administrative Expenses for Professional Services Rendered to Debtor." *See* Doc. No. 63 ("Motion"). The Motion requested allowance of attorneys' fees in the amount of $44,624.50 and reimbursement of costs in the amount of $5,870.72 for the period from March 1, 2002 to May 13, 2002. [8]

The fees and costs requested in the Motion were in addition to Counsel's prior application, Doc. No. 46, which requested $19,414.00 in fees and $2,335.25 in costs for February 21 through February 28. Thus, the total claimed from the February 21 petition date through May 13 was $72,244.47, consisting of fees of $64,038.50 and costs of $8,205.97.

The Motion disclosed that Counsel held a total of $95,000.00 (and not $50,000.00) in its trust account, which was the first such disclosure in the Court's record. [9] When responding to question 1–B posed by the United States Trustee's fee guidelines which requires a fee applicant to "[i]dentify the existence and terms controlling the use of any retainer received from any party for providing services in this case," Counsel stated:

> $95,000.00 retainer held in trust account, to be drawn on only upon Order of the Court; $45,000.00 of this

WESTLAW    © 2017 Thomson Reuters. No claim to original U.S. Government Works.    2

In re Sammon, 2006 WL..., Not Reported in B.R. (2006)
2002 WL 31941458

total was originally given by the Debtor pre-petition to Debtor's non-bankruptcy counsel, who thereafter remitted this amount to Givens Pursley when they failed to timely apply to the Court to be hired as non-bankruptcy counsel and their services were not required.

*See* Exhibit A to the Motion. In the body of the Motion, Counsel proposed that payment of the $64,038.50 in attorney fees and $8,205.97 in costs come from the retained $95,000.00.

In addition, Counsel in the Motion claimed a common law possessory lien in the retainer, the first such assertion in the case. Counsel contended that, by virtue of this lien, it should be paid from the retainer funds prior to such funds being used for payment of any other administrative expenses. Motion, at 2–3.

A creditor, U.S. Bank National Association ("USB"), objected to Counsel's Motion, arguing Counsel's fee request was unreasonable and Counsel's services did not benefit the estate. *See* Doc. No. 73. USB's suggested reductions total $27,586.98 and would result in a proposed allowance to Counsel of $46,657.49. *Id.* at 2–5.

USB also argued that Counsel's receipt of the $45,000.00 was an unauthorized and undisclosed post-petition transfer, and that this $45,000 was USB's collateral or the proceeds of its collateral. *Id* . at 5. USB further disputed the contention that Counsel had a valid and enforceable lien in any retainer. It also argued that Counsel's potential § 503(b)(2) administrative expense claims for compensation would ultimately be junior to the protection USB believed it was entitled to under § 507(b). *Id.* at 6.

The United States Trustee ("UST") also objected to the reasonableness of Counsel's fee request, adopting the arguments advanced by USB. *See* Doc. No. 77 at 5. [10] The UST further argued, however, that *all* fees should be denied and the entire retainer disgorged because: (1) Counsel, by asserting the lien, was not a disinterested party but, rather, a creditor that held an interest adverse to the estate; (2) Counsel failed to properly and fully disclose the lien at the time of the § 327(a) Application and Rule 2014(a) Disclosure; (3) Counsel failed to timely disclose the $45,000.00 post-petition transfer under Rule 2016(b); and (4) Counsel's attempt to assert the lien post-petition violated § 364.

*4 The Court held a hearing on the Motion and objections on June 3, 2002. At this hearing, and in a memorandum filed the same day, Counsel advised the Court that it had transferred the $45,000.00 to the chapter 7 Trustee on May 31, 2002 and that it no longer claimed any lien therein. *See* Doc. No. 83, at 8–9. This resolved only a few of the objections, and the parties proceeded to debate many points, including whether Counsel had an enforceable lien in the original $50,000.00 retainer [11] or whether it was required to turn its retainer over to the chapter 7 Trustee and seek payment of any allowed compensation as a second tier administrative expense claimant. [12]

The Court took these multiple, related matters under advisement. Post-hearing briefing has been filed and reviewed. This Memorandum of Decision (Lien/Retainer) and the companion Memorandum of Decision (Fees/ Costs) constitute the Court's findings of fact and conclusions of law under Rules 7052 and 9014.

## III. DISCUSSION AND DISPOSITION

### A. Introduction

A series of intertwined issues are presented. A threshold question is whether Counsel holds a valid common law lien in the retainer. The answer leads to further questions involving disclosures, and the possible lack of disinterestedness or the existence of an adverse interest. These issues, in turn, are relevant to disqualification and to whether any compensation can be awarded to Counsel. Even if Counsel successfully navigates these obstacles, issues remain as to the reasonableness and allowance of the requested compensation under the standards of § 330(a), including the several objections of the UST and USB. These latter matters are addressed in the companion Decision.

### B. Counsel's claim to a possessory lien in the retainer

#### 1. Attorneys' liens under Idaho law

Idaho state law recognizes that an attorney may hold or gain liens to secure payment of attorneys' fees. *See Frazee v. Frazee,* 660 P.2d 928 (Idaho 1983). The lien can be either a possessory lien (sometimes characterized as a retaining lien) or a charging lien. Counsel argues that it holds a common law possessory lien. *See, e.g.,* Doc. No. 83, at 4. It has expressly denied that it is asserting a charging lien,

which has been codified by statute at Idaho Code § 3–205.
*Id.* [13]

In *Frazee,* the Idaho Supreme Court stated:

> A lien for attorney's fees can be either possessory or a charging lien. *The possessory or retaining lien* is of common law origin and *allows an attorney to keep possession of* documents, *money* or other property *obtained in his professional capacity until he receives payment for his professional services.* Such a retaining lien is passive and not enforceable by foreclosure and sale.

660 P.2d at 929 (emphasis added).

While *Frazee* and other Idaho cases [14] voice the concept that an attorney may assert a possessory lien in "money" as well as in files, documents or other property coming into the attorney's possession during the course of representation, none of the decisions expressly discusses a possessory lien in fee "retainers." The Court observes, however, that neither of the objectors has provided authority holding that such a lien could not be obtained or deemed to exist in a consensual fee retainer. Nor has the Court located any such authority.

**\*5** While determination of property of the estate under § 541, treatment of liens and similar issues are matters of federal law, bankruptcy courts must look to state law to determine the nature and extent of interests in property. *In re Pettit,* 217 F.3d 1072, 1078 (9th Cir.2000); *see also In re Hasset, Ltd.,* 283 B.R. 376, 381 (Bankr.E.D.N.Y.2002); *In re For–Rose Plumbing, Inc.,* 99.2 I.B.C.R. 69, 72 (Bankr.D.Idaho 1999) (citing *Butner v. United States,* 440 U.S. 48, 54 n. 9 (1979)). The Idaho courts have announced that attorneys are provided a special common law lien, dependent on possession, in a client's property, files or "money." This Court is constrained to recognize that grant.

Though the lien exists, Idaho cases provide little if any guidance as to how this "passive" lien is to be enforced or how such a lien holder exercises its rights. In order to determine how this passive lien would or should operate in the context of a bankruptcy case, it is helpful to turn to the general limits and conditions imposed on compensation for professionals and, in particular, the treatment of retainers.

2. Retainers in bankruptcy cases

The Code allows a debtor in possession to employ professional persons on "any reasonable terms and conditions of employment, *including on a retainer,* on an hourly basis, or on a contingent fee basis." § 328(a) (emphasis added). Thus, the Code expressly acknowledges a professional might receive a cash retainer. However, not all cash retainers are alike. A leading treatise notes:

> The most common fee arrangements in bankruptcy cases are made pursuant to retainer agreements. Retainers are typically classified as either "security," "advance payment," "earned on receipt," "evergreen" or "classic." The nature of a retainer will determine whether these funds are considered property of the debtor's estate which will, in turn, define the professional's right and interest in such funds.

3 L. King, *Collier on Bankruptcy* ¶ 328.02[1][c], p. 328–6 (rev. 15th ed.2002). *Collier* continues:

> A "security retainer" is defined as one held by attorneys to "secure payment of fees for future services that the attorneys are expected to render." The funds do not constitute a present payment for future services but, rather, remain the property of the estate until the attorney applies charges for services rendered against the retainer. The unearned portion of the retainer must be returned by the attorneys.

*Id.* ¶ 328.02[1][c][i], pp. 328–6 to 328–7. [15]

This Court has previously concluded that security retainers "are estate property which can only be used by the professional upon compliance with the entire fee application process including court approval[.]" *In re Leypoldt,* 95 I.B.C.R. 220, 226 (Bankr.D.Idaho 1995); *see also, In re Hawkins,* 89 I.B.C.R. 266, 271 (Bankr.D.Idaho 1989).

The prevailing view among bankruptcy courts is consistent. [16] An attorney holding a security retainer is treated as a "secured creditor" with the retained funds remaining property of the estate at all times but subject to the attorney's claims to payment to the extent the Court allows the fees. Court approval of compensation pursuant to § 330 and § 331 is required before the professional may collect fees or reimburse expenses by drawing from the retainer. Since the retainer only secures payment for fees and costs specifically allowed by the Bankruptcy Court, [17] any excess amounts in the retainer are property of the estate subject to turn over.

**\*6** Counsel in many ways manifested the intention to treat the funds as a security retainer. The funds have consistently been held in Debtor's name in Counsel's client trust account. Debtor clearly retained an interest in the funds. These funds were designed to operate as security for payment of Counsel's future claims to compensation. Counsel's Agreement acknowledged that compliance with the Code and Court approval were prerequisites to drawing on the retainer. [18]

Under the facts of this case and the foregoing authority, the Court concludes that Counsel obtained and held a security retainer. [19] This authority, as indicated, places several restrictions on Counsel's ability to exercise any rights to that security, perhaps most notably the requirement of judicial review and allowance of compensation under § 330 and § 331 before the funds can be utilized to pay for Counsel's services.

In this Court's view, these authorities are helpful in considering how Counsel's possessory lien in the retainer should be treated. As noted, Idaho precedent characterizes this possessory lien as "passive" and not enforceable by foreclosure. *Frazee,* 660 P.2d at 929. A lien's assertion against a retainer is a matter which supports, if not requires, judicial review or oversight. This Court concludes that, in the bankruptcy context, the assertion of an Idaho attorney's common law possessory lien in funds [20] would be and is subject to the same conditions and restrictions as the security retainer, as set forth above.

**C. Disqualification issues**
The UST argues that if Counsel obtained or held the position of a lien creditor, it ran afoul of the

requirements of disinterestedness and lack of adverse interest. *See* § 327(a). The UST correctly notes that § 327(a)'s prohibitions are reinforced by § 328(c) which provides that, if at any time during the case an attorney is not disinterested or gains or represents an adverse interest, the Court may deny the attorney's compensation.

There are two material and complimentary aspects to § 327(a): the requirement that the professional be disinterested, and the requirement that the professional not hold or represent an adverse interest.

**1. Disinterestedness**
A "disinterested person" is one that "is not a creditor" and "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor." § 101(14)(A), (E). The Code defines a creditor as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." § 101(10)(A). In turn, the Code defines a claim as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." § 101(5)(A).

**\*7** This Court has evidenced through countless decisions its obligation and willingness to enforce the disinterestedness standard. However, this Court has also taken a practical approach to the question of whether the debtor's attorney is a disqualified creditor. The Court stated:

> [a]t first blush, ... [Section 327(a) ] would seem to foreclose the employment of an attorney who is in any respect a "creditor." But such a literalistic reading defies common sense and must be discarded as grossly overbroad. After all, any attorney who may be retained or appointed to render professional services to a debtor in possession becomes a creditor of the estate just as soon as any compensable time is spent on account. Thus to interpret the law in such an inelastic way would virtually

eliminate any possibility of legal assistance for a debtor in possession, except under a cash and carry arrangement. It stands to reason that the statutory mosaic must, at the least, be read to exclude as a "creditor" a lawyer, *not previously owed back fees or other indebtedness* ... notwithstanding that the lawyer will almost instantaneously become a creditor of the estate with regard to the charges endemic to current and future representation.

*In re Leypoldt,* 95 I.B.C.R. at 222 (quoting *In re Martin, 817 F.2d 175, 180 (1st Cir.1987)*). *Collier* is consistent:

With respect to "secured" retainers, courts generally hold that a professional with such a pre-petition retainer is a "secured creditor" and has a security interest in the retainer, noting that professionals receiving pre-petition retainers to insure payment of fees to be earned in the chapter 11 case (or post-petition retainers authorized by the court) become secured creditors, by virtue of a possessory interest in the cash. *The professional's status as a secured creditor by virtue of the retainer does not disqualify the professional from being retained by the estate as required by section 327 of the Code.*

*Collier,* ¶ 328.02[1][c][iii], at 328–7 (emphasis added).

The Court here concludes that, like a security retainer, Counsel's possessory lien was not in and of itself a disqualifying factor, provided that no debt existed at filing and only future obligations were secured. [21]

The Court must therefore deem Counsel's inclusion of pre-petition charges in Doc. No. 31 to have been an error. If claims existed as of the date of the bankruptcy petition and were neither paid nor irrevocably waived, the Application and Disclosure (which affirmatively represented no outstanding debt was owed and upon which the Court was asked to enter an order approving

employment) would have been materially false and misleading. And nothing short of such a waiver would cure the obvious lack of disinterestedness. The withdrawal of these charges from the amended application, Doc. No. 46, is thus viewed by the Court as evidencing Counsel's recognition of its mistake in including amounts which had been so waived.

### 2. Adverse interest

 **\*8** In *Leypoldt,* the Court considered whether a security interest—an Article 9 interest taken in a snowmobile and trailer owned by the debtors—constituted a disqualifying adverse interest. There, the Court held that the attorney's security interest was materially adverse because counsel would have to monitor whether debtors were preserving the value of the collateral and because the seasonal nature of the collateral could prompt counsel to press for its surrender in order to maximize its value. 95 I.B.C.R. at 226. [22]

However, *Leypoldt* distinguished the situation of security in a cash retainer, concluding that the purpose of § 327(a)'s proscription was not served by a bright-line rule precluding an attorney at all times and under any circumstances from having security in a debtor's property to safeguard the payment of fees. 95 I.B.C.R. at 224, 226. *Accord, Printcrafters, Inc., 233 B.R. at 119–20* (counsel's secured interest in a cash retainer is a conflict which "the Code recognizes and generally tolerates as an exception [to § 327(a) ], so long as fully disclosed and subjected to the Court's scrutiny in making such determination"); *Escalera, 171 B.R. at 111* (holding a security retainer in cash and in trust "does not create an interest adverse to the estate"); *Collier,* at ¶ 328.02[1][c][iii] p. 328–7 (a professional's status as a secured creditor by virtue of a retainer does not disqualify the professional from being retained by the estate).

Accordingly, this Court concludes that the lien interest in the cash retainer was alone insufficient to create or reflect a disqualifying adverse interest. [23]

### D. Disclosure issues
The UST argues that, even if not disqualifying, Counsel did not disclose its possessory lien pursuant to Rule 2014(a) and, as a consequence, the firm's fees should be reduced or disallowed in full. Counsel's response,

in briefing and at hearing, is that it had no duty to disclose something that arose solely by operation of Idaho common law, *i.e.,* that the taking of a cash (security) retainer had the effect of automatically giving rise to a possessory lien.

The state of the law is clear: anything less than strict compliance with the requirements of the Code and Rules regarding professional disclosure can result in denial of all fees and costs. There must be full, candid and complete disclosure of all the professional's connections to the debtor and other parties in interest. *In re Combe Farms, Inc.,* 257 B.R. 48, 54–55, 01.1 I.B.C.R. 7, 9–10 (Bankr.D.Idaho 2001) (addressing Rule 2014(a) obligations); *For–Rose Plumbing,* 99.2 I.B.C.R. at 70–71. "Even a negligent or inadvertent failure to disclose fully relevant information may result in a denial of all requested fees." *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.),* 63 F.3d 877, 882 (9th Cir.1995).

In *Park–Helena,* the Ninth Circuit upheld a bankruptcy court's denial of all fees when an attorney's disclosure failed to provide sufficient detail, commenting that the "disclosure rules are applied literally, even if the results are sometimes harsh". *Id.; accord Parkhurst,* 02.1 I.B.C.R. at 59 (same, in regard to § 329(a)). " 'The

duty of professionals is to disclose all connections with the debtor, debtor-in-possession, insiders, creditors, and parties in interest.... They cannot pick and choose which connections are irrelevant or trivial.... No matter how old the connection, no matter how trivial it appears, the professional seeking employment must disclose it." ' *Park–Helena,* 63 F.3d at 882 (quoting *In re EWC Inc.,* 138 B.R. 276, 281–82 (Bankr.W.D.Okla.1992)).

**\*9** Counsel said nothing whatsoever about a possessory lien interest at the time of the Application, Disclosure and Affidavit, all filed in support of judicial approval of employment. It should have. The claim of possession or entitlement to a lien position is a material and relevant factor, and must be disclosed under § 327(a) and Rule 2014(a). *Park Helena,* 63 F.3d at 882; *see also Printcrafters,* 233 B.R. at 120 (stating that a secured interest in a retainer is "tolerate[d] ... so long as fully disclosed and subjected to the Court's scrutiny").

The record provides a possible explanation for Counsel's lack of comment about the lien when making its other disclosures. The itemization of services attached to the Motion, Doc. No. 63, includes post-conversion entries stating:

| 5/6/02 | Chapter 7 research re: handing over funds in trust account; do we have a lien against the funds? |
|---|---|
| 5/7/02 | Chapter 7 research. |
| 5/7/02 | Chap. 7 research. |
| 5/9/02 | Begin researching whether we have lien on money in retainer. |
| 5/9/02 | Continue research re: lien on pre-petition retainer. |
| 5/9/02 | Continue research regarding retaining liens. |
| 5/10/02 | Continue research re: retaining liens. |
| 5/10/02 | Continue lien research. [24] |

These time entries support a conclusion that Counsel did not at the time of the engagement understand that

a lien might exist under Idaho common law or intend to assert such an interest, and that Counsel's position

was formed only at the time of conversion, as the risk of nonpayment increased and several parties started to covetously eye the $50,000.00 retainer. This might explain why Counsel strenuously asserted an Idaho possessory lien post-conversion but failed to unambiguously disclose or even mention such a claim at the time it sought the Court's approval of employment.

But Counsel does not argue that it should avoid sanction because it merely failed to disclose a position it did not yet know it had. Counsel instead asserts that it was not required to disclose that it had or would assert a "right" to the lien. However, Counsel has not provided persuasive authority or argument in support of this proposition. [25]

The Court today, consistent with the authorities noted above, makes clear that there is an affirmative duty to disclose, at the time counsel is seeking approval of employment under § 327(a), whether a lien position is believed to exist or will be asserted against a retainer or any other property of a debtor. Disclosing only that a retainer exists does not necessarily disclose a possible lien interest or whether such an interest will be asserted. As the earlier discussion reflects, not all retainers are alike and may not give rise to lien interests. An attorney might also waive such an interest if in fact one is created. Therefore, the disclosure regarding a lien interest is in addition to the other required disclosures regarding the existence, nature and terms of any retainer. This disclosure is necessary to allow the Court and interested parties to evaluate the entirety of the relevant facts and circumstances. Failure to meet any of these obligations exposes the professional to consequences which may include reduction or denial of compensation.

**\*10**  Counsel failed to meet the duty of full and complete disclosure. The Court has broad discretion in designing appropriate remedies to deal with violations of Rules 2014 and 2016. *Combe Farms,* 257 B.R. at 55, 01.1 I.B.C.R. at 10, n. 15 (citing *Park–Helena,* 63 F.3d at 882; and *In re Film Ventures Int'l, Inc.,* 75 B.R. 250, 253 (9th Cir. BAP1987)). The Court concludes that Counsel's failure to mention the lien, when viewed in the context of its other disclosures regarding the cash security retainer [26] and the facts indicating that its assertion of the lien right might have been based only on a *post facto* awareness or discovery, does not warrant denial of all compensation, though such a result is authorized by the Ninth Circuit decisions and sought by the UST.

*Combe Farms* assessed a 10% reduction, approximately $2,500.00, for a debtor's attorney's Rule 2014 violations. 257 B.R at 55, 01.1 I.B.C.R. at 10. The Court concludes that a similar financial consequence is appropriate here. A 5% sanction will be imposed and deducted from Counsel's § 330 allowed compensation. Therefore, the Court will grant the UST's objection to the extent it argues Counsel's inadequacy of disclosure merits a reduction of Counsel's allowed fees. The reduction will be calculated and assessed in the Memorandum of Decision (Fees/Costs).

### E. The additional $45,000.00 transfer

There are two issues concerning the additional $45,000.00 Counsel obtained. [27]  The first involves Counsel's treatment and handling of these funds. The second concerns the required disclosure regarding the receipt of additional funds and the claim Counsel would later assert against those funds.

### 1. The funds

In the instant case, Debtor retained, at a bare minimum, an equitable interest in the unearned retainer held by its non-bankruptcy counsel. When that firm failed to gain approval for employment in bankruptcy, there was no basis for treating the funds as a security retainer or any other sort of retainer.

Regardless of Counsel's argument that this was money "earmarked for legal services," *see* Affidavit, Doc. No. 89, at ¶ 4, the entire amount should have been returned to Debtor. The lawyers were not at liberty to decide that the money should be transferred from Debtor's non-bankruptcy attorneys to Counsel to enhance Counsel's retainer. *See For–Rose Plumbing,* 99.2 I.B.C.R. at 72. [28]

The remedy in *For–Rose* was to require the "transferred" retainer to be delivered to the Trustee, and not made available to the receiving attorney. That is, in essence, what has already occurred here. Counsel belatedly, but ultimately, did what was required, which was to turn over the money to the Chapter 7 Trustee. The Court concludes that, under the entirety of the circumstances, this is sufficient resolution of this aspect of the matter.

### 2. The disclosure

The Code provides that debtor's counsel "shall file with the court a statement of the compensation paid or agreed to be paid ... for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation." § 329(a). Rule 2016 implements this provision of the Code. Rule 2016(b) requires the initial written disclosure form to be filed within 15 days after commencement of the case. It also requires a supplemental statement to be filed within fifteen days after receipt of "any payment or agreement not previously disclosed ." Rule 2016(b).

**\*11** The UST contends that Counsel failed to properly disclose the additional $45,000.00 of its April 29 receipt as required by Rule 2016(b), and that as a result all requested fees should be denied. *Franke v. Tiffany (In re Lewis),* 113 F.3d 1040, 1045 (9th Cir.1997) (upholding a bankruptcy court's order of disgorgement of fees when an attorney failed to file supplemental statements and failed to disclose that it had received a portion of its retainer post-petition); *Hale v. United States Trustee (In re Basham),* 208 B.R. 926, 931 (9th Cir. BAP1997) (affirming this Court's decision to reduce fees as a sanction for failure to timely file 2016(b) disclosures), *aff'd sub nom. In re Byrne,* 152 F.3d 924 (9th Cir.1998) (unpublished).

Counsel argues that the reference in Exhibit A to its May 14 Motion, made fifteen days after the transfer, was sufficient disclosure for purposes of Rule 2016(b). *See* Doc. No. 83, at 8.

This response to question 1–B of the UST's fee guidelines, set forth earlier, provided some of the information required by Rule 2016(b): that Counsel had received funds from Debtor (*via* Debtor's non-bankruptcy counsel), revealing the source and amount of those funds; that the funds were held by Counsel; and that Counsel asserted an interest in and an intent to use those funds in payment of compensation. In addition, the timing of the Motion's disclosure fell within the command of Rule 2016(b) even though it was filed after the UST and USB learned of and filed objections to Counsel's receipt and proposed use of the funds. *See* Doc. Nos. 73, 77.

The Court appreciates that Counsel rather quickly retreated from its assertion of interest, and surrendered the funds to the chapter 7 trustee. And it appears the UST and USB were orally advised at or about the time

Counsel received the money. [29] But while some disclosure was timely made, it was not made through the preferred and encouraged form. [30] Thus, Counsel's manner of "disclosure" was not readily identifiable by all parties in interest as a supplementing Rule 2016(b) disclosure, nor would it be docketed as such or capable of being located and reviewed by an inquiring party. Instead, the "disclosure" was imbedded in the attachments to a fee application.

The Court did not reach the disclosure question in *For– Rose.* 99.2 I.B.C.R. at 72. However, it did consider violation of Rule 2016(b) in *Combe Farms.* 257 B.R. at 53–54, 01.1 I.B.C.R. at 9. That decision stated:

> [T]he requirements of these provisions of the Code and Rules are not merely aspirations or goals; timely and strict compliance by counsel is mandatory. No more forceful manner of emphasizing the importance of these rules to attorneys should be needed than to remind them that a failure to timely file an adequate disclosure form alone constitutes a sufficient reason for the Court to reduce, or even completely deny, compensation to the debtor's attorney.

> **\*12** ...

> As unpleasant as the task is, this Court is responsible to ensure proper disclosure is made by attorneys representing debtors in bankruptcy cases. Because the integrity of the bankruptcy system is at stake, it is absolutely essential that the Court not simply "excuse" counsel when compliance falls short of that required by the Code and Rules.

*Id. Accord In re Boise Delivery & Transfer, Inc.,* Case No. 01–01334 (Memorandum of Decision, April 25, 2002).

In balancing the entirety of these facts and circumstances, and in consideration of the case law in this District and Circuit on the point, the Court cannot "simply excuse" Counsel for its failure to forthrightly disclose receipt of the additional funds in the manner and form contemplated under Rule 2016(b). An additional 5% sanction will be imposed, and the same will be calculated and assessed in the Memorandum of Decision (Fees/Costs).

### F. Violation of § 364

The UST argues that Counsel failed to comply with § 364 in securing its post-petition services with a lien in the retainer. A similar argument was advanced in *In re K & R Mining, Inc.,* 105 B .R. 394 (Bankr.N.D.Ohio 1989), which rejected the application of § 364 to the employment of professionals under a security retainer. 105 B.R. at 398. Additionally, it appears any possessory lien would have attached prior to bankruptcy, when the funds were deposited, even though the amount potentially secured by that lien would be dependent on post-petition events. The recent decision in *Beeler v. Harrison Jewell (In re Stanton),* 303 F.3d 939 (9th Cir.2002), would seem to indicate that " § 364(c) is therefore beside the point" since the asset "was encumbered before the bankruptcy." *Id.* at 942.

This objection will be overruled.

IV. CONCLUSION

Based on the foregoing, the Court validates Counsel's claim to a common law possessory (or retaining) lien under Idaho law. The property subject to such lien is the $50,000.00 placed in trust before the inception of the case.

Under the circumstances of this case, the existence of the possessory lien and security retainer did not render Counsel not disinterested nor did it create a materially adverse interest such that Counsel was or should be disqualified from representing Debtor in the chapter 11. These conclusions, however, are expressly based on the finding that any and all of Counsel's pre-petition claims, already withdrawn from its compensation requests, were

irrevocably waived and released. This finding is essential because, otherwise, Counsel would be disqualified and would be allowed no compensation at all.

The Court further concludes that the disclosure requirements of § 327(a) and Rule 2014(a) were not fully satisfied. Even though Counsel revealed and described the existence and nature of the retainer, and included a copy of the Agreement in its Application, it said nothing whatsoever of the lien. A sanction of 5% of Counsel's final § 330 fee allowance will be imposed for this violation of the Code and Rules, and will be calculated and incorporated in the Memorandum of Decision (Fees/Costs).

**\*13** The Court also concludes that, while Counsel's post-petition acceptance of the additional $45,000.00 for a brief period does not justify sanctions given the specific circumstances of this case, the failure to file an appropriate Rule 2016(b) disclosure regarding that event does warrant an additional 5% sanction. It, too, will be assessed in the Memorandum of Decision (Fees/Costs).

Other than as set forth above, the objections of the UST and of USB as to these matters and issues will be overruled. The Court will separately consider their objections to the magnitude of compensation properly allowable to Counsel.

All Citations

Not Reported in B.R., 2002 WL 31941458

Footnotes

1    Section 327(a) provides in pertinent part that "the trustee, with the court's approval, may employ one or more attorneys ... or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties." In turn, the Code defines disinterested person in § 101(14) as, *inter alia,* one who is not a creditor. § 101(14)(A).

A chapter 11 debtor in possession asserts the rights of a trustee under § 327(a) by virtue of § 1107. In addition, § 1107(b) specifically provides that "[n]otwithstanding section 327(a) ... a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."

2    The order approving Counsel's employment was prematurely entered; the Court as a rule refuses to consider entry of § 327 employment orders in the absence of any required § 329/Rule 2016(b) disclosure. *In re Combe Farms, Inc.,* 257 B.R. 48, 53, 01.1 I.B.C .R. 7, 9, at n. 11 (Bankr.D.Idaho 2001).

3    This $5,712.63 was but a small part of some $55,700.00 paid to Counsel within the year prior to filing, as indicated in Debtor's response to question no. 9 on its statement of financial affairs. *See* Doc. No. 20.

4    Doc. No. 46 amended Doc. No. 44. It added a *nunc pro tunc* request but asserted an identical fee request. For simplicity, reference will hereafter be made to Doc. No. 46 only.

WESTLAW    © 2017 Thomson Reuters. No claim to original U.S. Government Works.    10

5   The Court's independent review of Counsel's earlier application, Doc. No. 31, found entries totaling $9,600.50 in fees for the prebankruptcy time frame, and costs of $855.76 for that same period. This confirms a total of $10,456.26 for prebankruptcy fees and costs. Though withdrawn in Doc. No. 46, the fact that this amount may have been owed and unpaid for the period from January 30 to February 21, 2002 raises two concerns: the accuracy of Counsel's Disclosure, which affirmatively stated Debtor owed Counsel nothing at the time of bankruptcy, and the representations in the Application and Counsel's Affidavit regarding Counsel's disinterestedness. These matters are addressed later in this Decision.

6   L.B.R.2014.1(c) makes approval of employment effective as of the date the Application was served.

7   Though coming before the Court in late April and early May, the question of a "possible conversion" to chapter 7 or a liquidating plan arose much earlier. *See* Doc. No. 63 (entry for 3/4/02)

8   This request therefore includes one week of post-conversion services. The Court's review of Counsel's submissions reflects that the charges for these post-conversion services are in the amount of $3,806.50. Costs asserted in the post-conversion period include $71.92 in charges identified by date, and some portion of a charge characterized as "client electronic research" for the period 4/1/02 through 5/13/02 in an "estimated" amount of $3,296.97.

9   A later affidavit of Ms. McConnell indicates that U.S. Bank and the U.S. Trustee were orally advised of the additional $45,000.00 on April 29, at or about the time of its receipt by Counsel, even though no pleading containing the disclosure was filed until the May 14 Motion.

10  While notice was provided to all creditors and parties in interest in this case, only the UST and USB have objected to Counsel's compensation requests.

11  The parties acknowledged that Rule 7001(2) required an adversary proceeding in order "to determine the validity, priority, or extent of [Counsel's] lien" in the retainer. The parties, however, agreed to address this issue under Counsel's Motion as a contested matter. *See* Doc. No. 85.

12  Even if Counsel prevailed on the lien claim, only $50,000.00 of the requested compensation would be secured by the lien. Thus, $22,244.47 of Counsel's total compensation request, if fully allowed, would be at best a § 503 chapter 11 administrative expense, rendered junior to chapter 7 administrative expenses by reason of § 726(b), and payable only if the estate is administratively solvent.

13  A charging lien is a lien for the attorney's "services rendered in procuring a judgment, decree, or award for his client, which attaches to the client's cause of action, verdict and judgment and the proceeds thereof." *Frazee v. Frazee,* 660 P.2d 928, 930 (Idaho 1983) (quotations omitted). This Court has previously considered, and in general rejected, the assertion of a statutory charging lien against estate funds. *See, e.g., In re Harris,* 258 B.R. 8, 13–14 (Bankr.D.Idaho 2000) (funds in the estate were not created by counsel's efforts); *see also Elsaesser v. Raeon (In re Goldberg),* 235 B.R. 476, 484, 99.2 I.B.C.R. 63, 66 (Bankr.D.Idaho 1999) (trustee could avoid attorneys' charging liens where (1) the fund was not created by counsel's efforts and (2) the attorney did not properly perfect the lien by judgment).

14  *See, e.g., Defendant A v. Idaho State Bar,* 2 P.3d 147, 151–52 (Idaho 2000).

15  For contrast, an "advance payment" retainer is defined "as one in which the debtor pays for all or a portion of the services to be rendered by the attorney in advance" or, in other words, a "flat fee" arrangement. *Collier,* ¶ 328.02[1][c][ii], p. 328–7. *See also, In re McDonald Bros. Constr. Inc.,* 114 B.R. 989, 1000 (Bankr.N.D.Ill.1990). This Court has observed: "[R]etainers prepaying legal services to be rendered in the future belong to the attorney when transferred to the attorney. However, the attorney is obliged to earn the fees prepaid and make an accounting of such fees and costs to the client." *For–Rose Plumbing,* 99.2 I.B.C.R. at 72 (citations omitted). When representation ceases, to the extent the fees have not been earned, the unearned portion of the retainer again becomes property of the client; further, the client always retains the equitable right to an accounting and to a refund or reimbursement of any unearned portion of the prepaid fee. *Id.* The Court also retains the ability to evaluate the reasonableness of such prepayment. § 329(b); Fed. R. Bankr.P.2017(a).

The "earned on receipt" or "classic" retainer is intended "to insure the attorney's availability over time on behalf of the client regardless of whether the attorney actually renders services to the client." *Collier,* ¶ 328.02[1][c][vi], p. 328–9. The retainer is entirely earned upon payment, with the client retaining no interest in the money. *McDonald Bros. Constr.,* 114 B.R. at 998. Classic retainers frustrate the court's supervision of professional fees because they impermissibly circumvent the requirements for compensation of professionals, especially debtor's attorneys. *In re NBI, Inc.,* 129 B.R. 212 (Bankr.D.Colo.1991); *see also In re Hawkins,* 89 I.B.C.R. 266, 268–69 (Bankr.D.Idaho 1989).

Finally, "evergreen" retainers provide security for the payment of fees and contemplate preserving the entire pre-petition retainer so it can be applied toward the final payment of fees at the conclusion of the case. Interim funding of fees comes from operating cash or, if drawn from the retainer, operating cash is used to replenish the retainer. *See Collier,* ¶ 328.01[1][c][iv], p. 328–8. Such arrangements have also been criticized. *See In re Perrysburg Marketplace*

*Co.,* 176 B.R. 797, 799–800 (Bankr.N.D.Ohio 1994); *In re Pannebaker Custom Cabinet Corp.,* 198 B.R. 453, 462 (Bankr.M.D.Pa.1996). A variation of an evergreen retainer was rejected by this Court *In re Lakeside Mgmt., L.L.C.,* Case No. 01–20661, Doc. No. 24 (Memorandum of Decision, August 2, 2001).

16    *See, e.g., In re Equip. Servs. Inc.,* 290 F.3d 739, 746 (4th Cir.2002); *Indian Motorcycle Assocs. III Ltd. P'ship v. Massachusetts Hous. Fin. Agency,* 66 F.3d 1246, 1255 (1st Cir.1995); *Shapiro Buchman LLP v. Gore Bros. (In re Monument Auto Detail, Inc.),* 226 B.R. 219, 225 (9th Cir. BAP1998); *United States Trustee v. Garvey, Schubert & Barer (In re Century Cleaning Services, Inc.),* 215 B.R. 18, 21–22 (9th Cir. BAP1997) (holding that Chapter 7 debtor's attorney held a valid possessory lien in a pre-petition retainer and could be compensated from the retainer), *rev'd on other grounds,* 195 F.3d 1053 (9th Cir.1999); *In re Prod. Assocs., Ltd.,* 264 B.R. 180, 188 (Bankr.N.D.Ill.2001); *In re Printcrafters, Inc.,* 233 B.R. 113, 116–17, (Bankr.D.Colo.1999); *Pannebaker Custom Cabinet,* 198 B.R. at 460; *In re North Bay Tractor, Inc.,* 191 B.R. 186, 187 (Bankr.N.D.Cal.1996); *In re Printing Dimensions, Inc.,* 153 B.R. 715, 719 (Bankr.D.Md.1993); *In re K & R Mining, Inc.,* 105 B.R. 394, 398 (Bankr.N.D.Ohio 1989); *see also* Collier, ¶ 328.02[1][c][iii], p. 328–7.

17    *See Monument Auto Detail,* 226 B.R. at 225.

18    There is also an aspect of "evergreening." Apparently Counsel and Debtor anticipated that funding of allowed interim compensation in the chapter 11 case would come from Debtor's cash flow, and that the $50,000 would not be invaded until, perhaps, the conclusion of representation. But the question of preserving the retainer while paying compensation from other sources never arose given the rather swift denouement of the reorganization effort. Typically in chapter 11 cases similar to that presented here, the source of payment of any allowed interim compensation (*i.e.,* from unencumbered cash flow, a retainer, or a combination thereof) is an issue determined at the time of the § 331 hearing and that determination is dependent on the facts then extant. *Accord, Lakeside Mgmt., L.L.C., supra.* But the present case fell into a liquidating posture before the § 331 requests were ever heard. Further, the Court was at no time presented with a request to authorize a "monthly billing" approach as alluded to in the Agreement. The Agreement correctly noted that Court approval of such a mechanism was required.

19    *Collier* and some bankruptcy courts have concluded that the provisions of Article 9 of the Uniform Commercial Code can also be satisfied by an attorney's retainer agreement. *See, e.g.,* Collier ¶ 328.02 [1][c][i], p. 328–2 (citing *McDonald Bros. Constr.,* 114 B.R. at 999); *In re Carolina Premier Med. Group, P.A.,* 2001 WL 1699220 at *4 (Bankr.M.D.N.C.2001) (security retainer constitutes a security interest under the UCC in the funds, perfected by the attorney's possession); *In re IPS Systems, Inc.,* 205 B.R. 88, 89 (Bankr.S.D.Tex.1997) (same); *In re Matthews,* 154 B.R. 673, 676 (Bankr.W.D.Tex.1993) (same); *In re Goco Realty Fund I,* 151 B.R. 241, 252 (Bankr.N.D.Cal.1993) (same).

      However, Counsel does not here urge a consensual security interest as an alternative to the common law lien. And the assertion that a "lien" arose in the retainer does not require a conclusion that an Article 9 interest was negotiated or implicated. *Compare* § 101(37) *with* § 101(51). The Court therefore renders no opinion on the subject except to observe that an attorney's negotiation of a consensual security interest prior to filing raises a number of additional concerns. *See* n. 22, *infra.*

20    Under *Frazee,* a possessory lien can also be claimed in other property of a client, for example, in files or documents. Different or additional provisions may apply to such an assertion. *See e.g.,* § 542(e).

21    In *Leypoldt,* Chief Judge Pappas held that an attorney was not a "creditor" within the meaning of § 101(14)(A) and noted that "[t]he presence of a lien that secures no existing obligation does not make Counsel a creditor." 95 I.B.C.R. at 222 (citing *In re Escalera,* 171 B.R. 107, 110 (Bankr.E.D.Wash.1994)).

22    The Court emphasized the ethical pitfalls facing attorneys who negotiate security agreements with their own clients. *Leypoldt,* 95 I.B.C.R. at 224–25. *See also In re Parkhurst,* 02.1 I.B.C.R. 57, 57–59 (Bankr.D.Idaho 2002) (addressing, *inter alia,* Idaho Rule of Professional Conduct 1.8); *accord,* American Bar Association Formal Ethics Opinion, No. 02–427 (May 31, 2002) (addressing Model Rule of Professional Conduct 1.8).

23    Both the "disinterested" and "no adverse interest" conclusions are specifically premised upon the waiver of any pre-petition claim of Counsel, as discussed *supra.* In the absence of such a waiver, Counsel had a lien interest *and* an outstanding debt secured by that lien, which combined constitute a *prima facie* violation of § 327(a). *See In re Overacker,* 02.1 I.B.C.R. 55 (Bankr.D.Idaho 2002) (unless attorney files an unconditional and irrevocable waiver of pre-petition claim, application to employ will be rejected). *Accord Leypoldt,* 95 I.B .C.R. at 222 (lawyer "not previously owed back fees or other indebtedness" is not a creditor solely by reason of retainer). *See also McCutchen, Doyle, Brown & Enersen v. Official Comm. of Unsecured Creditors (In re Weibel, Inc.),* 176 B.R. 209, 213 (9th Cir. BAP1994) ("professional ... must show that it is disinterested before any compensation is to be paid the professional from assets of the estate").

24    These entries total 10.70 hours at a suggested rate of $120.00 per hour ($1,284.00). Issues regarding allowance of compensation for such services are discussed in the Memorandum of Decision (Fees/Costs).

In re Gelboim 1 Const, Inc, Not Reported in B.R. (2002)
2002 WL 31941458

25    Counsel's assertion that *In re Century Cleaning Services, Inc.,* 209 B.R. 149 (Bankr.D.Or.1996) supports its view, *see* Doc. No. 83 at 11, is not well taken.

26    Counsel fully disclosed the existence and amount of the retainer in its § 327 Application and its Rule 2014(a) and Rule 2016(b) Disclosures. The Affidavit also attached the Engagement Letter explaining the terms of the agreement. In addition, all of Counsel's requests for compensation disclosed the retainer. *See* Doc. No. 21 at Ex. A; Doc. No. 31 at Ex. A; Doc. No. 63. The original balance was not invaded, and Counsel has consistently accepted the fact that approval of compensation was prerequisite to any draw against the retainer.

27    The July 11 Affidavit of Ms. McConnell, Doc. No. 89, indicates that Debtor made a pre-petition deposit of $50,000.00 with its non-bankruptcy law firm as a retainer for that firm. But only $45,000.00 was returned to Counsel. *Id.* at ¶ 6. What happened to the other $5,000.00 is unexplained. Since employment of the other firm was never authorized in bankruptcy, there would be no apparent basis for that firm's retention of the $5,000.00 from this "retainer."

28    In *For–Rose,* the debtors were initially represented by an attorney who received a pre-petition retainer of $5,000.00. Debtor subsequently terminated that attorney's representation, and engaged substitute counsel. The first attorney transferred $2,500.00 of the retainer, representing "unearned" fees, to the second. The Court ordered the substituting attorney to fully disgorge the $2,500.00 noting that no one, including the attorneys, was free to decide that the unearned portion of the $5,000.00 should go to the new attorney, and that the unearned portion of the retainer was property of the client, and hence property of the estate.

29    *See* n. 9, *supra.*

30    The information required by Rule 2016(b) is generally provided on a form consistent with Procedural Form B 203. Use of Procedural Forms is encouraged but, unlike Official Forms, is not required. *See* Fed. R. Bankr.P. 9009. Counsel's initial Rule 2016(b) Disclosure, Doc. No. 21, was on such a form.

---

End of Document                                        © 2017 Thomson Reuters. No claim to original U.S. Government Works.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled: **CHAPTER 7 TRUSTEE'S SUPPLEMENTAL BRIEF RE: OBJECTION TO FEE APPLICATION OF THE SPEAR LAW FIRM** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 24, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Frank F Barilla - DISBARRED -    barillabklaw@yahoo.com
- Katherine Bunker    kate.bunker@usdoj.gov
- Asa S Hami    ahami@sulmeyerlaw.com,
  agonzalez@sulmeyerlaw.com;agonzalez@ecf.inforuptcy.com;ahami@ecf.inforuptcy.com
- Elizabeth Jiang    ejiang@vedderprice.com,
  elizabeth.z.jiang@gmail.com;rtruong@vedderprice.com;ecfdocket@vedderprice.com
- Jeffrey S Kwong    jsk@lnbyb.com, jsk@ecf.inforuptcy.com
- Mitchell B Ludwig    mbl@kpclegal.com
- Elissa Miller    emiller@sulmeyerlaw.com,
  asokolowski@sulmeyerlaw.com;emillersk@ecf.inforuptcy.com;dwalker@sulmeyerlaw.com
- Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com
- Steven G Polard    spolard@eisnerlaw.com, lewing@eisnerlaw.com
- Brett Ramsaur    brett@ramsaurlaw.com, andi@ramsaurlaw.com
- Ramesh Singh    claims@recoverycorp.com
- Paul D Spear    pdspear@spearlaw.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Edward M Wolkowitz    emw@lnbrb.com
- Nancy J Zamora (TR)    zamora3@aol.com, nzamora@ecf.epiqsystems.com

**2.  SERVED BY UNITED STATES MAIL**: On **March 24, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Debtor
Michael David Paris
8357 Tunney Avenue
Northridge, CA 91324

Hon. Martin R. Barash
United States Bankruptcy Court
21041 Burbank Boulevard, Suite 342 / Courtroom 303
Woodland Hills, CA 91367

Bradley H. Spear
20943 Devonshire St., Suite 206
Chatsworth, CA 91311

☐ *Service information continued on attached page*

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 24, 2017**, attorney Jeffrey S. Kwong served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Served by E-mail
Bradley H. Spear b.h.spear@att.net

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 24, 2017 | Lourdes Cruz | /s/ Lourdes Cruz |
|----------------|--------------|-------------------|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                      **F 9013-3.1.PROOF.SERVICE**